ANTHONY L. HALL, ESQ. (NV Bar No. 5977)
ahall@hollandhart.com
R. CALDER HUNTINGTON, ESQ. (NV Bar No. 11996)
rchuntington@hollandhart.com
HOLLAND & HART LLP
5441 Kietzke Lane, Second Floor
Reno, Nevada 89511
Telephone: (775) 327-3000
Facsimile: (775) 786-6179

*Attorneys for Defendants El Tejon Sheep Company and Melchor Gragirena*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| ABEL CANTARO CASTILLO, and those similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>WESTERN RANGE ASSOCIATION; MELCHOR GRAGIRENA; and EL TEJON SHEEP COMPANY,<br><br>Defendants. | CASE NO. 3:16-cv-00237-MMD-VPC<br><br>**DEFENDANTS MELCHOR GRAGIRENA AND EL TEJON SHEEP COMPANY'S MOTION TO DISMISS** |

Defendants El Tejon Sheep Company ("El Tejon") and Melchor Gragirena ("Gragirena") (jointly, "Defendants") by and through their attorneys of record of the law firm of Holland & Hart LLP, hereby move to dismiss Plaintiff Abel Cántaro Castillo's ("Cántaro") Complaint. This Motion is supported by the following Memorandum of Points and Authorities, the papers and pleadings on file herein, and any oral argument that this Court may allow.

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.  INTRODUCTION**

By his Complaint, Cántaro attempts to assert Nevada state and federal minimum wage claims against the Defendants in this action. However, Cántaro fails to properly allege any minimum wage claim under controlling Ninth Circuit law. Cántaro also fails to allege facts supporting individual liability against Gragirena.

In the Ninth Circuit, plaintiffs alleging their employers did not properly pay them minimum wage or overtime must, at a minimum, allege a specific week in which such minimum wage or

1

8988855_1

overtime was owed and not paid. Cántaro's entire Complaint fails because he did not make such a specific allegation. Rather, he continued the practice the Ninth Circuit has determined is insufficient—generally alleging he was not paid minimum wages despite being owed them without an example of any specific week. As such, the Complaint should be dismissed.

Additionally, Cántaro alleges that Gragirena should be individually liable for unpaid minimum wages under both state and federal law without any factual or legal support simply because he is the owner of El Tejon, an entity he alleges actually employed him. In 2008, the Nevada Supreme Court determined that individual owners, agents, or officers of a company simply cannot be held liable for unpaid wages under Nevada law. As Cántaro contends he was employed by the WRA and El Tejon, not Gragirena personally, Gragirena cannot be liable for unpaid wages under Nevada law. And while it is theoretically possible under federal law for an individual corporate agent to be liable for unpaid wages, Cántaro fails to assert any facts supporting Gragirena's individual liability under federal law. As such, the claims asserted against Gragirena should be dismissed.

## II. RELEVANT FACTS AND PROCEDURAL HISTORY[1]

Sometime in 2007, an unnamed representative from Defendant Western Range Association ("WRA") recruited Cántaro to come to the United States to work as a shepherd while Cántaro was living near Huancayo, Peru. Compl. ¶ 8 (ECF No. 1). Cántaro signed a document with the unnamed WRA representative regarding the terms and conditions of his employment in the United States. *Id.* at ¶ 9. Cántaro worked with and at the direction of the unnamed WRA representative to obtain a visa and otherwise prepare to work in the United States. *Id.* at ¶ 10.

When Cántaro came to the United States at the behest of the WRA, the WRA assigned him to work for El Tejon. *Id.* at ¶ 11. However, when he began to work at El Tejon, the WRA had Cántaro sign another document with the WRA (not El Tejon) setting forth the terms and conditions of his employment. *Id.* at ¶ 12. Amongst these terms and conditions was that the WRA could re-assign Cántaro to any other "WRA ranch at any time—regardless of whether it was his preference to stay on

---

[1] The factual allegations are taken as true as they are stated in the Complaint for the purposes of this Motion. Defendants do not admit to any of the allegations by this Motion and reserve the right to challenge any of the allegations at any further stage of this litigation.

2

8988855_1

the ranch to which he was originally assigned and regardless of whether the individual WRA ranch on which he worked [El Tejon] agreed to the transfer." *Id.*[2] Thus, according to Cántaro's allegations, Gragirena and El Tejon had no control over whether Cántaro would remain or continue employment with El Tejon. *Id.* Rather, Cántaro alleges that his employment was controlled by the WRA. *Id.* Cántaro voluntarily terminated employment with the WRA and El Tejon in June 2014. *Id.* at ¶ 37.

Cántaro contends that the WRA sets and controls the wages for all sheepherders it recruits to work in the United States, regardless of which individual ranch may employ a particular sheepherder. *Id.* at 13, 44-51. He further contends that Defendants El Tejon and Gragirena adhered to pay and other employment policies the WRA sets. *Id.* at 52. Cántaro does not contend that El Tejon or Gragirena set or otherwise created the pay or other employment policies, just that they followed the WRA's policy and accepted the WRA's assignment of Cántaro to El Tejon. *See generally, id.*

On May 3, 2016, Plaintiff filed the instant Complaint against three defendants: the WRA, El Tejon, and Gragirena. *See generally,* Compl. In this Complaint, Cántaro asserts three claims: 1) failure to pay minimum wage under the Nevada Constitution against Defendant WRA; 2) failure to pay minimum wage under the Nevada Constitution against Defendants El Tejon and Gragirena; and 3) failure to pay minimum wage under the FLSA against all Defendants. *See generally, id.* Thus, Cántaro only asserts Claim 2 and Claim 3 against El Tejon and Gragirena and these are the claims addressed in this Motion.

### III. LEGAL STANDARD

A court may dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." FRCP 12(b)(6). A properly pled complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." FRCP 8(a)(2). Rule 12(b)(6) therefore affords a defendant an opportunity to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true. *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009). If the factual allegations, taken as true, do not support legal relief, the complaint as a whole or individually

---

[2] Cántaro contends that all other shepherds recruited by the WRA are subject to the same terms and conditions.

3

insufficient claims should be dismissed. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 562 (2007).

In *Iqbal*, the Supreme Court clarified the two-step approach district courts are to apply when considering motions to dismiss. First, a district court must accept as true all well-pled factual allegations in the complaint; however, legal conclusions are not entitled to the assumption of truth. *Iqbal*, 556 U.S. at 678. Mere recitals of the elements of a cause of action, supported only by conclusory statements, do not suffice. *Id.* Second, a district court must consider whether the factual allegations in the complaint allege a plausible claim for relief. *Id.* at 679. A claim is facially plausible when the plaintiff's complaint alleges facts that allow the court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Id.* at 678. Where the complaint does not permit the court to infer more than the mere possibility of misconduct, the complaint has "alleged—but it has not shown—that the pleader is entitled to relief." *Id.* (internal quotation marks omitted). When the claims in a complaint have not crossed the line from conceivable to plausible, the complaint must be dismissed. *Twombly*, 550 U.S. at 570.

## IV.   LEGAL ARGUMENT

### A.   Cántaro Failed to Plead a Minimum Wage Claim under Ninth Circuit Law

In *Landers v. Quality Communications, Inc.*, the Ninth Circuit analyzed the decisions of other circuits and addressed the pleading standard for overtime and minimum wage claims in light of *Iqbal* and *Twombly*. 771 F.3d 638 (9th Cir. 2014). In discussing cases from the First, Second, and Third Circuits, as well as the complaint before it, the *Landers* court analyzed the allegations of multiple plaintiffs in different cases alleging that they had worked in excess of forty hours without being paid overtime. *Id.*, at 641-44. These courts determined that allegations from these plaintiffs that they generally worked over forty hours without receiving overtime were insufficient to survive a motion to dismiss. *Id.*, 642-46. After analyzing and agreeing with these decisions, the *Landers* court specifically held that "at a minimum the plaintiff must allege at least one workweek when he worked in excess of forty hours and was not paid for the excess hours in that workweek, or was not paid minimum wages" in order to survive a motion to dismiss. *Id.* at 646. This requires "plaintiffs to draw on their memory and personal experience to develop factual allegations with sufficient specificity that they plausibly

4

8988855_1

suggest that defendant failed to comply with its statutory obligations" rather than just provide conclusory allegations consistent with potential liability. *Id.* at 643 (citing *Dejesus v. HF Mgmt. Services, LLC*, 726 F.3d 85, 90 (2d Cir. 2013)).

Since the Ninth Circuit published the *Landers* decision, it has become routine for plaintiffs asserting minimum wage or overtime claims to include a statement that they were not paid the minimum wage for a specific workweek (specifically, the dates of a workweek such as August 8 – 12, 2016) or that they worked over forty hours in a specific workweek without receiving overtime pay. However, some plaintiffs fail to comply with this requirement because they do not have facts supporting their claim. When a plaintiff fails to include allegations that they were not paid minimum wage or overtime in a specific workweek, those claims are properly dismissed. *Id.* at 646 ("at a minimum the plaintiff must allege at least one workweek when he worked in excess of forty hours and was not paid for the excess hours in that workweek, or was not paid minimum wages."). Here, Castillo failed to allege that he was not paid minimum wage in any particular workweek instead of making the generalized allegations the Ninth Circuit has held are insufficient. *Compare* Compl., *with Landers*, 771 F.3d at 646. As such, each of Plaintiff's minimum wage claims against El Tejon and Gragirena should be dismissed.

### B. Plaintiff Failed to Present Any Allegations Plausibly Giving Rise to Personal Liability Against Melchor Gragirena

By his Complaint, Cántaro seeks to impose individual liability for El Tejon's and the WRA's alleged minimum wage violations under both federal and state law against Gragirena as the owner of El Tejon. Nevada law does not allow for such individual liability and, thus, Cántaro's state law claim (Claim 2) should be dismissed as against Gragirena with prejudice. As to the FLSA, Cántaro has not alleged facts supporting individual liability under controlling precedent and, thus, this claim should also be dismissed as against Gragirena.

#### 1. Gragirena Cannot Be Held Liable Under Nevada State Law

In 2008, subsequent to the passage of the Nevada Constitution's Minimum Wage Amendment ("MWA") in 2006, the Ninth Circuit Court of Appeals certified the question of whether individual agents of corporate employers could be liable for wage and hour claims under Nevada state law.

8988855_1

*Boucher v. Shaw*, 196 P.3d 959, 960 (Nev. 2008) ("*Boucher I*").[3] In answering this question, the Nevada Supreme Court first analyzed the definition of employer provided in NRS 608.011: "'Employer' includes every *person* having control or custody of any employment, place of employment or any employee." *Id.* at 961-62 (emphasis added). After determining that the statutory language and legislative history was unclear as to whether the statute included individual managers or corporate agents as potential "employers," the Court analyzed Illinois, Kansas, and Colorado law. *Id.* at 962. Unlike the Nevada statute, Illinois and Kansas statutes expressly "provided for officer and agent liability." *Id.* In contrast to Kansas and Illinois, Colorado did not provide expressly for agent or officer liability even though it referenced agents and officers within the definition of an employer. *Id.* In examining these jurisdictions, the Nevada Supreme Court agreed with the Colorado Supreme Court's view[4] and determined "that had the Nevada Legislature intended to qualify individual managers as employers and thus expose them to personal liability, it would have done so explicitly." *Id.* at 963. Thus, because NRS 608.011 was not explicit in including individual managers or corporate agents as employers or in making them subject to unpaid wage liability, "in Nevada, individual corporate managers are not personally liable, as employers, for unpaid wages." *Id.*

This same analysis holds true under the MWA. The MWA defines an employer as "any individual, proprietorship, partnership, joint venture, corporation, limited liability company, trust, association, or other entity *that may employ individuals or enter into contracts of employment*." Nev. Const. Art. 15, s. 16 (emphasis added). The MWA does not reference or create, explicitly or otherwise, individual liability for corporate agents, officers, or managers. *See id.* Thus, just as the Nevada Supreme Court determined that NRS Chapter 608 does not provide for individual liability of agents, managers, or officers of a company for unpaid wages because it does not do so explicitly, the Nevada Supreme Court would also determine that the MWA fails to create such liability. Thus, only

---

[3] While the specific question related to NRS Chapter 608 and not the MWA, the same analysis applies as described below.
[4] *See Leonard v. McMorris*, 63 P.3d 323, 327 (Colo. 2003) (explaining that, unlike the Illinois and Kansas provisions, "Colorado's Wage Claim Act does not contain language directly addressing the issue of corporate officer and agent personal liability for paying earned but unpaid wages" and holding that there was no individual liability for corporate officers and agents).

8988855_1

individuals (e.g., a sole proprietorship) or entities that directly employ an individual are potentially liable for wage and hour violations under Nevada law, whether the claim is alleged under the MWA or NRS Chapter 608. *Compare id. with Boucher*, 196 P.3d at 960-63.

Here, Cántaro does not allege that Gragirena individually hired or employed him or any person he seeks to represent. *See generally*, Compl. Rather, he contends that he entered into employment contracts with the WRA and was assigned to work for El Tejon and bases his claim against Gragirena merely on the fact that Gragirena owns and allegedly manages El Tejon. Compl. ¶¶ 9-12 ("Cántaro worked with one particular WRA ranch, Defendant El Tejon Sheep Company, which is owned by Defendant Gragirena.").[5] As the allegations against Gragirena are entirely based on Cántaro's employment with El Tejon or the WRA and not Gragirena personally, the state law claim (Claim 2) against Gragirena should be dismissed with prejudice.

### 2. Plaintiff Has Not Pleaded Facts Sufficient to Support Individual Liability under the FLSA

The Ninth Circuit has held that the determination of the existence of an employer/employee relationship potentially giving rise to individual liability is based on "'the circumstances of the whole activity ....'" *Boucher v. Shaw*, 572 F.3d 1087, 1091 (9th Cir. 2009) (*Boucher II*) (quoting *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 730 (1947)).[6] The *Boucher II* Court further clarified that "[w]here an individual exercises 'control over the nature and structure of the employment relationship,' or 'economic control' over the relationship, that individual is an employer within the

---

[5] On occasion, Cántaro generally alleges that he entered contracts "with Defendants" without specifying to which of the three named Defendants he is referring. This undifferentiated pleading is improper and is insufficient to state a claim against Gragirena. *See, e.g., Corazon v. Aurora Loan Services, LLC*, 2011 WL 1740099, *3-4 (N.D. Cal. May 5, 2011) (dismissing complaint based, in part, on undifferentiated pleading); *Aaron v. Aguirre*, 2007 WL 959083, *16, n.6 (S.D.Cal. Mar. 8, 2007); *In re Sagent Tech., Inc.* 278 F.Supp.2d 1079, 1094 (N.D.Cal. 2003) ("[T]he complaint fails to state a claim because plaintiffs do not indicate which individual defendant or defendants were responsible for which alleged wrongful act"); *Gauvin v. Trombatore*, 682 F.Supp. 1067, 1071 (N.D.Cal. 1988) (holding that lumping together multiple defendants in one broad allegation fails to satisfy notice requirement of FRCP 8(a)(2)); *Weiszmann v. Kirkland & Ellis*, 732 F.Supp. 1540, 1549 (D.Colo. 1990) ("Where...there are multiple defendants, the complaint should specify what conduct by each defendant gives rise to the asserted claim").

[6] *Boucher II* is the court that had certified the individual liability question to the *Boucher I* court.

8988855_1

meaning of the [FLSA], and is subject to liability." *Id.* (quoting *Lambert v. Ackerley*, 180 F.3d 997, 1012 (9th Cir.1999) (en banc)). Thus, the Ninth Circuit in *Lambert* upheld liability against a chief operating officer and a chief executive officer as employers where they had "significant ownership interest with operational control of significant aspects of the corporation's day-to-day functions; the power to hire and fire employees; [the power to] determin[e][ ] salaries; [and the responsibility to] maintain [ ] employment records.'" *Id.* (quoting *Lambert*, 180 F.3d at 1001-02, 1012, alterations in *Boucher II*). In contrast, where individuals do not have "operational control of significant aspects of the corporation's day-to-day functions" or economic control over the employment relationship, there can be no personal liability even for company owners. *Lopez v. G.A.T. Airline Ground Support, Inc.*, 2010 WL 2839417, *10 (S.D. Cal. July 19, 2010) (internal quotation omitted).

Here, not only does Cántaro fail to allege facts supporting individual liability against Gragirena, he alleges facts showing the opposite. Rather than claiming that Gragirena set Cántaro's pay or the policies under which he worked, Cántaro expressly alleges that the WRA set the work and pay policies for all the sheepherders it recruited. *See* Compl. ¶¶ 8-13. Specifically, Cántaro alleges as follows:

- "a representative of Defendant WRA in Peru first recruited Mr. Cántaro to be a shepherd in the United States …." *Id.* at ¶ 8.
- "The WRA representative made Mr. Cántaro sign a document in which WRA established many of the conditions under which Mr. Cántaro would work …." *Id.* at ¶ 9.
- "The WRA representative directed how Mr. Cántaro should obtain a visa … and required Mr. Cántaro … to comply with the policies WRA had established for hiring foreign shepherds …." *Id.* at ¶ 10.
- The WRA "set additional terms of employment with which Mr. Cántaro had to comply" when he began working in the United States. *Id.* at ¶ 12.
- The WRA retained power to transfer Cántaro to "work at any ranch managed by Defendant WRA … at any time—regardless of whether it was his preference to stay on the ranch to which he was originally assigned *and regardless of whether the individual*

8

8988855_1

*WRA ranch on which he worked agreed to the transfer.*" *Id.* (emphasis added).

- "All or almost all shepherds employed by Defendant WRA are subject to the same employment policies as those described above because all or almost all WRA shepherds sign the same or substantially similar employment contracts as a condition of working for *Defendants WRA.*" *Id.* at ¶ 13 (emphasis added).
- "Defendant WRA has a policy of only paying the minimum monthly wage established by DOL, regardless of whether there is a higher wage is [*sic*] required under state or federal law …." *Id.* at ¶ 44.

These allegations demonstrate that the WRA controlled the economic reality of Cántaro's employment: the WRA recruited and hired Cántaro without any input from El Tejon or Gragirena; the WRA set the work conditions and policies; the WRA controlled where Cántaro worked by controlling whether he was transferred; and the WRA controlled the amount Cántaro was paid by setting the pay policies. By way of comparison, Cántaro does not make any of these allegations against Gragirena individually.

However, even beyond the practical impossibility of Gragirena being an employer based on these allegations, Cántaro does not provide any allegations that Gragirena exercised operational control over El Tejon or Cántaro's job—just the WRA. *See generally*, Compl. The extent of Plaintiff's allegations that Gragirena should be individually liable as an employer are that Gragirena is the owner of El Tejon; that El Tejon, through Gragirena, adhered to the WRA's policies; and that for two-week periods in early or mid-June every year, Cántaro would be "under the direct supervision of Defendant Gragirena *or* a foreman employed by the Defendants." *Id.* at ¶ 6, 24, and 52 (emphasis added).[7] These allegations are entirely insufficient to demonstrate that Gragirena individually controlled Cántaro's employment, especially in light of the allegations demonstrating the purported control of the WRA.[8]

---

[7] This reference to "Defendants" is unclear and could be a reference to all three Defendants or just to El Tejon and Gragirena. As explained above, this type of undifferentiated pleading is improper for just this reason.

[8] Cántaro's allegation in Claim 3 regarding individual liability can be ignored as nothing more than a "formulaic recitation of the elements of" joint employer and individual liability: "Defendant Gragirena and WRA employed Plaintiff … because they acted directly or indirectly in the interest of El Tejon in

HOLLAND & HART LLP
5441 Kietzke Lane, Second Floor
Reno, Nevada 89511

8988855_1

As such, Cántaro's FLSA claim against Gragirena individually should be dismissed.

### C. El Tejon Can Only Be A Joint Employer of Its Own Employees, Not Those Working with Other Sheep Herding Companies

While the Complaint is unclear as to whether Cántaro asserts that El Tejon or Gragirena may be joint employers of sheepherders who worked on other member ranches of the WRA, such joint employment is not possible under the standard set forth above. As such, the Court should make clear that El Tejon (and if not dismissed, Gragirena) can only potentially be employers (joint or otherwise) of sheepherders who worked for El Tejon *and* only for the time periods for which they worked for El Tejon. El Tejon cannot be considered a joint of employer of any sheepherder for any time period during which the sheepherder worked for a separate WRA member ranch. The Court should simply make this clear from the outset.

## V. CONCLUSION

For the reasons set forth above, Cántaro's complaint should be dismissed for failure to plead a specific week in which he was not paid minimum wages; Gragirena should be dismissed with prejudice from the Nevada state law claim; Gragirena should be dismissed from the FLSA claim; and El Tejon's theoretical joint employer liability should be limited to individuals who worked for El Tejon, not other WRA member ranches.

DATED this 16th day of September 2016.

By: /s/ Anthony L. Hall
ANTHONY L. HALL, ESQ. (NV Bar No. 5977)
ahall@hollandhart.com
R. CALDER HUNTINGTON, ESQ. (NV Bar No. 11996)
rchuntington@hollandhart.com
HOLLAND & HART LLP
5441 Kietzke Lane, Second Floor, Reno, Nevada 89511
Telephone: (775) 327-3000  Fax: (775) 786-6179
*Attorneys for Defendants El Tejon Sheep Company and Melchor Gragirena*

---

relation to Mr. Cantaro ... by, among other things, controlling when, where, and how they worked; maintaining their employment records; setting the terms of their employment; and having the power to hire and fire them." Compl. ¶ 115; *Landers*, 771 F.3d at 644 ("Indeed, such an approach runs afoul of the Supreme Court's pronouncement in *Iqbal* that a Plaintiff's pleading burden cannot be discharged by '[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action ...'") (quoting *Iqbal*, 556 U.S. at 678).

10

8988855_1

# PROOF OF SERVICE

I, Marcia Filipas, declare:

I am employed in the City of Reno, County of Washoe, State of Nevada by the law offices of Holland & Hart LLP. My business address is 5441 Kietzke Lane, Second Floor, Reno, Nevada 89511. I am over the age of 18 years and not a party to this action.

On September 16, 2016, I served the foregoing **DEFENDANTS MELCHOR GRAGIRENA AND EL TEJON SHEEP COMPANY'S MOTION TO DISMISS** by causing the above-named document to be served via **electronic service** through the Court's ECF program and addressed as follows:

Mark R. Thierman, Esq.
Joshua D. Buck, Esq.
Leah L. Jones, Esq.
Thierman Buck
7287 Lakeside Drive
Reno, Nevada  89511
mark@thiermanbuck.com
josh@thiermanbuck.com
leah@thiermanbuck.com

Ellen Winograd, Esq.
Woodburn and Wedge
6100 Neil Road, Ste. 500
Reno, Nevada  89505
ewinograd@woodburnandwedge.com

*Attorney for Defendant Western Range Association*

Christine E. Webber, Esq.
Brian Corman, Esq.
Cohen Milstein Sellers & Toll PLLC
1100 New York Ave., NW, Suite 500
Washington, District of Columbia  20005
cwebber@cohenmilstein.com
bcorman@cohenmilstein.com

Attorneys for Plaintiffs

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct, and that this declaration was executed on September 16, 2016.

/s/ Marcia Filipas
Marcia Filipas

11

8988855_1