Anthony L. Hall, Esq.
Nevada Bar No. 5977
ahall@hollandhart.com
Erica C. Smit, Esq.
Nevada Bar No. 13959
ecsmit@hollandhart.com
HOLLAND & HART LLP
5441 Kietzke Lane, Second Floor
Reno, Nevada  89511
Telephone:  (775) 327-3000
Facsimile:  (775) 786-6179

*Attorneys for Defendants El Tejon Sheep Company
and Melchor Gragirena*

## UNITED STATES DISTRICT COURT

### DISTRICT OF NEVADA

| | |
|---|---|
| ABEL CÁNTARO CASTILLO; ALCIDES INGA RAMOS, and those similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>WESTERN RANGE ASSOCIATION; MELCHOR GRAGIRENA; EL TEJON SHEEP COMPANY; MOUNTAIN PLAINS AGRICULTURAL SERVICE; ESTILL RANCHES, LLC; and JOHN ESTILL,<br><br>Defendants. | CASE NO. 3:16-cv-00237-MMD-VPC<br><br>**DEFENDANTS MELCHOR GRAGIRENA AND EL TEJON SHEEP COMPANY'S MOTION TO DISMISS AMENDED COMPLAINT** |

Defendants El Tejon Sheep Company ("El Tejon") and Melchor Gragirena ("Gragirena") (jointly, "Defendants") by and through their attorneys of record of the law firm of Holland & Hart LLP, hereby move to dismiss Plaintiff Abel Cántaro Castillo's ("Cántaro") Complaint as against El Tejon and Gragirena. This Motion is supported by the following Memorandum of Points and Authorities, the papers and pleadings on file herein, and any oral argument that this Court may allow.

### MEMORANDUM OF POINTS AND AUTHORITIES

**I.  INTRODUCTION**

By his Amended Complaint, Cántaro does not assert any federal claims. Instead, Cántaro asserts Nevada state minimum wage and waiting time penalty claims as well as various state contract, quasi-contract, and tort claims against El Tejon. Cántaro additionally asserts his state minimum wage claim against Gragirena as an individual. El Tejon and Gragirena seek to dismiss all claims against

1

them for lack of jurisdiction because Cántaro has failed to demonstrate that this Court has either federal question jurisdiction or diversity jurisdiction. In the event this Court decides these issues on the merits, El Tejon does not seek to dismiss the state minimum wage claims against it at this stage.[1] However, each of the remaining claims should be dismissed as against El Tejon and Gragirena and the minimum wage claim should be dismissed as against Gragirena.

Cántaro alleges that Gragirena should be individually liable for unpaid minimum wages. Such allegation is directly contrary to binding Nevada law. In 2008, the Nevada Supreme Court determined that individual owners, agents, or officers of a company cannot be held liable for unpaid wages under Nevada law. Specifically, under Nevada law, regardless of the control Gragirena may or may not have exerted, Gragirena cannot be liable for unpaid minimum wages. As such, the claims asserted against Gragirena should be dismissed.

Cántaro also alleges that El Tejon is liable for breach of contract based on an implied term. Cántaro does not claim that El Tejon breached any express terms of the contract. Rather, Cántaro asserts that El Tejon's failure to pay the minimum wage as required under the Nevada Constitution and the Code of Federal Regulations was an implied term and, therefore, constitutes a breach of contract. Such breach of contract claims, however, cannot be bootstrapped onto a cause of action based on the alleged violation of an applicable law. Thus, Cántaro cannot allege breach of contract to extend the statute of limitations period to six years instead of two for failure to pay wages.

Cántaro's other claims—promissory estoppel and unjust enrichment/quantum meruit—also fail for two reasons. First, such claims fail because there is an express, written agreement, and the validity of the contract is not in dispute. Second, Cántaro failed to plead that he read and understood the contract to incorporate the MWA and federal regulations, such that he justifiably relied to his detriment on said understanding.

Therefore, El Tejon and Gragirena respectfully request that this Court dismiss all claims for lack of jurisdiction. In the event this Court deems jurisdiction is proper, Defendants respectfully request that this Court dismiss all claims against El Tejon and Gragirena, except the minimum wage

---

[1] While El Tejon contends the minimum wage claim against it also fails, the factual issues necessary for such argument are not proper at this stage of the proceedings.

claims against El Tejon. *See supra* note 1.

## II.  RELEVANT FACTS AND PROCEDURAL HISTORY[2]

Sometime in 2007, an unnamed representative from Defendant Western Range Association ("WRA") recruited Cántaro to come to the United States to work as a shepherd while Cántaro was living near Huancayo, Peru. *See* First Am. Compl. ("FAC"), ¶ 29 (ECF No. 45). Cántaro signed a document with the unnamed WRA representative regarding the terms and conditions of his employment in the United States. *Id.* ¶ 30. Cántaro worked with and at the direction of the unnamed WRA representative to obtain a visa and otherwise prepare to work in the United States. *Id.* ¶ 31.

When Cántaro came to the United States at the behest of the WRA, the WRA assigned him to work for El Tejon. *Id.* ¶ 32. However, when he began to work at El Tejon, the WRA had Cántaro sign another document prepared by the WRA (not El Tejon) setting forth the terms and conditions of his employment. *Id.* ¶ 33. Amongst these terms and conditions was that the WRA could re-assign Cántaro to any other "WRA ranch at any time—regardless of whether it was his preference to stay on the ranch to which he was originally assigned and regardless of whether the individual WRA ranch on which he worked [El Tejon] agreed to the transfer." *Id.* Thus, according to Cántaro's allegations, Gragirena and El Tejon had no control over whether Cántaro would remain or continue employment with El Tejon. *Id.* Rather, Cántaro alleges that his employment was controlled by the WRA. *Id.* Cántaro voluntarily terminated employment with the WRA and El Tejon in June 2014. *Id.* ¶ 57.

Cántaro contends that the WRA sets and controls the wages for all sheepherders it recruits to work in the United States, regardless of which individual ranch may employ a particular sheepherder. *Id.* ¶ 35. He further contends that Defendants El Tejon and Gragirena adhered to pay and other employment policies the WRA sets. *Id.* Cántaro does not contend that El Tejon or Gragirena set or otherwise created the pay or other employment policies, just that they followed the WRA's policy and accepted the WRA's assignment of Cántaro to El Tejon. *See generally id.*

On October 13, 2016, Cántaro filed the FAC against the WRA, El Tejon, and Gragirena. *See*

---

[2] The factual allegations are taken as true as they are stated in the Complaint for the purposes of this Motion. Defendants do not admit to any of the allegations by this Motion and reserve the right to challenge any of the allegations at any further stage of this litigation.

3

*generally* FAC.[3] In this FAC, Cántaro asserts a multitude of claims. As against El Tejon, Cántaro asserts the following claims: 1) Count 2, failure to pay minimum wage under the Nevada Constitution against Gragirena and El Tejon; 2) Count 6, breach of contract or quasi contract against El Tejon; 3) Count 7, promissory estoppel against El Tejon; 4) Count 8, unjust enrichment and quantum meruit against El Tejon; and 5) Count 10, waiting time penalties against Gragirena and El Tejon. *See generally id.* As to Gragirena, Cántaro asserts only the direct minimum wage claim (Claim 2) and ancillary waiting time penalty claim (Claim 10), not the contract or other claims.

## III. LEGAL STANDARD

A court may dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." FRCP 12(b)(6). A properly pled complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." FRCP 8(a)(2). Rule 12(b)(6) therefore affords a defendant an opportunity to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true. *See Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009). If the factual allegations, taken as true, do not support legal relief, the complaint as a whole or individually insufficient claims should be dismissed. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562 (2007).

In *Iqbal*, the Supreme Court clarified the two-step approach district courts are to apply when considering motions to dismiss. First, a district court must accept as true all well-pled factual allegations in the complaint; however, legal conclusions are not entitled to the assumption of truth. *Iqbal*, 556 U.S. at 678. Mere recitals of the elements of a cause of action, supported only by conclusory statements, do not suffice. *Id.* Second, a district court must consider whether the factual allegations in the complaint allege a plausible claim for relief. *Id.* at 679. A claim is facially plausible when the plaintiff's complaint alleges facts that allow the court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Id.* at 678. Where the complaint does not permit the court to infer more than the mere possibility of misconduct, the complaint has "alleged—but it has not shown—that the pleader is entitled to relief." *Id.* (internal quotation marks omitted). When the claims in a complaint have not crossed the line from conceivable to plausible, the complaint must be

---

[3] The FAC also added an additional Plaintiff, Alcides Ingo Ramos, who asserts claims against Mountain Plains Agricultural Services, Estill Ranches, LLC, and John Estill. *See generally* FAC. Ramos does not assert any claims against the WRA, El Tejon, or Gragirena.

4

dismissed. *See Twombly*, 550 U.S. at 570.

IV.    **LEGAL ARGUMENT**

   A.    **This Court Lacks Jurisdiction Over Cántaro's Claims Against El Tejon and Gragirena**

Cántaro asserts two bases for jurisdiction in the FAC: federal question and diversity jurisdiction under the Class Action Fairness Act. For the reasons described herein, jurisdiction is not proper under either of these bases.

   *1.    This Court Lacks Federal Question Jurisdiction Under § 1331.*

Cántaro claims that this Court has jurisdiction under § 1331 for the contract claims because the contracts require this Court "to resolve significant and serious questions of federal law." FAC ¶ 6. Section 1331—known as federal question jurisdiction—states that "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331 (2012). In this case, the FAC does not raise any federal questions. Rather, Cántaro dropped his claim under the Fair Labor Standards Act. *See* ECF No. 1. Now, all that remains are questions of state law: violations of the Nevada Constitution's Minimum Wage Amendment, contract causes of action, quasi-contract, and Nevada ancillary waiting time penalty claim. *See generally* FAC.

"Inclusion of a federal statute in a private contract does not, of itself, create federal subject matter jurisdiction." *Diven v. Amalgamated Transit Union Int'l & Local 689*, 38 F.3d 598, 602 (D.C. Cir. 1994); *see also City of Chi. v. Comcast Cable Holdings, LLC*, 384 F.3d 901, 904-05 (7th Cir. 2004) ("Mentioning a federal issue in a contract, or for that matter a complaint, does not determine the source of the claim itself."); *Lindy v. Lynn*, 501 F.2d 1367, 1369 (3d Cir. 1974) ("[T]he fact that a contract is subject to federal regulation does not, in itself, demonstrate that Congress meant that all aspects of its performance or nonperformance are to be governed by federal law rather than by the state law applicable to similar contracts in businesses not under federal regulation."); *Wagner v. Flora*, 290 F.2d 508, 508-09 (10th Cir. 1961) ("The plaintiffs further contend that defendants have conspired to deprive them of contractual benefits in violation of 28 U.S.C. § 1343, thereby creating a federal question. But that statute contemplates violations of protected civil rights, and does not extend federal

jurisdiction to suits for damages growing out of alleged breach of contract.").[4]

Instead, claims for breach of contract "arise under state law." *Olson v. Bemis Co.*, 800 F.3d 296, 300 (7th Cir. 2015); *Sheridan Healthcorp, Inc. v. Aetna Health Inc.*, 161 F. Supp. 3d 1238, 1247 (S.D. Fla. 2016) ("Where a plaintiff seeks relief to enforce rights under an independent agreement with a defendant, federal subject matter jurisdiction cannot be established."). For example, in *Price v. Washington Mutual*, the plaintiffs asserted federal question jurisdiction for their two causes of action: breach of contract and fraud. *See* No. CV 10-4875 AHM (SHX), 2010 WL 2792124, at *1 (C.D. Cal. July 14, 2010). The plaintiffs alleged that the defendant breached the contract because it violated federal securities laws, specifically the Counterfeit Detection Act. *See id.* The court rejected plaintiffs' argument that federal question jurisdiction was proper, stating: "This fails to establish federal question jurisdiction under 28 U.S.C. § 1331 because Plaintiffs' breach of contract claim cannot 'arise under' the Counterfeit Detection Act." *Id.*

Here, Cántaro's contract claims arise under state law. Cántaro asserts that federal question jurisdiction is proper because El Tejon "included as implied terms of the contract the requirements of 20 C.F.R. § 655.122 and 20 C.F.R. § 655.210," or incorporated the regulations based on a different document. *See* FAC ¶ 201. Even taking Cántaro's arguments at face value, and even if the regulations were expressly stated in the contracts (which they are not), the contract claims would still arise under state law because the validity or construction of a federal law is not at issue. Rather, Cántaro uses the Code of Federal Regulations to establish that El Tejon should have paid the higher of the federal or state minimum wages.[5] Based on this requirement that the employer pay the highest applicable wage, Cántaro argues that El Tejon failed to pay the *state* minimum wage established by the Minimum Wage Amendment ("MWA") to the Nevada Constitution. *See* FAC ¶ 202 ("Defendant El Tejon failed to pay

---

[4] Additionally, defenses raised regarding federal preemption do not render a claim under a court's federal question jurisdiction because the federal question must be "presented on the face of the plaintiff's properly pleaded complaint . . . [and] the existence of a defense based upon federal law is insufficient to support jurisdiction." *Hall v. N. Am. Van Lines, Inc.*, 476 F.3d 683, 687 (9th Cir. 2007); *Wayne v. DHL Worldwide Express*, 294 F.3d 1179, 1183 (9th Cir. 2002) ("[P]reemption as a defense does not provide a basis for federal jurisdiction . . . ."); *see also Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804, 808 (1986) ("A defense that raises a federal question is inadequate to confer federal jurisdiction.").

[5] For instance, 20 C.F.R. § 655.210(g) states: "The employer must pay the worker at least the monthly AEWR, as specified in § 655.211, the agreed-upon collective bargaining wage, or the applicable minimum wage imposed by Federal or State law or judicial action, in effect at the time work is performed, *whichever is highest*, for every month of the job order period or portion thereof." (emphasis added).

the required wage when it failed to pay the minimum wage required by Article 15, section 16 of the Nevada Constitution for each hour worked, a violation of Nevada state law and of the above cited regulations.").

Cántaro is simply citing to the federal regulations as a basis to establish a violation of the Nevada Constitution, which does not render the contract claims or minimum wage claims within this Court's federal question jurisdiction. *See, e.g., Dunlap v. G&L Holding Grp., Inc.*, 381 F.3d 1285, 1291-92 (11th Cir. 2004) ("The fact that a court must apply federal law to a plaintiff's claims or construe federal law to determine whether the plaintiff is entitled to relief will not confer federal subject matter jurisdiction—the implicated federal issue must be *substantial*."); *Austin v. Ameriquest Mortg. Co.*, 510 F. Supp. 2d 1218, 1226 (N.D. Ga. 2007) ("The mere fact that a court must apply or interpret federal law to determine whether plaintiff is entitled to relief is not sufficient to confer federal question jurisdiction. Rather, the issue must be substantial.").

### 2. *This Court Lacks Diversity Jurisdiction Under § 1332.*

In the alternative to federal question jurisdiction, Cántaro maintains that this Court has diversity jurisdiction under 28 U.S.C. § 1332(d), based on the Class Action Fairness Act ("CAFA"). CAFA grants jurisdiction to the district court over certain class actions, as long as "the class has more than 100 members, the parties are minimally diverse, and the amount in controversy exceeds $5 million." *Yocupicio v. PAE Grp., LLC*, 795 F.3d 1057, 1059 (9th Cir. 2015). Section 1332(d)(6) provides "the claims of the individual class members shall be aggregated whether the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interests and costs." Such aggregation is an exception to the general rule, which requires plaintiffs to each meet the amount in controversy, because it allows separate plaintiffs to add up the value of their claims to meet the $5 million threshold requirement under CAFA. *See* 28 U.S.C. § 1332(d)(6). The burden on proving CAFA applies rests with the party asserting jurisdiction. *See Abrego Abrego v. Dow Chem. Co.*, 443 F.3d 676, 684 (9th Cir. 2006) ("[G]enerally, it is to be presumed that a cause lies outside the limited jurisdiction of the federal courts and the burden of establishing the contrary rests upon the party

asserting jurisdiction." (internal quotation marks omitted)).[6]

Claims against multiple defendants, however, cannot be aggregated to meet the $5 million threshold requirement unless those claims are based on joint liability between the multiple defendants. *See Vagle v. Archstone Communities, LLC*, No. CV 13-09044 RGK AJWX, 2014 WL 463532, at *3 (C.D. Cal. Feb. 5, 2014) ("While CAFA permits aggregation of claims of separate plaintiffs, claims against multiple defendants can only be aggregated when the defendants are jointly liable." (citations omitted)); *see also Middle Tenn. News Co. v. Charnel of Cincinnati, Inc.*, 250 F.3d 1077, 1081 (7th Cir. 2001) ("In diversity cases, when there are two or more defendants, plaintiff may aggregate the amount against the defendants to satisfy the amount in controversy requirement only if the defendants are jointly liable; however, if the defendants are severally liable, plaintiff must satisfy the amount in controversy requirement against each individual defendant."); *Aguayo v. AMCO Ins. Co.*, 59 F. Supp. 3d 1225, 1241 (D.N.M. 2014) ("If multiple defendants are jointly liable, or jointly and severally liable, on some of the claims, however, the amounts of those claims may be aggregated to satisfy the amount-in-controversy requirement as to all defendants jointly liable for the claims."); *State Farm Mut. Auto. Ins. Co. v. A&J Med. Ctr., Inc.*, 20 F. Supp. 3d 1363, 1367 (S.D. Fla. 2014) ("Claims against multiple defendants can only be aggregated when the defendants are jointly liable to the plaintiff." (quoting *Morrison v. Allstate Indem. Co.*, 228 F.3d 1255, 1262 n.7 (11th Cir. 2000)).

In this case, Cántaro cannot demonstrate that jurisdiction is proper under CAFA as against El Tejon and Gragirena because he has failed to meet the requirements of § 1332(d). As a preliminary matter, paragraph 7 of the FAC only asserts CAFA jurisdiction as against WRA, not El Tejon or Gragirena. Nevertheless, even if the jurisdictional assertions in paragraph 7 were construed to apply to El Tejon or Gragirena, Cántaro failed to meet his burden to demonstrate that, without aggregating separate and distinct claims against multiple defendants, there are at least 100 members with a claim-value of over $5,000,000. Cántaro cannot meet this burden because the causes of action brought in the FAC against the multiple defendants are separate, distinct causes of action; they are not based on joint

---

[6] When assertions of jurisdiction under CAFA are challenged, "both sides submit proof and the court then decides where the preponderance lies. Under this system, CAFA's requirements are to be tested by consideration of real evidence and the reality of what is at stake in the litigation, using reasonable assumptions underlying the defendant's theory of damage exposure." *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197-98 (9th Cir. 2015).

liability. Thus, Cántaro cannot meet his burden to demonstrate that CAFA applies.

Cántaro's jurisdictional arguments regarding CAFA are also defeated by the recent Nevada Supreme Court decision on the MWA, which held that a two-year statute of limitations applies. *See Perry v. Terrible Herbst, Inc.*, 132 Nev., Adv. Op. 75, ___ P.3d ___ (Oct. 27, 2016). Cántaro alleges, based on "a period of over six years," that a total of "$10 million in unpaid wages" are due to the class. *See* FAC ¶ 7. These calculations do not add up. For example, Cántaro quit working for El Tejon on June 8, 2014. *See* FAC ¶ 43, 57; *see also* **Exhibit 2**, Declaration of Melchor Gragirena ¶ 5 [hereinafter Gragirena Decl.]. The original complaint in this action was filed on May 3, 2016. *See* ECF No. 1. Thus, Cántaro would only be entitled to wages from May 3, 2014, until June 8, 2014, which equates to 37 days. If Cántaro were entitled to minimum wage for 24 hours per day[7] for that whole period, it would equate to $7,326 (37 days multiplied by 24 hours multiplied by $8.25). Also, even adding an additional 30 days' worth of wages based on count 10, *see* FAC ¶ 224-33, it would only add an additional $5,940 (30 days multiplied by 24 hours multiplied by $8.25), with the total amounting to $13,266 ($7,326 plus $5,940). This total does not take into account the credits El Tejon would be entitled to for wages paid, which total $1,477.08. *See* Gragirena Decl. ¶ 5. With an offset for wages paid, the total amounts to $11,788.92.

Additionally, with a two-year limitations period, there are only eleven other potential opt-in plaintiffs in Cántaro's class. *See* Gragirena Decl. ¶ 4. With a six-year limitations period, there are still only 8 additional potential opt-in plaintiffs in Cántaro's class. *Id.* Therefore, this total of 19 potential opt-in plaintiffs falls short of the required 100 members under CAFA and the jurisdictional damages limit. Accordingly, Jurisdiction is not proper under CAFA or under federal question jurisdiction, which are the only two jurisdictional bases that Cántaro pled in the FAC. Thus, El Tejon and Gragirena respectfully request that this Court dismiss this case for lack of jurisdiction. Nevertheless, even if this Court determines that jurisdiction is proper, many of Cántaro's claims are subject to dismissal on the merits, as described below.

---

[7] For purposes of this motion to dismiss, Cántaro's allegations that he worked 24 hours per day are accepted as true. However, Defendants dispute that Cántaro worked 24 hours per day. Nevada law generally allows employers to exclude up to 8 hours of sleep for a work period. *Cf.* NRS 608.0195. Nevertheless, these calculations are based on Cántaro's allegations and do not exclude periods for meals, rest, and sleep.

**B. Cántaro's Minimum Wage and Waiting Time Penalty Claims Fail Against Gragirena**

By his Complaint, Cántaro seeks to impose individual liability for El Tejon's alleged minimum wage violations against Gragirena as the owner of El Tejon. Nevada law does not allow for such individual liability and, thus, Cántaro's minimum wage and associated waiting time penalty claims (Claims 2 and 10) should be dismissed as against Gragirena with prejudice.

In 2008, subsequent to the passage of the Nevada Constitution's Minimum Wage Amendment ("MWA") in 2006, the Ninth Circuit Court of Appeals certified the question of whether individual agents of corporate employers could be liable for wage and hour claims under Nevada state law. *Boucher v. Shaw* (*Boucher I*), 196 P.3d 959, 960 (Nev. 2008).[8] In answering this question, the Nevada Supreme Court first analyzed the definition of employer provided in NRS 608.011: "'[E]mployer' includes every *person* having control or custody of any employment, place of employment or any employee." *Id.* at 961 (emphasis added). After determining that the statutory language and legislative history was unclear as to whether the statute included individual managers or corporate agents as potential "employers," the Court analyzed Illinois, Kansas, and Colorado law. *Id.* at 962. Unlike the Nevada statute, the Illinois and Kansas statutes expressly "provided for officer and agent liability." *Id.* In contrast to Kansas and Illinois, Colorado did not provide expressly for agent or officer liability even though it referenced agents and officers within the definition of an employer. *Id.* In examining these jurisdictions, the Nevada Supreme Court agreed with the Colorado Supreme Court's view[9] and determined "that had the Nevada Legislature intended to qualify individual managers as employers and thus expose them to personal liability, it would have done so explicitly." *Id.* at 963. Thus, because NRS 608.011 was not explicit in including individual managers or corporate agents as employers or in making them subject to unpaid wage liability, "in Nevada, individual corporate managers are not personally liable, as employers, for unpaid wages." *Id.*

This same analysis holds true under the MWA. The MWA defines an employer as "any

---

[8] While the specific question related to NRS Chapter 608 and not the MWA, the same analysis applies as described below.

[9] *See Leonard v. McMorris*, 63 P.3d 323, 327 (Colo. 2003) (explaining that, unlike the Illinois and Kansas provisions, "Colorado's Wage Claim Act does not contain language directly addressing the issue of corporate officer and agent personal liability for paying earned but unpaid wages" and holding that there was no individual liability for corporate officers and agents).

individual, proprietorship, partnership, joint venture, corporation, limited liability company, trust, association, or other entity *that may employ individuals or enter into contracts of employment.*" Nev. Const. art. 15, § 16 (emphasis added). The MWA does not reference or create, explicitly or otherwise, individual liability for corporate agents, officers, or managers. *See id.* Rather, it provides that the employer is liable, not the owner or other representative of that entity. *See id.* Thus, just as the Nevada Supreme Court determined that NRS Chapter 608 does not provide for individual liability of agents, managers, or officers of a company for unpaid wages because it does not do so explicitly, the Nevada Supreme Court would also determine that the MWA fails to create such liability. Accordingly, only individuals (*e.g.*, a sole proprietorship) or entities that directly employ an individual are potentially liable for wage and hour violations under Nevada law, whether the claim is alleged under the MWA or NRS Chapter 608. *Compare id., with Boucher I*, 196 P.3d at 960-63.

Here, Cántaro does not allege that Gragirena individually hired or employed him or any person he seeks to represent. *See generally* FAC. Rather, he contends that he entered into employment contracts with the WRA and was assigned to work for El Tejon. *See* FAC ¶¶ 30-37. Cántaro specifically contends that he "was employed by one particular WRA ranch, Defendant El Tejon Sheep Company, which is owned and managed by Defendant Gragirena." *Id.* ¶ 32. He then bases his claims against Gragirena merely on allegations that Gragirena owns El Tejon, manages El Tejon, and manages El Tejon workers in those capacities. *See* FAC ¶¶ 32, 38-43 (describing how Gragirena allegedly operated as a manager, but never contending El Tejon was not Cántaro's actual employer).[10] He does not contest that his employment was with El Tejon, not Gragirena in Gragirena's personal capacity. *See* **Exhibit 1**, Cántaro's Employment Agreement between Cántaro and El Tejon.[11] As

---

[10] These allegations would be relevant to a joint employer theory of liability under the Fair Labor Standards Act (the "FLSA"), which Cántaro removed from the FAC, but are irrelevant under Nevada law. *Compare Boucher I*, 196 P.3d at 963, *with Boucher v. Shaw* (*Boucher II*), 572 F.3d 1087, 1090-91 (9th Cir. 2009) (describing joint employment liability under the FLSA).

[11] Exhibit 1 is authenticated in the Declaration of Melchor Gragirena, attached as Exhibit 2. Further, in analyzing a motion to dismiss, the district court may, without converting the motion into one for summary judgment, consider "matters of public record" and other documents that are extrinsic to the complaint "if the documents' authenticity is not contested and the plaintiff's compliant necessarily relies on them." *Lee v. City of L.A.*, 250 F.3d 668, 688-89 (9th Cir. 2001) (internal quotation marks omitted); *see also Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006) ("A court may consider evidence on which the complaint necessarily relies if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." (internal quotation marks omitted));

Cántaro alleges that he was employed by El Tejon, not Gragirena personally, the state law claims (Claims 2 and 10) against Gragirena should be dismissed with prejudice.[12]

### C.   Cántaro's Breach of Contract Claim Fails Against El Tejon

Cántaro alleges a breach of contract cause of action (Claim 6) against El Tejon based on El Tejon's alleged failure to pay the minimum wage required under the MWA. Such a claim, however, must be dismissed because Cántaro does not allege that El Tejon breached any express terms of the contract. Rather, Cántaro only claims that El Tejon breached the contract based on the contract's incorporation or implication of 20 C.F.R. §§ 655.122, 655.210 and El Tejon's alleged violation of those regulations.

"Nevada law requires the plaintiff in a breach of contract action to show: (1) the existence of a valid contract; (2) a breach by the defendant; and (3) damage as a result of the breach." *Saini v. Int'l Game Tech.*, 434 F. Supp. 2d 913, 919-20 (D. Nev. 2006) (citing *Richardson v. Jones*, 1 Nev. 405, 405 (Nev. 1865)). Here, Cántaro cannot demonstrate that El Tejon breached the sheepherder employment agreement based on alleged violations of laws not expressly included in the contract. As discussed below, a breach of contract cause of action cannot be bootstrapped onto a cause of action based on a violation of a statute, particularly when the statute does not provide for such action. Further, a breach of contract action cannot be used to extend the statute of limitations for the alleged violation of a statutory right (*i.e.*, in this case, the limitations period for Cántaro's minimum wage claim is two years, *see* NRS 608.260,[13] where the limitations period for a breach of contract claim is six years, *see* NRS 11.190(1)(b)).

"[A]n alleged violation of any purportedly applicable law does not constitute a breach of contract." *Berger v. Home Depot U.S.A., Inc.*, 476 F. Supp. 2d 1174, 1176 (C.D. Cal. 2007). For

---

*Comm. for Reasonable Regulation of Lake Tahoe v. Tahoe Reg'l Planning Agency*, 365 F. Supp. 2d 1146, 1153 (D. Nev. 2005) ("A court may also treat certain documents as incorporated by reference into the plaintiff's complaint if the complaint refers extensively to the document or the document forms the basis of the plaintiff's claim." (internal quotation marks omitted)). Here, Cántaro's FAC relies on this contract as the basis of his breach of contract claim and, thus, this Court can review it on the motion to dismiss.

[12] Not only does the same individual liability analysis apply to Claim 10, but Claim 10 necessarily relies on Claim 2. If Gragirena did not owe Cántaro unpaid minimum wages, he cannot be liable for waiting time penalties for having failed to pay those minimum wages timely.

[13] The Nevada Supreme Court just recently held that the two year statute of limitations under NRS 608.260 applies to claims under the MWA. *See Perry v. Terrible Herbst, Inc.*, 132 Nev., Adv. Op. 75, ___ P.3d ___ (Oct. 27, 2016).

12

example, in *Berger*, the plaintiff alleged that the Home Depot's contract, which incorporated consumer protection laws, rendered any violation of those laws a breach of contract. *See id.* at 1176-77 (stating plaintiff proposed "that allegations establishing a statutory violation alone may provide the basis for a breach of contract claim"). The court rejected the plaintiff's argument, stating "it is not evident that the statutes allegedly violated in this case . . . were intended to provide a basis for a breach of contract action." *Id.* at 1177. If the court found otherwise, such a holding

> would create two claims for relief, something that is not provided by the statute. Plaintiff's novel theory would create a new breach of contract claim in all circumstances where a statute was allegedly violated. Plaintiff's claim would thus significantly change the core principles of contract law. This expansion of liability is not and should not be part of our jurisprudence. While the [statutes] do[] not necessarily provide plaintiffs with an exclusive remedy, plaintiffs must be required to do something more to allege a breach of contract claim than merely point to allegations of a statutory violation.

*Id.*[14]

Generally, a violation of a statutory right is considered a tort, which is independent of contract. *See Calloway v. City of Reno*, 993 P.2d 1259, 1263 (Nev. 2000) ("A breach of contract may be said to be a material failure of performance of a duty arising under or imposed by agreement. A tort, on the other hand, is a violation of a duty imposed by law, *a wrong independent of contract*." (emphasis added) (quoting *Bernard v. Rockhill Dev. Co.*, 734 P.2d 1238, 1240 (Nev. 1987)). Parties to a contract can still commit torts, but the contractual relationship does not automatically render all torts a breach

---

[14] The United States District Court of the District of New Jersey reached a similar conclusion when evaluating two different causes of action: one under the New Jersey Franchise Practices Act ("NJFPA") and one under breach of contract. *See Goldwell of N.J., Inc. v. KPSS, Inc.*, 622 F. Supp. 2d 168, 195 (D.N.J. 2009).

> Mid-Atlantic cannot bootstrap its NJFPA cause of action onto its distinct breach of contract claim; *the two are separate causes of action accompanied by separate requirements*. A franchisor can in all respects comply with the terms of a franchise agreement, yet violate the NJFPA when it permits a franchise agreement to expire without good cause; conversely, a franchisor can subscribe to the NJFPA's mandates, but nonetheless breach a franchise agreement. Acceptance of Mid-Atlantic's argument would render every franchisor's violation of the NJFPA for failure to renew—despite compliance with the contract's terms—a *per se* breach of contract. Mid-Atlantic cites no authority for this extraordinary proposition. As the Court can find none either, it rejects as a matter of law Mid-Atlantic's attempt to re-argue its NJFPA claim under the guise of breach of contract.

*Id.* (emphasis added) (allowing the NJFPA cause of action to proceed but dismissing on summary judgment the breach of contract cause of action).

of contract. *See id.* ("Torts can, of course, be committed by parties to a contract."). Thus, to determine whether an action is a breach of contract or a tort, the court must ask "whether the actions or omissions complained of constitute a violation of duties imposed by law, or of duties arising by virtue of the alleged express agreement between the parties." *Id.*; *see also Giles v. Gen. Motors Acceptance Corp.*, 494 F.3d 865, 880 (9th Cir. 2007) (analyzing under the economic loss doctrine appellants' fraud claim based on the parties' contract and concluding that General Motors "had an independent duty imposed by law not to commit fraud, a duty not arising by virtue of the alleged express agreement between the parties" (internal quotation marks omitted)).

Here, Cántaro's breach of contract claim against El Tejon fails as a matter of law. The FAC makes clear that Cántaro's breach of contract claim is premised upon El Tejon's alleged failure to comply with the MWA. Cántaro claims that El Tejon breached the contract because it has a clause which generally states El Tejon will comply with applicable law and, thus, implies the MWA was part of the contract. However, the Agreement does not expressly incorporate the MWA. *See* Exhibit 1. Cántaro concedes this by stating El Tejon "explicitly incorporated" the regulations "*through* the H2A Applications and job orders" but not the actual agreement. FAC ¶ 201 (emphasis added). Alternatively, Cántaro argues the Agreement "included as implied terms" the requirements of the regulations, without quoting to any provision of the Agreement. *Id.* The failure to identify a specific, express contractual provision that El Tejon allegedly breached is, on its own, fatal to Cántaro's breach of contract claim. *See, e.g., In re Anthem, Inc. v. Data Breach Litig.*, 162 F. Supp. 3d 953, 979 (N.D. Cal. 2016) (dismissing plaintiff's breach of contract claim that alleged defendants were bound to comply with federal and state laws and regulations because it failed to "identify a specific contractual provision" that the defendants supposedly breached); *In re Worldcom, Inc. v. Sec. Litig.*, 456 F. Supp. 2d 508, 519 (S.D.N.Y. 2006) (dismissing breach of contract claim based on contract's general provision that it is subject to all applicable laws because it failed to identify a specific contractual provision, and stating: "To the extent that Holmes is contending that Smith Barney violated any law or regulation, then he was obligated to identify the law and bring a claim pursuant to it, assuming it created a private right of action"). Unlike *Anthem* and *Worldcom*, however, Cántaro's argument is even more convoluted, requiring this Court to incorporate by implication multiple documents or regulations to even apply the MWA, as he argues the contract incorporated the H-2A applications and

job orders, which incorporated the federal regulations, which rendered the MWA applicable. *See* FAC ¶ 201.

To make matters worse for Cántaro, the breach of contract cause of action additionally fails because the Agreement did not include as an express term that El Tejon would pay Cántaro the hourly minimum wage prescribed under the MWA. Instead, the Agreement provides as an express term that El Tejon would pay Cántaro no less than $750.00 per month. *See* Exhibit 1. Cántaro does not claim that El Tejon breached this express term. *See* FAC ¶ 49. Thus, Cántaro is simply attempting to hold El Tejon liable for breach of contract based on El Tejon's alleged duty to pay wages imposed by law (*e.g.*, the MWA). This is not a contract issue. Rather, El Tejon complied with all express terms of the Agreement. Even with provisions in the Agreement stating El Tejon will comply with all applicable laws, such broad provisions do not create a separate cause of action under breach of contract for duties imposed by law, nor does the MWA provide for a breach of contract cause of action in addition to its private cause of action listed. *See* Nev. Const. art. 15, § 16. Thus, Cántaro's breach of contract cause of action should be dismissed.

### D. Cántaro's Promissory Estoppel, Unjust Enrichment, and Quantum Meruit Claims Fail Against El Tejon

Cántaro argued in the alternative to his breach of contract cause of action that El Tejon is liable under theories of promissory estoppel and unjust enrichment/quantum meruit. *See* FAC ¶¶ 204-13. However, both of these causes of action fail because there is an express, written contract, and neither party disputes its validity.[15] *See* Exhibit 1; *see supra* note 11.

---

[15] Cántaro's causes of action for promissory estoppel and unjust enrichment/quantum meruit are pleaded in the alternative to his breach of contract action. While some courts have allowed such alternative pleading in the event the contract is found unenforceable, *see DFR Apparel Co. v. Triple Seven Promotional Products, Inc.*, No. 2:11-CV-01406-APG, 2014 WL 4891230, at *3 (D. Nev. Sept. 30, 2014), other courts reject alternative quasi-contract pleading when the validity of the express contract is not in dispute. *See Res. Title Agency, Inc. v. Morreale Real Estate Servs., Inc.*, 314 F. Supp. 2d 763, 772 (N.D. Ohio 2004) ("[U]njust enrichment may be pled in the alternative when the existence of an *express contract is in dispute*, and may be maintained despite the existence of an express contract where there is evidence of fraud, bad faith, or illegality." (emphasis added) (citation omitted)); *Advanced Plastics Corp. v. White Consol. Indus., Inc.*, 828 F. Supp. 484, 491 (E.D. Mich. 1993) ("[A]lternative pleading of an implied contract claim is only allowed in a contract setting where a party doubts the existence of a contract."). Here, neither party disputes the existence and validity of the contract. *See* FAC ¶ 33.

### 1. Cántaro's Promissory Estoppel Claim Fails

Promissory estoppel is a consideration substitute, not a contract substitute. *See Vancheri v. GNLV Corp.*, 777 P.2d 366, 369 (Nev. 1989) ("The doctrine of promissory estoppel, which embraces the concept of detrimental reliance, is intended as a substitute for consideration, and not as a substitute for an agreement between the parties." (citing *Kruse v. Bank of Am.*, 248 Cal. Rptr. 217 (1988)); *Pink v. Busch*, 691 P.2d 456, 459 (Nev. 1984). To establish a claim of promissory estoppel, a plaintiff must prove four elements:

> (1) the party to be estopped must be apprised of the true facts; (2) he must intend that his conduct shall be acted upon, or must so act that the party asserting estoppel has the right to believe it was so intended; (3) the party asserting the estoppel must be ignorant of the true state of facts; (4) he must have relied to his detriment on the conduct of the party to be estopped.

*Pink*, 691 P.2d at 459-60 (quoting *Cheqer, Inc. v. Painters & Decorators Joint Comm., Inc.*, 655 P.2d 996, 998-99 (Nev. 1982)).

When an express agreement exists between the parties, promissory estoppel does not apply. *See Morgan v. Aurora Loan Servs., LLC*, 646 F. App'x 546, 551 (9th Cir. 2016) ("Under California law, promissory estoppel applies only in the absence of an express agreement between the parties."); *see also Am. Sav. & Loan Ass'n v. Stanton-Cudahy Lumber Co.*, 455 P.2d 39, 41 (Nev. 1969) ("[T]he doctrine of promissory estoppel which provides that in a case *where traditional consideration is lacking*, reliance which is foreseeable, reasonable, and serious will require enforcement if injustice cannot otherwise be avoided." (emphasis added)).

In this case, the express agreement between the parties defeats Cántaro's cause of action for promissory estoppel. Further, it appears that Cántaro's promissory estoppel claim is based on El Tejon's alleged promise to Cántaro to adhere to the supposed implied incorporation of the Code of Federal Regulations into the Agreement. *See* FAC ¶ 206 ("Defendant El Tejon promised Plaintiff Cántaro and the El Tejon Class that it would adhere to 20 C.F.R. § 655.122 and 20 C.F.R. § 655.210."). To the extent that Cántaro's claim is based on the theory underlying the breach of contract cause of action, it must also be dismissed for the same reasons. *See supra* Part IV(C). Moreover, Cántaro failed to plead *justifiable* and *reasonable* reliance, which is necessary to maintain a claim for

promissory estoppel. *See Pellegrini v. State*, 34 P.3d 519, 531 (Nev. 2001) (stating equitable estoppel "requires justifiable reliance by the party invoking the doctrine"); *Am. Sav. & Loan Ass'n*, 455 P.2d at 41. Here, Cántaro's reliance is not justifiable or reasonable because the alleged promise from El Tejon was based on El Tejon's general contract term that it would comply with all applicable laws. Cántaro did not plead that he read and understood such a broad statement to mean that El Tejon would comply with 20 C.F.R. §§ 655.122, 655.210, which, in turn, means that El Tejon would pay the wage required under the MWA. As such, Cántaro's allegations of detrimental reliance in his promissory estoppel claim are conclusory and should, thus, be dismissed.

### 2. Cántaro's Unjust Enrichment and Quantum Meruit Claim Fails

Like Cántaro's claim of promissory estoppel, the claim of unjust enrichment/quantum meruit also fails because an express, written agreement exists. "An action based on a theory of unjust enrichment is not available when there is an express, written contract, because no agreement can be implied when there is an express agreement." *Leasepartners Corp. v. Robert L. Brooks Tr. Dated Nov. 12, 1975*, 942 P.2d 182, 187 (Nev. 1997) ("The doctrine of unjust enrichment or recovery in quasi-contract applies to situations where there is no legal contract . . . ." (quoting 66 Am. Jur. 2d *Restitution* § 11 (1973)); *see also WuMac, Inc. v. Eagle Canyon Leasing, Inc.*, No. 2:12-CV-0926-LRH-VCF, 2013 WL 593396, at *4 (D. Nev. Feb. 14, 2013) ("[A] claim for quantum meruit is not actionable when the claim is based on an express contract. As there is an express contract at issue in this action, the court shall grant Eagle's motion as to this issue and dismiss WuMac's claim for quantum meruit."); *Lipshie v. Tracy Inv. Co.*, 566 P.2d 819, 824 (Nev. 1977) ("To permit recovery by quasi-contract where a written agreement exists would constitute a subversion of contractual principles.").

Here, there was a written agreement between Cántaro and El Tejon governing pay. *See* FAC ¶ 33; Exhibit 1. As such, Cántaro's unjust enrichment claim fails as a matter of law and should be dismissed. As to Cántaro's quantum meruit claim, the "Nevada Supreme Court recently explained the contours of the often confused quantum meruit claim. Quantum meruit is pled in two distinct contexts: contract and restitution." *See Risinger v. SOC LLC*, 936 F. Supp. 2d 1235, 1246-47 (D. Nev. 2013) (citing *Certified Fire Prot. Inc. v. Precision Constr.*, 283 P.3d 250, 256 (Nev. 2012)). In the contract context, quantum meruit may supply absent terms to contracts implied-in-fact. *See id.* at 1247.

17

"Quantum meruit's other role," however, "is in providing restitution for unjust enrichment . . . ." *Id.* (quoting *Certified Fire*, 283 P.3d at 256). In this role, quantum meruit serves as a remedy for unjust enrichment. *Id.* It is in this context Cántaro pleads quantum meruit, as a remedy for the alleged unjust enrichment, as demonstrated by Count 8 being labeled "Unjust Enrichment and Quantum Meruit." *See* FAC ¶ 210. However, as the unjust enrichment claim fails, there can be no remedy and no quantum meruit. Thus, to the extent this Court considers the quantum meruit aspect of Count 8 in any way separate from the unjust enrichment claim, it too should be dismissed.

## V. CONCLUSION

For the reasons set forth above, Cántaro's claims should be dismissed because this Court lacks jurisdiction under both 28 U.S.C. §§ 1331-32. On the merits, however, counts 2 and 10 should be dismissed as against Gragirena because he cannot be held individually liable under the Minimum Wage Amendment as he is not an "employer." Count 6 should be dismissed against El Tejon because a breach of contract cause of action cannot be maintained solely based on the alleged violation of a statute. Counts 7 and 8 should be dismissed because they are quasi-contract claims, pleaded in the alternative, and neither party disputes the validity or existence of an express, written agreement.

DATED this 10th day of November 2016.

By: /s/ Anthony L. Hall
Anthony L. Hall, Esq.
Nevada Bar No. 5977
ahall@hollandhart.com
Erica C. Smit, Esq.
Nevada Bar No. 13959
ecsmit@hollandhart.com
HOLLAND & HART LLP
5441 Kietzke Lane, Second Floor,
Reno, Nevada 89511
Telephone: (775) 327-3000
Facsimile: (775) 786-6179
*Attorneys for Defendants El Tejon Sheep Company and Melchor Gragirena*

# PROOF OF SERVICE

I, Marcia Filipas, declare:

I am employed in the City of Reno, County of Washoe, State of Nevada by the law offices of Holland & Hart LLP. My business address is 5441 Kietzke Lane, Second Floor, Reno, Nevada 89511. I am over the age of 18 years and not a party to this action.

On November 10, 2016, I served the foregoing **DEFENDANTS MELCHOR GRAGIRENA AND EL TEJON SHEEP COMPANY'S MOTION TO DISMISS** by causing the above-named document to be served via **electronic service** through the Court's ECF program and addressed as follows:

Mark R. Thierman, Esq.
Joshua D. Buck, Esq.
Leah L. Jones, Esq.
Thierman Buck
7287 Lakeside Drive
Reno, Nevada  89511
mark@thiermanbuck.com
josh@thiermanbuck.com
leah@thiermanbuck.com

Christine E. Webber, Esq.
Brian Corman, Esq.
Cohen Milstein Sellers & Toll PLLC
1100 New York Ave., NW, Suite 500
Washington, District of Columbia  20005
cwebber@cohenmilstein.com
bcorman@cohenmilstein.com

Alexander Hood, Esq.
Towards Justice
1535 High St., Ste. 300
Denver, CO  80218

*Attorneys for Plaintiffs*

Ellen Winograd, Esq.
Woodburn and Wedge
6100 Neil Road, Ste. 500
Reno, Nevada  89505
ewinograd@woodburnandwedge.com

*Attorney for Defendant Western Range Association*

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct, and that this declaration was executed on November 10, 2016.

/s/ Marcia Filipas
Marcia Filipas

9182501_5