1  Ellen Jean Winograd, Esq.
   State Bar No. 815
2  Joshua M. Woodbury, Esq.
   State Bar No. 11326
3  WOODBURN AND WEDGE
   6100 Neil Road, Suite 500
4  Reno, Nevada 89511-1149
   (775) 688-3000
5  (775) 688-3088 - facsimile
   ewinograd@woodburnandwedge.com
6  jwoodbury@woodburnandwedge.com

7  Attorneys for Defendant
   WESTERN RANGE ASSOCIATION
8

9              **IN THE UNITED STATES DISTRICT COURT**

10                  **FOR THE DISTRICT OF NEVADA**

| | |
|---|---|
| 11  ABEL CÁNTARO CASTILLO; ALCIDES INGA RAMOS; and those similarly situated, | Case No. 3:16-cv-00237-MMD-VPC |
| 12 | **DEFENDANT WESTERN RANGE ASSOCIATION'S:** |
| 13              Plaintiffs, | |
| 14  vs. | **(1) JOINDER IN MELCHOR GRAGIRENA AND EL TEJON SHEEP COMPANY'S MOTION TO DISMISS AMENDED COMPLAINT AND** |
| 15  WESTERN RANGE ASSOCIATION; MELCHOR GRAGIRENA; EL TEJON SHEEP COMPANY; MOUNTAIN PLAINS AGRICULTURAL SERVICE; ESTILL RANCHES, LLC; and JOHN ESTILL, | |
| 16 | **(2) MOTION TO DISMISS COUNTS ONE, THREE, FOUR, FIVE AND NINE OF PLAINTIFFS' FIRST AMENDED COMPLAINT** |
| 17              Defendants. | |

19        COMES NOW Defendant WESTERN RANGE ASSOCIATION (hereinafter

20  "WRA"), by and through its attorney ELLEN JEAN WINOGRAD of WOODBURN AND

21  WEDGE, and hereby joins in Defendants Melchor Gragirena and El Tejon Sheep

22  Company's Motion to Dismiss Amended Complaint filed on November 10, 2016 [Doc

23  #55]. WRA further moves the Court to dismiss Counts One, Three, Four, Five and Nine

24  of Plaintiffs' First Amended Complaint ("FAC"). WRA's Motion is supported by the

25  following Memorandum of Points and Authorities.

# TABLE OF CONTENTS

MEMORANDUM OF POINTS AND AUTHORITIES...........................................................3

I     INTRODUCTION ...................................................................................................3

II    STATEMENT OF FACTS .....................................................................................4

III   PROCEDURAL BACKGROUND ..........................................................................5

IV   ARGUMENT .........................................................................................................5

    A.   Joinder in Melchor Gragirena and El Tejon Sheep Company's
          Motion to Dismiss Amended Complaint .......................................................5

    B.   Standard of Review ......................................................................................6

    C.   *Llacua, et al. v. Western Range, et al.* ........................................................7

    D.   Federal Regulation of H-2A Herders............................................................8

    E.   The DOL's Implementation of AEWR-Based Wages Defeats Plaintiffs'
          Nevada Wage Claims ................................................................................11

          1.   Plaintiff Cántaro's MWA Claim Fails...............................................12

          2.   Plaintiff Cántaro's Breach of Contract Claim Fails.........................14

          3.   Plaintiff Cántaro's Promissory Estoppel Claim Fails......................17

          4.   Plaintiff Cántaro's Unjust Enrichment/Quantum Meruit
              Claim Fails .....................................................................................19

    F.   If Plaintiffs' Claims Somehow Survive Preemption, They Must Still
          be Dismissed Because they are Barred by the Applicable Nevada
          Statutes of Limitations................................................................................20

V     CONCLUSION....................................................................................................23

## MEMORANDUM OF POINTS AND AUTHORITIES

I

## INTRODUCTION

The instant action purports to be a "class action" lawsuit brought by Abel Cántaro Castillo ("Cántaro") and Alcides Inga Ramos ("Ramos") (collectively referred to as "Plaintiffs"), on behalf of themselves and "all of those similarly situated."[1] Plaintiff Cántaro is suing Defendants WRA, El Tejon Sheep Company ("El Tejon") and Melchor Gragirena ("Gragirena"); Plaintiff Ramos is suing Defendants Mountain Plains Agricultural Service ("MPAS"), Estill Ranches, LLC ("Estill Ranches") and John Estill ("Estill"). [FAC, Doc #45, p. 20, ¶ 126-p. 26, ¶ 175.]

Defendant WRA is a California nonprofit corporation facilitating the recruitment and visa processing for H-2A skilled sheep herder labor, primarily from South and Central America.[2] [Doc #45, p. 4, ¶ 13.] WRA is currently headquartered in Twin Falls, Idaho. [Doc #45, p. 4, ¶ 13.]

Plaintiffs' FAC asserts twenty causes of action (labeled as Counts One through Twenty). [Doc #45.] This Motion to Dismiss pertains to Counts One, Three, Four, Five and Nine brought by Plaintiff Cántaro against WRA.[3] The alleged WRA "class" is "All persons whom WRA employed as shepherds through the H-2A program, who worked in Nevada during the applicable statute of limitations." [Doc #45, p. 18, ¶ 111.] The alleged "WRA Former Employee Sub-Class" is "All persons whom WRA employed as

---

[1]    Although the "class" Plaintiffs seek to establish is disputed, that will be the subject of subsequent Motion practice, should any of Plaintiffs' claims survive as to Defendant WRA.

[2]    The Department of Labor's ("DOL") H-2A statutes and regulations, discussed infra, create the regulatory scheme governing foreign H-2A labor for sheep herding and goat herding. Because the DOL has occupied the entire field of H-2A regulations (with interagency participation by Homeland Security ("DHS"), Immigration and other agencies), the wage floors are established in a statutorily specific Federal regulatory setting.

[3]    The remaining Counts are brought against other Defendants and not WRA.

1  shepherds through the H-2A program, who worked in Nevada during the applicable

2  statute of limitations and who are no longer employed by the WRA."

3  II

4  **STATEMENT OF FACTS**

5  Plaintiff employee Cántaro was a herder at El Tejon, dividing his time between

6  California and Nevada. [Doc #45, p. 4, ¶ 9.] Plaintiff Cántaro claims to have worked

7  from about October to mid-April (seven months out of the year) in California [Doc #45,

8  p. 9, ¶ 44], and from mid-April to September or early October (the remaining five months

9  of the year) in Nevada. [Doc #45, p. 9, ¶ 44.] Defendant El Tejon, a WRA member, paid

10  Plaintiff Cántaro the higher California H-2A rate of $1,422.00 per month during his

11  course of employment. [Doc #45, p. 16, ¶ 97.]

12  The $1,422.00 monthly rate paid to Plaintiff Cántaro was the prevailing <u>California</u>

13  <u>wage rate</u> at the time, in compliance with the then-current monthly Adverse Effect Wage

14  Rate ["AEWR"]. [Doc #45, p. 16, ¶ 95.] This <u>higher</u> $1,422.00 California rate was paid,

15  despite the fact that Plaintiff Cántaro was dividing his time between California and

16  Nevada during his work as a herder.[4] [Doc #45, p. 4, ¶¶ 9, 11.]

17  Plaintiff Ramos was an employee of Estill Ranches in Nevada from April, 2012 to

18  around February 2013. [Doc #45, p. 4, ¶ 10.] Plaintiff Ramos' causes of action are

19  against Defendants Estill Ranches and Mountain Plains Agricultural Service ("MPAS").

20  [Doc #45, pp. 24-25, 35-42.]

21  /././.

22

23  [4]   Prior to November 15, 2015, Nevada's monthly wage rate was much lower than California's. As the Complaint points out, the DOL previously set the wage floor at $800 per month in Nevada, until it was recently

24  changed to $1,206.31, effective November 16, 2015. [Doc #45, p. 15, ¶ 90.] This Nevada change was in accordance with the "phasing in" provisions of new monthly wage requirements. This amount will increase annually by 10% in both 2017 and 2018 in order to reach the overall total monthly wage calculated in the Federal regulation changes.

25  *See,* 20 CFR 655.211(c)-(d). **However, these recent changes are inapplicable to Plaintiff Cántaro because he never worked as a herder for Defendant El Tejon in 2015.** [Doc #45, p. 4, ¶ 9.]

## III

## PROCEDURAL BACKGROUND

Originally, sole Plaintiff Cántaro filed suit against WRA, El Tejon and Gragirena on May 3, 2016. [Doc #1.] WRA was served with the Summons and Complaint on July 28, 2016. [Doc #14.] Defendant El Tejon was served with the Summons and Complaint on July 25, 2017. [Doc #15.] Defendant Gragirena was served with the Summons and Complaint, pursuant to this Court's extension, on August 3, 2016. [Doc #20.]

On September 10, 2016, WRA and El Tejon both filed motions to dismiss. On October 13, 2016, Plaintiff Cántaro, plus newly named Plaintiff Alcides Inga Ramos ("Ramos") filed an Amended Complaint, wherein additional defendants were added, as were 17 new causes of action. [Doc #45.] The Amended Complaint also omitted the Fair Labor Standards Act (FLSA) Cause of Action previously asserted in the original Complaint. [Doc #1, pp. 21-22.] Co-Defendants El Tejon and Gragirena filed a "Motion to Dismiss Amended Complaint" on November 10, 2016. [Doc #55.] WRA now files this Joinder in El Tejon and Gragirena's Motion to Dismiss and files its own Motion to Dismiss Counts One, Three, Four, Five and Nine of Plaintiffs' FAC.

## IV

## ARGUMENT

**A.    *Joinder in Melchor Gragirena and El Tejon Sheep Company's Motion to Dismiss Amended Complaint.***

Defendant WRA hereby joins in the legal and jurisdictional arguments raised by Defendants Melchor Gragirena and El Tejon Sheep Company (hereinafter "El Tejon Defendants") in their November 10, 2016 Motion to Dismiss Amended Complaint ("El Tejon Motion"). [Doc #55.] Although Defendant WRA does not specifically adopt all facts asserted by the El Tejon Defendants, for purposes of this Motion only, the factual and legal support for the El Tejon Defendants will be accepted as true, as will the *non-*

1  *conclusory* allegations contained in Plaintiffs' FAC. *See, e.g., Soo Line R.R. v. St. Louis*

2  *Southwestern Ry. Co.*, 125 F.3d 481, 483 (7th Cir. 1997).

3  **B.    *Standard of Review.***

4  The United States Supreme Court has held that to open the doors to discovery, a

5  plaintiff must first allege a plausible claim for relief as judged by judicial experience and

6  common sense. *Ashcroft v. Iqbal*, 556 U.S. 662, 679, (2009). "While a complaint

7  attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual

8  allegations…a plaintiff's obligation to provide the 'grounds' for his 'entitle[ment] to relief'

9  [under Rule 8(a)(2)] requires more than labels and conclusions, and a formulaic

10  recitation of the elements of a cause of action will not do.… [Therefore,] factual

11  allegations must be enough to raise a right to relief above the speculative level…on the

12  assumption that all the allegations in the complaint are true (even if doubtful in fact)."

13  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), quoting FRCP 8.

14  "While legal conclusions can provide the framework of a complaint, they must be

15  supported by factual allegations." *Iqbal, supra,* 556 U.S. at 679. A plaintiff's allegations

16  that are conclusory in nature "**disentitles [it] to the presumption of truth**." *Id.* at 681

17  (emphasis added). A plaintiff can "plead himself out of a claim" by including factual

18  allegations contrary to the factual elements of his claims or contradicted by documents

19  referred to in the complaint. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th

20  Cir. 2001); *See also, Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295-96 (9th Cir.

21  1998) ["We are not required to accept as true conclusory allegations which are

22  contradicted by documents referred to in the complaint."]; *Soo Line R.R. v. St. Louis*

23  *Southwestern Ry. Co.*, 125 F.3d 481, 483 (7th Cir.1997) ["A plaintiff can plead himself

24  out of court by alleging facts which show that he has no claim, even though he was not

25  required to allege those facts."]

6

In the instant case, as set forth herein, Plaintiffs' claims against Defendant WRA fail to meet the applicable standard, no plausible claim has been alleged. *Ashcroft v. Iqbal, supra.* Plaintiffs' First, Third, Fourth, Fifth and Ninth Counts must be dismissed as a matter of law.

C.   *Llacua, et al. v. Western Range, et al.*

As set forth in Plaintiffs' own FAC, one class action lawsuit was already brought in Colorado, alleging the same or similar claims for H-2A herders alleging DOL wage floor <u>and</u> Nevada law violations:

> *Rodolfo Llacua, Esliper Huaman, Leovegildo Vilchez Guerra, Liber Vilchez Guerra and Rafael De La Cruz,*
>
> *v.*
>
> *Western Range Association, Mountain Plains Agricultural Service, Martin Auza Sheep Corporation, Nottingham Land and Livestock, LLLP, Two Bar Sheep Corporation, LLC, Ball Brothers Sheep Company, Estill Ranches, LLC, Cunningham Sheep Company, Dennis Richins DBA Dennis Richins Livestock and Child Ranch, LLC,*
> Case 1:15-cv-01889-REB-CBS

[Doc #45, p. 19, ¶ 121.]

Plaintiff Cántaro mentioned the *Llacua* class action case in **both** the original Complaint [Doc #1] and the FAC [Doc #45]. Defendant WRA notes that in *Llacua,* a Colorado Federal Court recently addressed (some) similar wage issues and issued a 42-page Magistrate's Recommendation and subsequent District Court Order adopting the Recommendation. *See, Llacua, et al. v. WRA, et al.,* (Magistrate) Recommendation on Defendants' Motions to Dismiss the Second Amended Complaint and (Judge

/././.

/././.

/././.

7

Blackburn) Order Overruling Objections to Recommendation of the United States Magistrate Judge, submitted herewith, as Exhibits 1 and 2.[5]

### D.    *Federal Regulation of H-2A Herders.*

Plaintiffs have alleged twenty Causes of Action. Counts One and Two both claim a failure to pay Nevada minimum wage "in violation of the Nevada Constitution."[6] A careful review of Plaintiffs' own FAC, however, illustrates that Plaintiffs appear to concede that they were paid in compliance with applicable Federal law. [Doc #45, p. 28, ¶ 186.][7] In essence, Plaintiffs seem to be claiming in both the original Complaint and the FAC, that Defendants' very <u>compliance</u> with the applicable Federal wage mandates forms the basis for claims. Therefore, analysis of the H-2A regulations unique to foreign herders is warranted.

The following are the Federal regulations applicable to the H-2A sheep herder worker program: 20 CFR. § 655.200, *et. seq.* (special provisions for "range sheep herding, goat herding, and production of livestock occupations"); 20 CFR. § 655.100, *et seq.* (which is only applicable when **not** contrary to or conflicting with the special provisions regarding sheep herding in § 655.200, *et. seq.*); 29 U.S.C. 213(a)(6)(E) (providing FLSA minimum wage exemption for agricultural livestock range production employees).

---

[5]    While this is not submitted herein as precedent, Plaintiffs themselves highlighted the *Llacua* matter in their FAC [Doc #45, p. 19, ¶ 121] and since Plaintiffs' counsel was also plaintiffs' counsel in *Llacua*, he is well aware of the existence and status of that action.

[6]    Those two claims arising from alleged Nevada constitutional claims, one under Section 16 of Article 15 of the Nevada Constitution [Doc #45, pp. 26-28]. Only Count One pertains to Defendant WRA.

[7]    Although not in the FAC, Plaintiff Cántaro's original Complaint set forth the following wage chart, with which Defendants were also alleged to have complied:

| Wage Floor | State | Dates |
|---|---|---|
| $800 per month | Nevada | Until November 16, 2015 |
| $1206.31 per month | Nevada | November 16, 2015 – Present |
| $1422.55 per month | California | Until June 30, 2014 |
| $1600.34 per month | California | July 1, 2014 – January 1, 2016 |
| $1777.98 per month | California | January 1, 2016 – Present |

[Plaintiffs' Complaint, Doc #1., p. 10]

The relevant special provisions outlining H-2A sheep herder workers' rates of pay are 20 CFR. §§ 655.210(g) and 655.211. Section 655.210(g) provides that an "employer must pay the worker at least the monthly AEWR, as specified in § 655.211, the agreed-upon collective bargaining wage, or the applicable minimum wage imposed by Federal or State law [or judicial action] in effect at the time work is performed, whichever is highest, for every month of the job order period or portion thereof." 20 CFR § 655.210. The specific Federal minimum H-2A wage floor (AEWR), by State, **is dictated** by the DOL.[8] For Nevada (pre-November 15, 2015) it was $800 per month, plus room and board.[9]

Plaintiffs seem to imply that this "whichever is highest" clause imposes the requirement that employers of sheep herders must pay (State or Federal) minimum wage if it is indeed higher. However, sheep herding work has been deemed to be impossible to track via "hours worked" due to the remoteness of the services provided, so the monthly AEWR must be applied as a matter of law. 80 Fed. Reg. 62957, 62984; *see also*, 80 Fed. Reg. 78840.

The DOL provides guidance in stating that "[t]his paragraph [§ 655.211(a)] requires the application of State or Federal minimum wage law, **if applicable,** but [. . .]

---

[8]   Prior to November 16, 2015, the AEWR wage floor established by the DOL was as follows:

| State(s) | Wage Floor ($/Month) |
|---|---|
| Colorado, Idaho, Montana, New Mexico, North Dakota, Oklahoma, Texas, Utah and Wyoming | $750 |
| Arizona and Washington | $750 |
| Nevada | $800 |
| California | $1,422.55 |
| Oregon | $1,277 |

As of November 16, 2015, the wage floor for H-2A sheep herders in Nevada was raised by the DOL to $1,206.31 per month. *See*, Labor Certification Process for the Temporary Employment of Aliens in Agriculture in the United States: Adverse Effect Wage Rate for Range Occupations Through 2016, 80 Fed. Reg. 70840 (the "2015 Special Procedures").

[9]   The post-November 15, 2016 rates are irrelevant since Plaintiffs' own pleading states that Plaintiff Cántaro worked for El Tejon in Nevada and California only through 2014. [Doc #45, p. 4, ¶ 9.]

employers employing workers in these occupations are *currently exempt* from application of the Fair Labor Standards Act (FLSA) Federal minimum wage." 80 Fed. Reg. 62988 (2015) (multiple emphases added) (looking to the language of the provision stating "or the *applicable* minimum wage imposed by Federal or State law[.]") Thus, although it seems that § 655.210(g) mandates minimum wage if it is higher, it only does so *if FLSA applies to the H-2A sheep herder workers* in question. As set forth herein, it does not. **Agricultural livestock workers, such as sheep herders, on a range are exempt under FLSA; consequently, the AEWR monthly rate would be the prevailing wage under §§ 655.210(g) and 655.211(a).** *See also,* 29 U.S.C. 213(a)(6)(E) [payment of FLSA minimum wage and maximum hour requirement do not apply to such range livestock workers]. By analogy, therefore, Nevada Minimum Wage or MWA rates would also yield to the AEWR/prevailing rate under §§ 655.210 and 655.211.

The DOL's analysis found that it makes sense to "continue to use a monthly AEWR for these occupations [referring to "range herding and production of livestock"] in the CFR special provisions *because of the [presumed] difficulties in tracking and paying an hourly wage rate to workers engaged in the herding or production of livestock on the range.*" 80 Fed. Reg. 62987 (2015) (emphasis added) (footnote in original, providing that "**Employers [of sheep herders and livestock herders] are similarly exempt from the hourly minimum wage and record-keeping requirements of the Fair Labor Standards Act for these workers. 29 U.S.C. 213(a)(6)(E)**"). 29 U.S.C. 213(a)(6)(E), cited by the DOL in its footnote, provides, in relevant part, that "minimum wage and maximum hour requirements of sections 206 and 207 of the title shall not apply with respect to [ . . . ] any employee in agriculture [ . . .] if such employee is

principally engaged in the range production of livestock[.]" Again, by analogy, Nevada MWA must yield to AEWR prevailing wages.

In the instant case, Plaintiff Cántaro's allegations, as pleaded, illustrate compliance with the Federal mandates, **not** the breach thereof. Accordingly, as set forth herein, as pleaded, Plaintiff Cántaro's First, Third, Fourth, Fifth and Ninth counts against WRA must fail as a matter of law.[10]

### E.    *The DOL's Implementation of AEWR-Based Wages Defeats Plaintiffs' Nevada Wage Claims*

As set forth above, Federal law, embodied in the Special Procedures specifically applicable to non-immigrant H-2A sheep herders and goat herders (20 CFR § 655.20) applies to Plaintiffs' claims. Plaintiffs' contention that "Western Range" wrongfully paid a lower monthly wage than Plaintiffs were allegedly entitled to under Nevada's minimum wage is non-sequitur. Plaintiffs assert that they are part of a "Nevada Minimum Wage Class" under a class action theory (via FRCP 23) and that "they" are "entitled to

---

[10]    These counts must fail legally, without even addressing the question of whether WRA can be held to the standards of an "employer", a fact specifically **contradicted by Plaintiffs' own Exhibit B** to the Notice of Filing First Amended Complaint [Doc #40], which states:

Of the below listed EMPLOYER (Member of Western Range Association) and that Western Range Association is not the employer for the duration of my stay in the United States.

HERDER (Employee)

Plus VIVAS Moreno #70305 _____ Name (Print)
66418 Hwy 6
Glenwood Springs, CO 81601 _____ Permanent Address
_____ Signature of Herder

By my signature below I understand that I am the employer of the Herder (employee) and Western Range is not the Employer

EMPLOYER (Member of Western Range Association)

James Craig Bair Ranch Company _____ Name (Print)
66418 Hwy 6
Glenwood Springs, CO 81601 _____ Permanent Address
_____ Signature of Employer

(Highlighted for this Court's convenience.)

Although this was initially attached to the "Notice of Filing First Amended Complaint," it was intended by Plaintiffs to be a sample, although it clearly involves a different herder and a different rancher member.

[recover] the difference between the wages paid and the Nevada minimum wage[.]" [Doc #45, p. 26.] The "Nevada Minimum Wage Class" is defined as others "similarly situated" to Plaintiffs. <u>What this means, however, and who these similarly situated Plaintiffs are, is a mystery at this juncture.</u> As set forth below, the claims fail as a matter of law for lack of commonality on behalf of "the class" in seeking to recover under a "class action" theory.[11]

### 1.   Plaintiff Cántaro's MWA Claim Fails

It is first important to note that the $1,422.00 monthly AEWR rate was the <u>California</u> rate, which was considerably higher than the prior AEWR monthly Nevada rate. Plaintiff is bringing the claim under some Nevada minimum wage constitutional law basis, seems ironic when Plaintiff Cántaro accepted the benefits of California's **higher** AEWR. Plaintiff Cántaro, nonetheless is bringing any (MWA) wage claim for violation on Nevada Constitution principles.

A similar claim based upon the "Nevada Constitution" and failure to pay "at least Nevada minimum wage" was also attempted (and rejected) in *Llacua, et al. v. Western Range, et al.*, Case No. 15-cv-01889-REB-CBS, pending in the District Court of Denver, Colorado. Therein, after filing a complaint and amending it twice, plaintiffs claimed that "Plaintiffs were entitled to the difference between the wages paid and the Nevada Minimum wage statute."[12] As discussed in subsection B., above, Magistrate Shaffer recommended dismissal in a 42-page decision that was touted by Judge Blackburn as *l.l.l.l*

---

[11]   This Court need not even address the class designation unless some or all of Plaintiffs' FAC survives.

[12]   Specifically, the *Llacua* Second Amended Complaint, alleged, *inter alia*:

> 280.  As a result, the Plaintiffs are entitled to the difference between the wages paid and the Nevada minimum wage pursuant to Nev. Const. art. 15, § 16; Nev.Rev.Stat. § 608.260; and *Thomas v. Nevada Yellow Cab Corp.*, 327 P.3d 518 (Nev. 2014).

*Llacua, et al.*, Case No. 1:15-cv-01889-REB-CBS, Second Amended Complaint, p. 52, ¶ 280.

1  "exquisitely detailed and exceptionally well-reasoned." Judge Blackburn adopted the

2  findings of Magistrate Shaffer.[13]

3       The most recent revision of H-2A sheep herder workers' pay rate provides that

4  the rate must be at least the monthly AEWR set by the DOL, as specified in § 655.211,

5  the agreed-upon collective bargaining wage, or the applicable minimum wage imposed

6  by Federal or State law or judicial action, in effect at the time work is performed,

7  whichever is highest, for every month of the job order period or portion thereof." 20 CFR

8  § 655.210(g). "To comply with its obligation under § 655.210(g), an employer must *offer*,

9  *advertise in its recruitment* and *pay* each worker employed under §§ 655.200–655.235 a

10  wage that is the highest of the monthly AEWR established under this section, the

11  agreed-upon collective bargaining wage, or the applicable minimum wage imposed by

12  Federal or State law or judicial action." 20 CFR § 655.211(a). Plaintiffs were employed

13  **prior** to these new changes to the revisions so their monthly pay of $1,422.00 is not

14  held to this "phasing in" standard under  CFR § 655.211(a).

15       Plaintiffs assert that they "worked much more than 40 hours a week" and were

16  engaged "to work 24 hours a day, seven days per week under the terms of the job

17  orders." [Doc #45, pp. 17-18, ¶ 107.] Plaintiffs also admit, however, that Defendant El

18  Tejon paid the (higher) prevailing California rate rather than the (lower) Nevada rate,

19  even though Plaintiff Cántaro divided his time between California and Nevada. [Doc

20  #45, p. 16, ¶ 102.] Plaintiff Cántaro's pay could have been prorated between the

21  California AEWR monthly rate for the respective California time and the Nevada AEWR

22

23  —————————————
    [13]   Although Defendant WRA does not contend that the *Llacua* recommendation constitutes precedent yet, it is
24  presented to this Court for the purpose of illustrating that different plaintiffs represented by the same counsel, have
    been unsuccessful on several claims, some, virtually identical. *See*, Recommendation on Defendants' Motions to
    Dismiss the Second Amended Complaint and Judge Blackburn's Order Overruling Objections to Recommendation of
25  the United States Magistrate Judge, submitted herewith as Exhibits 1 and 2. Plaintiffs themselves opened this door
    by referring to the *Llacua* matter in their Complaint.  [Doc #45, p. 19, ¶ 121.]

rate (which was lower at the time), but it was not; El Tejon paid the higher California rate irrespective of the time split between the states.

Accordingly, since Plaintiff was paid a higher (California) rate than required under the Nevada AEWR, Plaintiff Cántaro's claims based upon any alleged failure to pay "Nevada Minimum Wage" under the MWA are factually implausible and fail. *Bell Atlantic Corporation v. Twombly, supra.*

### 2.  Plaintiff Cántaro's Breach of Contract Claim Fails.

Plaintiff Cántaro alleges a breach of contract cause of action (Count Three) against WRA based on WRA's alleged failure to pay the minimum wage "required under the MWA". [Doc #45, p. 28.] Plaintiff's claim must be dismissed however because he has not identified a contract to which WRA is a party. Further, assuming arguendo and for purposes of this Motion only that WRA was a party to a contract with Cántaro (that he did not attach), Cántaro fails to allege that WRA breached any express terms of the contract.

"Nevada law requires the plaintiff in a breach of contract action to show: (1) the existence of a valid contract; (2) a breach by the defendant; and (3) damage as a result of the breach." *Saini v. Int'l Game Tech*, 434 F.Supp.2d 913, 919-20 (D. Nev. 2006) [citing *Richardson v. Jones*, 1 Nev. 405, 405 (Nev. 1865)].

Cántaro alleges that WRA employs shepherds and that all shepherds employed by WRA are subject to the same employment policies and are required to sign "the same or substantially similar employment contracts as a condition of working for Defendant WRA." [Doc #45, p. 8, ¶ 35.] However, Plaintiff Cántaro stops short of identifying the contract to which WRA and Cántaro are parties. Cántaro cites to a sheepherder employment agreement (between the James Craig Bair Ranch and Pines Vivas Moreno) attached as Exhibit B to his Notice of Filing Amended Complaint, as a

1   purported example of the contract shepherds employed by WRA sign to engage their

2   employment.[14] [Doc #45, p. 8, ¶ 35.] Notably, however, WRA is not a party to the cited

3   contract. [Doc #40, Ex. B, p. 2.] Instead, the parties to that contract are the herder and

4   the ranch employing the herder. [Doc #40, Ex. B, p. 2.] In fact, directly between the

5   herder employee signature line and the employer ranch signature line, the agreement

6   states, "By my signature below I understand that I am the employer of the Herder

7   (employee) and Western Range is not the Employer." [Doc #40, Ex. B, p. 2.] *See* fn. 10,

8   *supra*. Accordingly, Plaintiff Cántaro's breach of contract claim should be dismissed

9   based on his failure to identify a valid contract to which WRA is a party.

10      Assuming, however, that WRA is party to a contract with Cántaro, his contract

11   claim is still subject to dismissal because he fails to allege *a breach* of the contract.

12      It is well-established that "an alleged violation of any purportedly applicable law

13   does not constitute a breach of contract." *Berger v. Home Depot U.S.A., Inc.*, 476

14   F.Supp.2d 1174, 1176 (C.D. Cal. 2007). In *Berger*, the plaintiff alleged that the violation

15   of consumer protection laws, which were incorporated into a Home Depot contract,

16   constituted a breach of contract. *Id.* at 1176-77. The court rejected the plaintiff's

17   argument stating, "it is not evident that the statutes allegedly violated in this case …

18   were intended to provide a basis for a breach of contract action." *Id.* at 1777. Therein,

19   the Court explained that a contrary holding:

20          [W]ould create two claims for relief, something that is not
            provided by the statute. Plaintiff's novel theory would create
21          a new breach of contract claim in all circumstances where a
            statute was allegedly violated. Plaintiff's claim would thus
22          significantly change the core principles of contract law. This
            expansion of liability is not and should not be part of our
23          jurisprudence. While the [statutes] do[] not necessarily
            provide plaintiffs with an exclusive remedy, plaintiffs must be

24

25   _____
     [14]   Plaintiff Cántaro's exhibits cited to in his FAC are attached to his Notice of Filing Amended Complaint, but
     are not attached to the filed FAC. *See also*, fn. 10, *supra*.

> required to do something more to allege a breach of contract
> claim than merely point to allegations of a statutory violation.

*Id.* at 1777.

A New Jersey court came to a similar conclusion evaluating a claim under the New Jersey Franchise Act ("NJFPA") and a claim based on breach of contract. *See, e.g., Goldwell of N.J., Inc. v. KPSS, Inc.*, 622 F.Supp.2d 168, 195 (N.J. 2009). [Plaintiff could not "bootstrap its NJFPA cause of action onto its distinct breach of contract claim; the two are separate causes of action accompanied by separate requirements." Permitting the plaintiff to do so, "would render every franchisor's violation of the NJFPA for failure to renew – despite compliance with the contract's terms – a *per se* breach of contract."] *Ibid.*

A violation of a statutory right is generally considered a tort allegation, which is independent of contract. *See Calloway v. City of Reno*, 993 P.2d 1259, 1263 (Nev. 2000) ["A breach of contract may be said to be a material failure of performance of a duty arising under or imposed by agreement. A tort on the other hand is a violation of a duty imposed by law, a wrong independent of contract") (quoting *Bernard v. Rockhill Dev. Co.*, 734 P.2d 1238, 1240 (Nev. 198).] To determine whether an action is a breach of contract or a tort, the court must ask "whether the actions or omissions complained of constitute a violation of duties imposed by law, or of duties arising by virtue of the alleged express agreement between the parties." *Id.*

In the instant case, Cántaro's breach of contract claim is subject to dismissal because the only "breach" alleged by Plaintiff is an alleged violation (or some places, compliance with) federal regulations purportedly incorporated into the parties' contract. [Doc #45, p. 28, ¶¶ 186-87.] Plaintiff alleges that his purported contract with WRA incorporated 20 C.F.R. §§ 655.122 and 655.210. [Doc #45, p. 28, ¶ 186.] Plaintiff

Case 3:16-cv-00237-RCJ-VPC   Document 66   Filed 11/15/16   Page 17 of 24

1   contends that under those **regulations**, WRA breached its contract by failing to pay

2   Cántaro **subject to the provisions of the MWA**. [Doc #45, p. 28, ¶ 187.]

3        As in *Berger* and *Goldwell*, plaintiffs cannot bootstrap an alleged violation of law

4   to create a breach of contract. In the case at bar, Cántaro cannot bootstrap the alleged

5   violation of the MWA through 20 C.F.R. §§ 655.122 and 655.210 to create a breach of

6   contract claim.[15]

7        Regardless of whether 20 C.F.R. §§ 655.122 and 655.210 are incorporated into a

8   purported contract with WRA, an alleged violation of those regulations and/or of the

9   MWA does not independently give rise to an actionable breach of contract claim.

10  Accordingly, because Plaintiff's claim is based solely on the alleged violation of law

11  purportedly incorporated into some unidentified agreement, Plaintiff's breach of contract

12  claim must be dismissed.

### 3.   Cántaro's Promissory Estoppel Claim Fails

14       Plaintiff Cántaro also alleged in the alternative to his breach of contract cause of

15  action, that WRA is liable under theories of promissory estoppel and unjust

16  enrichment/*quantum meruit*. [Doc #45, pp. 28-30.] However, both of these causes of

17  action fail because assuming WRA is deemed to be an "employer", there is an express,

18  /././

19  /././

20  /././

21  /././

22  /././

23

---

24  [15]   Plaintiff's breach of contract claim is even more tenuous than the claim asserted in *Berger* wherein the alleged violation of consumer protection laws did not give rise to a breach of contract claim even though those laws were incorporated into the contract. In contrast, here Cántaro has not identified any contract expressly incorporating 20 C.F.R. §§ 655.122 and 655.210 or the MWA into the contract.

17

1  written contract governing the parties' obligations, and neither party disputes the validity

2  of the contract[16].

3         Promissory estoppel is a consideration substitute, not a contract substitute. *See*

4  *Vancheri v. GNLV Corp.*, 105 Nev. 417, 421, 777 P.2d 366, 369 (Nev. 1989). The

5  Nevada Supreme Court has explained, "The doctrine of promissory estoppel, which

6  embraces the concept of detrimental reliance, is intended as a substitute for

7  consideration, and not as a substitute for an agreement between the parties." *Id.* (citing

8  *Kruse v. Bank of Am.*, 248 Cal.Rptr. 217 (1988)); *Pink v. Busch*, 100 Nev. 684, 689, 691

9  P.2d 456, 459 (Nev. 1984). To establish a claim of promissory estoppel, a plaintiff must

10  prove four elements:

11            (1) The party to be estopped must be apprised of the true
              facts; (2) he must intend that his conduct shall be acted upon,
12            or must so act that the party asserting estoppels has the right
              to believe it was so intended; (3) the party asserting the
13            estoppels must be ignorant of the true state of facts; (4) he
              must have relied to his detriment on the conduct of the party
14            to be estopped.

15  *Pink v. Busch*, *supra*, 100 Nev. at 689, 691 P.2d at 459-60 [quoting *Cheqer, Inc. v.*

16  *Painters & Decorators Joint Comm., Inc.*, 98 Nev. 609, 614, 655 P.2d 996, 998-99 (Nev.

17  1982)].

18         When an express agreement exists between the parties (as Plaintiff Cántaro

19  alleges), promissory estoppel does not apply. *See Morgan v. Aurora Loan Servs., LLC*,

20  646 F.App'x 546, 551 (9th Cir. 2016) ["Under California law, promissory estoppel applies

21         [16]   Plaintiff Cántaro's causes of action for promissory estoppel and unjust enrichment/*quantum meruit* are
       pleaded in the alternative to his breach of contract action. While some Courts have allowed such alternative pleading
22     when the contract is found to be unenforceable, [*DFR Apparel Co. v. Triple Seven Promotional Products, Inc.*, No.
       2:11-cv-01406-APG, 2014 WL 4891230, at *3 (D. Nev. Sept. 30, 2014)], other Courts reject alternative quasi-contract
       pleading when the validity of an express contract is not in dispute. *See Res. Title Agency, Inc. v. Morreale Real*
23     *Estate Servs., Inc.*, 314 F.Supp.2d 763, 772 (N.D. Ohio 2004) ["[U]njust enrichment may be pled in the alternative
       when the existence of an *express contract is in dispute*, and may be maintained despite  the existence of an express
       contract where there is evidence of fraud, bad faith, or illegality." (emphasis added) (citation omitted)]; *Advanced*
24     *Plastics Corp. v. White Consol. Indus., Inc.*, 828 F.Supp. 484, 491 (E.D. Mich. 1993) ["[A]lternative pleading of an
       implied cont5ract claim is only allowed in a contract setting where a party doubts the existence of a contract."). Here,
       assuming WRA is deemed to be an "employer" of Plaintiff Cántaro, neither party disputes the existence and validity of
25     the contract. [Doc #45, p. 8, ¶ 35.]

only in the absence of an express agreement between the parties."]; *see also, Am. Sav. & Loan Ass'n v. Stanton-Cudahy Lumber Co.*, 85 Nev. 350, 354, 455 P.2d 39, 41 (Nev. 1969).

### 4. Plaintiff Cántaro's Unjust Enrichment/*Quantum Meruit* Claim Fails

Like Plaintiff Cántaro's promissory estoppel claim, his claim of unjust enrichment/*quantum meruit* also fails because, again assuming arguendo that WRA is deemed an "employer" of Plaintiff Cántaro, an express, written agreement is alleged to exist. [Doc #45, p. 28.] "An action based on a theory of unjust enrichment is not available when there is an express, written contract, because no agreement can be implied when there is an express agreement." *Leasepartners Corp. v. Robert L. Brooks Tr. Dated Nov. 12, 1975*, 113 Nev. 747, 755, 942 P.2d 182, 187 (Nev. 1997) ["The doctrine of unjust enrichment or recovery in quasi-contract applies to situations where there is no legal contract...." (quoting 66 Am.Jur.2d *Restitution* § 11 (1973)]; *see also, WuMac, Inc. v. Eagle Canyon Leasing, Inc.*, Case No. 2:12-cv-0926-LRH-VCF, 2013 WL 593396, at *4 (D.Nev. Feb. 14, 2013) ["[A] claim for quantum meruit is not actionable when the claim is based on an express contract.... As there is an express contract at issue in this action, the court shall grant Eagle's motion as to this issue and dismiss WuMac's claim for quantum meruit."]; *Lipshie v. Tracy Inv. Co.*, 93 Nev. 370, 379, 566 P.2d 819, 824 (Nev. 1977) ["To permit recovery by quasi-contract where a written agreement exists would constitute a subversion of contractual principles."]

In the instant case, assuming arguendo WRA is deemed an "employer" of Plaintiff Cántaro and that it was a party to some contract, there would then be an allegedly written agreement between Cántaro and WRA governing pay. [Doc #45, p. 8, ¶ 35.] This type of *quantum meruit* claim is noted by the "Nevada Supreme Court when

it recently explained the contours of the often confused *quantum meruit* claim. *Quantum meruit* is pled in two distinct contexts: contract and restitution." *Risinger v. SOC LLC*, 936 F.Supp.2d 1235, 1246-47 (D.Nev. 2013) [citing *Certified Fire Prot. Inc. v. Precision Constr.*, 283 P.3d 250, 256 (Nev. 2012)]. In the contract context, *quantum meruit* may act as a gap filler to supply absent terms to contracts implied-in-fact. *Id.* at 1247. "Quantum meruit's other role," however, "is in providing restitution for unjust enrichment...." *Id.* [quoting *Certified Fire*, 283 P.3d at 256]. *Quantum meruit* would serve as a remedy for the alleged unjust enrichment, as demonstrated by Plaintiffs' Count Five being labeled "Unjust Enrichment and Quantum Meruit." [Doc #45, p. 29.] However, as the unjust enrichment claim fails, there can be no remedy and no *quantum meruit*. Thus, to the extent this Court considers the *quantum meruit* aspect of Count Five in any way separate from the unjust enrichment claim, it too should be dismissed.

### F. If Plaintiffs' Claims Somehow Survive Preemption, They Must Still Be Dismissed Because They are Barred by the Applicable Nevada Statutes of Limitations

Even if Plaintiff Cántaro's promissory estoppel, unjust enrichment and *quantum meruit* claims are not dismissed based on arguments stated above, they are still subject to dismissal.[17]

Plaintiffs' Counts One and Two, as alleged in the FAC, appear to be for "failure to pay minimum wages in violation of the Nevada Constitution" (hereinafter "MWA Claims"). As to WRA, Plaintiff Cántaro alleges in Count One:

---

[17] Just as Nevada's MWA imposes a two year Statute of Limitations, so too does the FLSA. (Plaintiff Cántaro previously pleaded a FLSA claim.) [Doc #1.] 29 U.S.C. § 255(a) provides:

> [I]f the cause of action accrues on or after May 14, 1947...and every such action shall be forever barred unless commenced within two years after the cause of action accrued, except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued...

29 U.S.C. § 255(a). Ordinary violations of the FLSA are subject to the two year Statute of Limitations. *Flores v. City of San Gabriel*, 824 F.3d 890, 906 (9th Cir. 2016), quoting *Alvarez v. IBP, Inc.*, 339 F.3d 894, 910 (9th Cir. 2003).

1    177.   WRA employed Plaintiff Cántaro and other
2    members of the WRA Nevada Class in Nevada during the
     relevant statute of limitations and paid him less than the
     Nevada minimum wage.

3    178.   As a result, Plaintiffs are entitled to the
4    difference between the wages paid and the Nevada minimum
     wage, and attorneys' fees, pursuant to Nev. Const. art. 15, §
5    16, for the relevant time period alleged herein.

6  [Doc #45, pp. 26-27, ¶¶ 177, 178.]

7      As further set forth in the Preamble sections of Plaintiffs' FAC:

8    9.   Plaintiff Abel Cántaro is a former shepherd. He
     worked as a shepherd in California and Nevada from around
9    October 2007 **until around June 2014**.

10 [Doc #45, p. 4, ¶ 9, emphasis added.]

11      Defendant WRA first notes that an allegation that a plaintiff was employed from

12 "around" October, 2007 until "around" June, 2014, appears unduly vague; as discussed

13 below, it is inadequate to establish that this action was timely filed. This type of pleading

14 seems calculated to obfuscate an apparent and potentially glaring statute of limitations

15 problem for Plaintiff Cántaro.[18]

16      Putting aside the vagueness of Plaintiffs' pleading, the Nevada Supreme Court

17 very recently had occasion to analyze the applicable Statute of Limitations as it applies

18 to Nevada's constitutional "minimum wage amendment" ("MWA"). *Perry v. Terrible*

19 *Herbst, Inc.*, 132 Nev. Adv. Op. 75 (October 27, 2016). Affirming the District Court's

20 finding that the two-year statute of limitations controls, the Nevada Supreme Court in

21 *Perry* stated:

22    [T]he District Court held that MWA claims are closely
      analogous to those provided for in NRS Chapter 608 and,
23    thus, **that the two year statute of limitations in NRS
      608.260 controls. We affirm.**

24

25 [18]   As set forth in the Declaration of Melchor Gragirena [Doc #55, Ex. 2], Plaintiff was fully paid through May 31,
   2014 for work he performed prior to leaving El Tejon's employ.

\*\*\*

> [N]RS 608.260 gives employees the right to sue for back pay if their employers fail to pay the minimum wage rate established by Labor Commission regulation. Unlike the MWA, which is silent as to a statute of limitations period, NRS 608.260 imposes a two year limitations period on statutory back pay claims…

\*\*\*

> Statutes of limitation exist "to provide a concrete timeframe within which a plaintiff must file a lawsuit and after which a defendant is afforded a level of security."…the nature of the claim, not its label, determines what statute of limitations applies.

\*\*\*

> [U]nder both NRS Chapter 608 and the MWA, employees can bring a cause of action alleging that their employer did not pay them the required minimum wage as calculated within their respective provisions. NRS 608.260; Nev. Const. Art. 15, ¶ 16(B).

*Id.* at 2, 4-5, 7, emphasis added.

Affirming the lower court's Summary Judgment in favor of the employer, the Supreme Court in *Perry* held:

> [A]nalogizing Perry's MWA claim to one under NRS 608.260 and applying NRS 608.260 two year limitations period avoids conflict between the MWA and existing law…. Accordingly, we affirm the District Court's Order Granting Terrible Herbst's Motion for Judgment on the Pleadings and Dismissing Perry's claim.

*Id.* at pp. 10, 11.

In the instant case, as pleaded, Plaintiff Cántaro's allegations establish that claims under the MWA (Counts One and Nine) and derived from the MWA or 20 CFR § 655.122 (Counts Three, Four and Five) were subject to a two year Statute of Limitations.. Plaintiff Cántaro's original Complaint, and, certainly his Amended

1  Complaint with completely new claims, were filed over two years after *substantially* all (if

2  not all) of the alleged wage violations herein at issue.

3                                          **V**

4                                    **CONCLUSION**

5          Based on the foregoing, Defendant WRA respectfully requests that Counts One,

6  Three, Four, Five and Nine of Plaintiffs' First Amended Complaint against WRA be

7  dismissed, thus dismissing WRA completely from this action.

8          **AFFIRMATION PURSUANT TO NRS 239B.030**

9          This document does not contain the social security number of any person.

10         DATED this 15th day of November, 2016.

11                              WOODBURN AND WEDGE

12

13                              Ellen Jean Winograd, Esq.
                                State Bar No. 815
14                              Joshua M. Woodbury, Esq.
                                State Bar No. 11326
15                              WOODBURN AND WEDGE
                                6100 Neil Road, Suite 500
16                              Reno, Nevada 89511
                                **Attorneys for Defendant**
17                              **WESTERN RANGE ASSOCIATION**

18

19

20

21

22

23

24

25

## CERTIFICATE OF SERVICE

It is hereby certified that service of the foregoing **DEFENDANT WESTERN RANGE ASSOCIATION'S: (1) JOINDER IN MELCHOR GRAGIRENA AND EL TEJON SHEEP COMPANY'S MOTION TO DISMISS AMENDED COMPLAINT AND (2) MOTION TO DISMISS COUNTS ONE, THREE, FOUR, FIVE AND NINE OF PLAINTIFFS' FIRST AMENDED COMPLAINT** was made through the Court's electronic filing and notification or, as appropriate, by sending a copy thereof by first-class mail from Reno, Nevada, addressed as follows:

Alexander N. Hood, Esq.
TOWARDS JUSTICE
1535 High Street, Suite 300
Denver, Colorado 80218
**Attorneys for Plaintiffs**

Brian Corman, Esq.
Christine E. Webber, Esq.
COHEN MILSTEIN
SELLERS & TOLL PLLC
1100 New York Avenue NW, Suite 500
Washington, DC  20005
**Attorneys for Plaintiffs**

Mark R. Thierman, Esq.
Joshua D. Buck, Esq.
Leah L. Jones, Esq.
THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, Nevada 89511
**Attorneys for Plaintiffs**

Anthony L. Hall, Esq.
R. Calder Huntington, Esq.
HOLLAND AND HART LLP
5441 Kietzke Lane, Suite 200
Reno, Nevada 89511
**Attorneys for Co-Defendants
MELCHOR GRAGIRENA and
EL TEJON SHEEP COMPANY**

Leigh T. Goddard, Esq.
Laura R. Jacobsen, Esq.
McDONALD CARANO WILSON
100 West Liberty Street, 10th Floor
P.O. Box 2670
Reno, Nevada 89505
**Attorneys for Defendants
ESTILL RANCHES LLC and
JOHN ESTILL**

Paul J. Anderson, Esq.
MAUPIN, COX & LEGOY
P.O. Box 30000
Reno, Nevada 89520
**Attorneys for Defendant
MOUNTAIN PLAINS
AGRICULTURAL SERVICE**

DATED this 15th day of November, 2016.

_____
Employee of Woodburn and Wedge