Anthony L. Hall, Esq.
Nevada Bar No. 5977
ahall@hollandhart.com
Erica C. Smit, Esq.
Nevada Bar No. 13959
ecsmit@hollandhart.com
HOLLAND & HART LLP
5441 Kietzke Lane, Second Floor
Reno, Nevada 89511
Telephone: (775) 327-3000
Facsimile: (775) 786-6179

*Attorneys for Defendants El Tejon Sheep Company and Melchor Gragirena*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| ABEL CÁNTARO CASTILLO; ALCIDES INGA RAMOS, and those similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>WESTERN RANGE ASSOCIATION; MELCHOR GRAGIRENA; EL TEJON SHEEP COMPANY; MOUNTAIN PLAINS AGRICULTURAL SERVICE; ESTILL RANCHES, LLC; and JOHN ESTILL,<br><br>Defendants. | CASE NO. 3:16-cv-00237-MMD-VPC<br><br>**DEFENDANTS MELCHOR GRAGIRENA AND EL TEJON SHEEP COMPANY'S REPLY IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT** |

Defendants El Tejon Sheep Company ("El Tejon") and Melchor Gragirena ("Mr. Gragirena") (jointly, "Defendants") by and through their attorneys of record of the law firm of Holland & Hart LLP, submit this Reply in support of their Motion to Dismiss Plaintiff Abel Cántaro Castillo's ("Cántaro") Complaint. This Reply is supported by the following Memorandum of Points and Authorities, the papers and pleadings on file herein, and any oral argument this Court may allow.

**REPLY MEMORANDUM OF POINTS AND AUTHORITIES**

**I.     INTRODUCTION**

In the original complaint, Cántaro asserted a federal cause of action—a claim under the Fair Labor Standards Act ("FLSA"). *See* ECF No. 1. Cántaro's First Amended Complaint, however, removed the FLSA claim and only asserted state-law claims. *See* ECF No. 45 ("FAC"). Without the FLSA claims, Cántaro has no basis to establish federal jurisdiction. Federal question jurisdiction is

1

lacking because the breach of contract claims do not raise a substantial federal issue. Rather, Cántaro's federal arguments regarding those claims are in anticipation of defenses, which is not a basis to establish jurisdiction. Diversity jurisdiction is also lacking because Cántaro cannot establish Class Action Fairness Act ("CAFA") jurisdiction, nor did he attempt to do so in his Opposition. In fact, Cántaro conceded that CAFA jurisdiction does not allow plaintiffs to aggregate claims against multiple defendants, rendering CAFA jurisdiction improper as against El Tejon and Mr. Gragirena,[1] who undoubtedly do not meet the 100-plaintiff threshold. Nevertheless, Cántaro argued that other defendants failed to dispute CAFA jurisdiction, rendering it proper. This is false. All defendants disputed CAFA jurisdiction exists. Even assuming CAFA jurisdiction is proper, this Court should not exercise supplemental jurisdiction over El Tejon and Mr. Gragirena because the underlying events do not form the same case or controversy.

In the event this Court decides these issues on the merits, El Tejon does not seek to dismiss the state minimum wage claims against it at this stage.[2] However, each of the remaining claims should be dismissed as against El Tejon and Mr. Gragirena. First, the state minimum wage claims against Mr. Gragirena, as an individual, fail based on binding Nevada law, which prohibits individual owners, agents, or officers of a company to be held liable for unpaid wages. Contrary to Cántaro's assertions, this law was not overturned and still applies to claims under the Minimum Wage Amendment. Second, Cántaro's breach of contract claim fails because there is no express provision in the contract that El Tejon breached. Cántaro repeatedly asserts that "explicit" provisions exist that required El Tejon to pay the Nevada minimum wage 24 hours per day, 7 days per week. But, the only provision Cántaro cites to is a general contract provision that El Tejon will comply with "the laws of the United States and the individual states." Cántaro's argument requires several steps of implied incorporation to determine that El Tejon contracted to pay the Nevada minimum wage. Such implied incorporation does not constitute a breach of contract. Finally, Cántaro's claims for promissory estoppel and unjust enrichment also fail because there is an express, written agreement. Despite acknowledging an express

---

[1] CAFA jurisdiction is also improper against Estill Ranches and John Estill for the same reasons.
[2] As noted in the Motion, in the event this Court determines jurisdiction is proper, El Tejon does not seek to dismiss the state minimum wage claims against it because the factual issues necessary for such argument are not proper at this stage of the proceedings. *See* Motion, at 2 n.1.

agreement exists, Cántaro argues the claims should not be dismissed because promises made outside of the contract or thereafter allow the claims to survive. However, nowhere in the FAC does Cántaro allege the factual assertions necessary for these claims to survive on this basis. Additionally, as to the promissory estoppel claim specifically, Cántaro failed to plead that, despite the contract's express provision stating El Tejon would pay Cántaro $750 per month, Cántaro understood the contract to disregard that provision and provide that Cántaro would earn $8.25 per hour, 24 hours per day, 7 days per week. Without addressing this critical issue, Cántaro has failed to plead justifiable reliance.

Therefore, El Tejon and Mr. Gragirena respectfully request that this Court dismiss all claims for lack of jurisdiction. In the event this Court deems jurisdiction is proper, Defendants respectfully request that this Court dismiss all claims against El Tejon and Mr. Gragirena, except the minimum wage claims against El Tejon. *See supra* note 2.

## II.   LEGAL ARGUMENT
### A.   This Court Lacks Jurisdiction Over Cántaro's Claims Against El Tejon and Gragirena

Cántaro asserts two bases for jurisdiction: federal question jurisdiction and diversity jurisdiction under the Class Action Fairness Act. In the Motion to Dismiss, El Tejon and Mr. Gragirena raised a *factual*—not facial—challenge to Cántaro's assertion of federal jurisdiction, as evidenced by the attached contract, declaration, and legal argument to the Motion. *See* ECF No. 55, Motion, at 8-9 & n.6; *see also Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004) ("In resolving a factual attack on jurisdiction, the district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment. *The court need not presume the truthfulness of the plaintiff's allegations*." (emphasis added) (citation omitted)). Thus, Cántaro must do more than rest on the conclusory allegations in his complaint, and this Court need not accept those allegations as true.

### *1.  This Court Lacks Federal Question Jurisdiction Under § 1331.*

Federal question jurisdiction does not exist in this case because this case does not involve a civil action "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331 (2012). There are two situations in which a court may exercise federal-question jurisdiction over an action. *See Provincial Gov't of Marinduque v. Placer Dome, Inc.*, 582 F.3d 1083, 1086 (9th Cir.

2009) The first situation is when "a federal right or immunity is an element, and an essential one, of the plaintiff's cause of action." *Id.* (internal quotation marks omitted). The second situation is when "a state-law claim necessarily raises a stated federal issue, actually disputed and substantial," which "indicat[es] a serious federal interest in claiming the advantages thought to be inherent in a federal forum." *Id.* at 1086-87 (internal quotation marks omitted). Under either situation, however, "[f]ederal jurisdiction cannot hinge upon defenses or counterclaims, whether actual or anticipated." *K2 Am. Corp. v. Roland Oil & Gas, LLC*, 653 F.3d 1024, 1029 (9th Cir. 2011); *Guinasso v. Pac. First Fed. Sav. & Loan Ass'n*, 656 F.2d 1364, 1366 (9th Cir. 1981) ("Jurisdiction may not rest on propositions that merely anticipate a federal defense.").

Here, Cántaro cannot establish federal-question jurisdiction. First, Cántaro's claims do not involve a federal cause of action. Instead, Cántaro brought five state-law claims against El Tejon and Mr. Gragirena: (1) failure to pay minimum wage as required under the Nevada Constitution; (2) breach of contract or quasi-contract; (3) promissory estoppel; (4) unjust enrichment and quantum meruit; and (5) failure to pay separated employee wages when due. *See* FAC Counts 2, 6-8, 10. Second, as state-law claims, Cántaro cannot establish federal-question jurisdiction because none of the asserted claims raise a *substantial* federal issue. *See Bell v. Hood*, 327 U.S. 678, 682-83 (1946) ("[A] suit may sometimes be dismissed for want of jurisdiction where the alleged claim under the Constitution or federal statutes clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction . . . ."). Cántaro argues in his Opposition that the contract claims involve federal questions based upon the interpretation of the H-2A Regulations and Immigration and Nationality Act ("INA") and to establish the existence of a contract through H-2A job orders. *See* ECF. No. 77, at 4 ("Opp."). However, these "federal questions" are not substantial and do not arise under Cántaro's claims. Instead, Cántaro is arguing these federal issues exist based on Cántaro's anticipation of defenses to his claims.

Cántaro argues that the interpretation of federal law is necessary to determine whether "Defendants properly paid Plaintiffs in accordance with INA and H-2A Regulations." Opp. at 5. Assuming Cántaro's claim is correct, this is not a *substantial* issue that would warrant federal-question jurisdiction, as Cántaro even recognizes when he states: "The employer's obligation in setting wages

4

for H-2A shepherds *could not be clearer*: look at the various wages that could be paid (the AEWR, the federal minimum wage, the state minimum wage, etc.), and pay the highest of all these options." Opp. at 3 (emphasis added). Under Cántaro's view, this Court would only need to reference federal law, which then points to the state minimum wage. Such a passing reference to federal law is not sufficiently substantial to warrant federal-question jurisdiction. *See Merrill Lynch, Pierce, Fenner & Smith Inc. v. Manning*, 578 U.S. ___, 136 S. Ct. 1562, 1568-69 (2016) (holding federal jurisdiction does not lie when the complaint asserts "a simple state-law action for breach of contract, in which the plaintiff alleges, for atmospheric reasons, that the defendant's conduct also violated [federal law]" because "the plaintiff can get all the relief he seeks just by showing the breach of an agreement, without proving any violation of federal securities law"). To the extent Cántaro is arguing that the federal regulations need further interpretation, Cántaro is anticipating the defense of preemption raised by Defendant Western Range Association ("WRA"), which is not sufficient to establish federal-question jurisdiction.[3]

Additionally, Cántaro's argument that the H-2A job orders created a contractual relationship does not raise a federal issue.[4] State law governs the elements necessary to establish a contract. *See Olson v. Bemis Co.*, 800 F.3d 296, 300 (7th Cir. 2015) ("Suits for breach of contract arise under state law. They cannot be adjudicated in federal court unless there is an independent basis of subject-matter jurisdiction." (internal quotation marks omitted)); *Specht v. Netscape Commc'ns Corp.*, 306 F.3d 17, 27 (2d Cir. 2002) ("[A] court should generally apply state-law principles to the issue of contract formation."); *M.R. v. Dist. of Columbia*, 841 F. Supp. 2d 262, 268 (D.D.C. 2012) ("[E]ven if a contract incorporates standards included in federal law, or a party might have a defense under federal law to a

---

[3] "Federal preemption is ordinarily a matter to be raised in defense." *Guinasso*, 656 F.2d at 1366; *see also Hall v. N. Am. Van Lines, Inc.*, 476 F.3d 683, 687 (9th Cir. 2007) ("The Carriers raise federal preemption as a defense, but 'the existence of a defense based upon federal law is insufficient to support jurisdiction.'"); *Smith & Green Corp. v. Trs. of Constr. Indus. & Laborers Health & Welfare Tr.*, 244 F. Supp. 2d 1098, 1104 (D. Nev. 2003) ("Federal preemption is 'ordinarily a federal defense to the plaintiff's suit . . . .'").

[4] Cántaro relies on *Mitchell v. Osceloa Farms Co.*, 408 F. Supp. 2d 1275 (S.D. Fla. 2005), which is distinguishable from the instant case. In *Mitchell*, the court held that the plaintiffs, who were H-2A workers, successfully alleged federal question jurisdiction based on their breach of contract claims. *See id.* at 1280. However, unlike this case, the plaintiffs in *Mitchell* alleged the employers failed to pay the wages "required by federal regulations." *Id.* at 1277. Here, on the other hand, Cántaro alleges that El Tejon and Mr. Gragirena failed to pay the Nevada minimum wage—a state-law issue.

5

breach of contract action, claims brought to enforce the contract do not inherently raise federal questions."). Additionally, to the extent Cántaro relies on federal law to establish the existence of a contract, it is only for issues raised in opposition to WRA's defense to the existence of a contract.[5]

Therefore, none of Cántaro's claims raise a substantial issue of federal law. Instead, all claims against El Tejon and Mr. Gragirena are based on state law. The United States Supreme Court has expressly stated its reluctance to grant federal jurisdiction to "actions bringing only claims created by state law—even if those claims might raise federal issues." *Merrill Lynch*, 136 S. Ct. at 1574 (noting, even in situations in which Congress has created exclusive federal jurisdiction, the Court "will not lightly read the statute to alter the usual constitutional balance, as it would by sending actions with all state-law claims to federal court just because a complaint references a federal duty"). In such situations where a complaint only raises state-law claims and involves unsubstantial federal issues, the Court stated "it is less troubling for a state court to consider such an issue than to lose all ability to adjudicate a suit raising only state-law causes of action." *Id.* Here, the Nevada state courts are the proper forum for Cántaro's claims.[6]

### 2. This Court Lacks Diversity Jurisdiction Under § 1332.

Cántaro cannot establish diversity jurisdiction under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d). Notably, Cántaro concedes in his Opposition that CAFA jurisdiction does not exist over El Tejon and Mr. Gragirena. *See* Opp. at 9. This concession is correct because CAFA does not allow plaintiffs to aggregate claims against multiple defendants unless those defendants are jointly liable. *See Vagle v. Archstone Communities, LLC*, No. CV 13-09044 RGK AJWX, 2014 WL 463532,

---

[5] Cántaro's only reliance on federal law to establish the existence of a contract is in the Argument section related to Cántaro's opposition to WRA's allegations that WRA never entered into a contract with Cántaro. *See* Opp. at 14-15. Cántaro relied on federal law by arguing that job orders created an employment contract under the H-2A Regulations. *See id.* at 15. This argument is simply in opposition to WRA's *defense*, and is not a necessary federal issue raised by Cántaro's claims.

[6] Nevada courts would be best suited to address an issue of first impression—whether the MWA repealed the agricultural worker exemption in NRS 608.250(2)(d). Cántaro alleges that *Thomas v. Nevada Yellow Cab Corp.*, 327 P.3d 518 (Nev. 2014) held that the employee-exemptions of the Nevada Revised Statutes were repealed by the MWA. *See* Opp. at 14. However, the Nevada Supreme Court has indicated the implied repeal of *Thomas* is limited to the taxicab driver exemption. *See Terry v. Sapphire Gentlemen's Club*, 336 P.3d 951, 955 (Nev. 2014) (stating that "the text of the Minimum Wage Amendment supplants that of our statutory minimum wage laws *to some extent*" and citing to *Thomas* for the following proposition: "[t]he text of the Minimum Wage Amendment . . . supersedes and supplants the *taxicab driver exception* set out in NRS 608.250(2)" (emphasis added)).

at *3 (C.D. Cal. Feb. 5, 2014) ("While CAFA permits aggregation of claims of separate plaintiffs, claims against multiple defendants can only be aggregated when the defendants are jointly liable." (citations omitted)). Cántaro now argues that this Court has supplemental jurisdiction over El Tejon and Mr. Gragirena based on CAFA jurisdiction over WRA and Mountain Plains Agricultural Services ("MPAS").

Cántaro alleges that CAFA jurisdiction against WRA and MPAS was not disputed and is, therefore, proper as against them. This is wrong. WRA *did* dispute CAFA jurisdiction by joining El Tejon and Mr. Gragirena's motion to dismiss. *See* ECF No. 65, at 5 ("Defendant WRA hereby joins in the legal and jurisdictional arguments raised by Defendants Melchor Gragirena and El Tejon Sheep Company."). And, although the FAC only asserts CAFA jurisdiction against WRA, MPAS still denied Plaintiffs' allegations of CAFA jurisdiction in MPAS' Answer to the FAC. *See* ECF No. 59, ¶ 7. Thus, no party has conceded CAFA jurisdiction, and Cántaro's failure to address such is fatal to his claim as it is Plaintiffs' burden of proof to establish jurisdiction. *See Abrego Abrego v. Dow Chem. Co.*, 443 F.3d 676, 684 (9th Cir. 2006) ("[G]enerally, it is to be presumed that a cause lies outside the limited jurisdiction of the federal courts and the burden of establishing the contrary rests upon the party asserting jurisdiction." (internal quotation marks omitted)).

Even if CAFA jurisdiction was proper as against WRA or MPAS, which it is not, supplemental jurisdiction does not apply to El Tejon and Mr. Gragirena's claims. Supplemental jurisdiction applies "in any civil action of which the district courts have original jurisdiction . . . [to] all other claims that *are so related to claims in the action within such original jurisdiction* that they form part of the same case or controversy . . . ." 28 U.S.C. § 1367(a) (emphasis added). "[T]he relevant question for supplemental jurisdiction is not whether the defendant has an interest in the federal cause of action, but whether the federal and state causes of action share a *common nucleus of operative facts*." *Carton v. B&B Equities Grp., LLC*, 827 F. Supp. 2d 1235, 1250 (D. Nev. 2011) (emphasis added).

Cántaro misinterprets the applicability of supplemental jurisdiction to this case. Cántaro maintains that supplemental jurisdiction for claims against El Tejon and Mr. Gragirena is proper because said claims are part of the same case or controversy as the other defendants. *See* Opp. at 9. Cántaro supports this assertion based on the fact that he brought "the *exact same* legal claims, based on

7

the same set of facts" against all defendants. *See id.* This is wrong. The fact the legal claims are the same does not warrant supplemental jurisdiction, which requires "a common nucleus of operative *facts*," not a common nucleus of legal claims. Additionally, the claims are not based on the same set of facts, such as the same transaction or occurrence.

Instead, the claims involve an array of differences: different employer-defendants,[7] different employee-plaintiffs, different time periods, different wages paid, and different states worked. For example, according to the allegations in the FAC, Cántaro alleges that he was recruited by WRA in Peru in 2007 and worked in California and Nevada from 2007 to 2014 for El Tejon. *See* FAC, ¶¶ 29, 43. Cántaro worked approximately six months of each year in California. *Id.* ¶ 44. El Tejon paid Cántaro upward of $1422.55 monthly. *Id.* ¶¶ 49, 88, 97. Plaintiff Ramos, on the other hand, was recruited by MPAS in Peru in 2012. *Id.* ¶ 59. Ramos worked for Estill Ranches from 2012 to 2013. *Id.* ¶¶ 62, 72. Unlike Cántaro, Ramos worked all of his time in Nevada. *Id.* ¶ 72. Ramos was paid at least $800 per month. *Id.* ¶¶ 76, 91, 102.

Thus, not only are the factual claims against all defendants dissimilar, state issues predominate, rendering supplemental jurisdiction improper. *See United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("[I]f it appears that the state issues substantially predominate, whether in terms of proof, of the scope of the issues raised or of the comprehensiveness of the remedy sought, the state claims may be dismissed without prejudice and left for resolution to state tribunals.").

Accordingly, Jurisdiction is not proper under CAFA, federal question jurisdiction, or supplemental jurisdiction. Thus, El Tejon and Mr. Gragirena respectfully request that this Court dismiss this case for lack of jurisdiction. Nevertheless, even if this Court determines that jurisdiction

---

[7] Cántaro relies on *Mendoza v. United States*, 481 F. Supp. 2d 650 (W.D. Tex. 2007) to support his argument that "the presence of multiple defendants does not alter the fact that these claims arise out of the same case or controversy." *See* Opp. at 10. The facts of *Mendoza* are distinguishable from this case. In *Mendoza*, the court exercised supplemental jurisdiction over Veterans Affairs ("VA") doctors after the plaintiff sued the U.S. Government under the Federal Tort Claims Act and the VA doctors for medical malpractice from a surgery at the VA Hospital. *Id.* at 653, 657. Unlike *Mendoza*, where the claims between the multiple defendants arose from the same occurrence (a surgery), here, there is no similar occurrence linking the multiple defendants. For this reason, Cántaro's reliance on *Lindsay v. Government Employees Insurance Co.*, 448 F.3d 416, 424 (D.C. Cir. 2006) is also misplaced because *Lindsay* held supplemental jurisdiction was proper as "the complaint alleged that members of both classes performed the same type of work *for the same employer*." Here, Plaintiffs did not work for the same employer; rather, plaintiffs were employed by the multiple defendants, who are not joint employers.

is proper, many of Cántaro's claims are subject to dismissal on the merits, as described below.

### B. Cántaro's Minimum Wage and Waiting Time Penalty Claims Fail Against Gragirena

Under Nevada law, individual managers are not employers and cannot be held personally liable for employees' unpaid wages. *See Boucher v. Shaw*, 196 P.3d 959, 960 (Nev. 2008) ("[I]ndividual managers are not employers for the purpose of NRS Chapter 608 and thus cannot be held personally liable for employees' unpaid wages."). This analysis did not change under the MWA because the definitions are substantially similar. Thus, the individual claims against Mr. Gragirena must be dismissed.

Cántaro argues that the Nevada Supreme Court overturned *Boucher* in *Terry v. Sapphire Gentlemen's Club*, 336 P.3d 951 (Nev. 2014) based on the *Terry* Court's adoption of the economic realities test under the FLSA. *See* Opp. at 11. This is wrong—*Terry* did not overturn *Boucher*. Rather, *Terry* and *Boucher* are addressing different issues. *Terry* analyzes the economic realities test to determine whether an employment relationship exists. *See* 336 P.3d at 958 (applying the economic realities test to determine "whether an employment relationship exists between them as a matter of law"). The issue in *Terry* was whether exotic dancers were considered employees when they set their own schedules and were only paid through tips they earned from dancing. *See id.* at 953. *Terry* did not discuss liability against individual managers, as the dancers' claims were only against the business entity. *See generally id.* Notably, while adopting the economic realities test, the Court noted "its willingness to part ways with the FLSA where the language of Nevada's statutes has so required," and it cited to *Boucher* as an example. *Id.* at 956 (citing *Boucher*, 196 P.3d at 963 n.27). *Terry*'s citation and discussion of *Boucher* as an exception to the FLSA clearly was an adoption of *Boucher*—not an overruling.

In addition, *Terry*'s continued adoption of *Boucher* after the passage of the MWA was possible because of the similar language of the Nevada Revised Statutes ("NRS") addressed in *Boucher* and the MWA. *Boucher* analyzed NRS 608.011, which defined employer to include "every person having control or custody of any employment, place of employment or any employee." 196 P.3d at 961. *Boucher* recognized that Nevada corporate law does not extend individual liability to officers,

9

directors, and stockholders of a corporation unless specifically provided by statute. *See id.* at 963. Thus, to comport with those corporate policy considerations, *Boucher* held that the Legislature's failure to "unequivocally indicate[] its intent to equate managers with 'employers'" meant "that individual management-level corporate employees . . . cannot be held liable as employers for unpaid wages of employees under Nevada's wage and hour laws." *Id.* Like NRS 608.011, the MWA does not explicitly provide for personal liability to corporate officers or agents. *See* Nev. Const. art. 15, § 16 (defining employer as "any individual, proprietorship, partnership, joint venture, corporation, limited liability company, trust, association, or other entity that may employ individuals or enter into contracts of employment"). Thus, *Boucher*'s analysis, as was recently adopted in *Terry*, is equally applicable to the MWA.

In short, *Boucher* addresses individual liability whereas *Terry* addresses whether an employment relationship exists between the employer and employee. Therefore, because Cántaro alleges that he was employed by El Tejon, not Mr. Gragirena personally, the claims against Mr. Gragirena should be dismissed with prejudice.

### C. Cántaro's Breach of Contract Claim Fails Against El Tejon

Cántaro sidesteps the legal argument regarding the prohibition of bootstrapping a breach of contract claim onto a statutory violation claim by arguing that Cántaro's employment contract expressly provided that El Tejon would pay the state minimum wage. *See* Opp. at 17 ("[T]he Court need not reach that issue [regarding bootstrapping claims] because Plaintiffs here allege that the requirement to pay at least the state minimum wage is incorporated *explicitly, not implicitly*, as a contract term." (emphasis added)). Again, Cántaro's argument is wrong and his use of the term "explicitly" is misleading.

Despite Cántaro's repeated assertions that the contract or job order "explicitly" provides El Tejon will pay the state minimum wage, Cántaro failed to identify a specific, express contractual provision that El Tejon allegedly breached, which is fatal to Cántaro's breach of contract claim. *See, e.g.*, *In re Anthem, Inc. v. Data Breach Litig.*, 162 F. Supp. 3d 953, 979 (N.D. Cal. 2016) (dismissing plaintiff's breach of contract claim that alleged defendants were bound to comply with federal and state laws and regulations because it failed to "identify a specific contractual provision" that the

10

defendants supposedly breached); *In re Worldcom, Inc. v. Sec. Litig.*, 456 F. Supp. 2d 508, 519 (S.D.N.Y. 2006). Instead, Cántaro asserts that a provision stating El Tejon will comply with the "laws of the United States and the individual states" is an "explicit" promise to pay the Nevada minimum wage. *See* Opp. at 18-19. This is not explicit; explicit is defined as "(1) Clear, open, direct or exact; (2) Expressed without ambiguity or vagueness; leaving no doubt." *Black's Law Dictionary*, explicit (10th ed. 2014). Cántaro's argument requires several layers of implied incorporation, which is not sufficient to establish a breach of contract. Specifically, Cántaro argues the contract incorporated the H-2A applications and job orders, which incorporated the federal regulations, which incorporated the MWA, which impliedly overruled the agricultural worker exemption in NRS 608.250(2)(d). *See* FAC ¶ 201; *see also* Opp. at 18-19. Such implied incorporation of the MWA is exactly the opposite of an *explicit* contractual term.

El Tejon did not breach the express terms of the contract. The contract provides as an express term that El Tejon would pay Cántaro no less than $750.00 per month. *See* Motion, Exhibit 1. Cántaro does not claim that El Tejon breached this express term. *See* FAC ¶ 49. Even with provisions in the contract stating El Tejon will comply with all applicable laws, such broad provisions do not create a separate cause of action under breach of contract for duties imposed by law, nor does the MWA provide for a breach of contract cause of action in addition to its private cause of action listed. *See* Nev. Const. art. 15, § 16. Thus, Cántaro's breach of contract cause of action should be dismissed.

### D. Cántaro's Promissory Estoppel, Unjust Enrichment, and Quantum Meruit Claims Fail Against El Tejon

Cántaro argued in the alternative to his breach of contract cause of action that El Tejon is liable under theories of promissory estoppel and unjust enrichment/quantum meruit. *See* FAC ¶¶ 204-13. Both of these claims, however, fail because an express, written agreement exists. *See Leasepartners Corp. v. Robert L. Brooks Tr. Dated Nov. 12, 1975*, 942 P.2d 182, 187 (Nev. 1997) ("The doctrine of unjust enrichment or recovery in quasi-contract applies to situations where there is no legal contract . . . ." (quoting 66 Am. Jur. 2d *Restitution* § 11 (1973)); *see also Am. Sav. & Loan Ass'n v. Stanton-Cudahy Lumber Co.*, 455 P.2d 39, 41 (Nev. 1969) ("[T]he doctrine of promissory estoppel which provides that in a case *where traditional consideration is lacking*, reliance which is foreseeable, reasonable, and serious will require enforcement if injustice cannot otherwise be avoided." (emphasis

11

added)).

Cántaro does not dispute this legal argument, but nonetheless tries to avoid dismissal of this claim by arguing: "a party can recover on a quasi-contract when the implied-in-law contract covers conduct outside the express contract or matters arising subsequent to the express contract." Opp. at 20 (quoting *Leighton v. City & Cty. of Denver*, No. 14-cv-02812-PAB-NYW, 2015 WL 5532751, at *8 (D. Colo. Sept. 21, 2015)). Even taking Cántaro's arguments at face value, Cántaro failed to plead any facts in the FAC that would constitute promises outside the express contract or those that arose after the contract. *See* FAC ¶ 208-13.

Additionally, Cántaro has failed to demonstrate for his promissory estoppel claim that his reliance was justifiable or reasonable. In his Opposition, Cántaro attempts to expand on the factual assertions to support his detrimental reliance allegations in the Complaint. *See* Opp. at 21. But, Cántaro misses the "justifiable" part of the detrimental reliance requirement. To be justifiable, Cántaro would have to plead that, despite reading the employment agreement that expressly provides for compensation of $750 per month, Cántaro understood at the time of El Tejon's offer of employment to disregard that statement and pay $8.25 per hour, 24 hours per day, 7 days per week. Without addressing this critical fact, Cántaro's allegations of detrimental reliance in his promissory estoppel claim are conclusory. Accordingly, Cántaro's promissory estoppel and unjust enrichment/quantum meruit claims should be dismissed.

### III.   CONCLUSION

For the reasons set forth above, Defendants El Tejon and Mr. Gragirena respectfully request that this Court grant their motion to dismiss.

DATED this 24th day of January 2017.

By: /s/ Erica C. Smit
Anthony L. Hall, Esq.
Nevada Bar No. 5977
Erica C. Smit, Esq.
Nevada Bar No. 13959
HOLLAND & HART LLP
5441 Kietzke Lane, Second Floor,
Reno, Nevada  89511
Telephone:  (775) 327-3000
Facsimile: (775) 786-6179
*Attorneys for Defendants El Tejon Sheep Company and Melchor Gragirena*

12

**PROOF OF SERVICE**

On January 24, 2017, I served the foregoing **DEFENDANTS MELCHOR GRAGIRENA AND EL TEJON SHEEP COMPANY'S REPLY IN SUPPORT OF MOTION TO DISMISS** by causing the above-named document to be served via electronic service through the Court's ECF program and addressed as follows:

Mark R. Thierman, Esq.
Joshua D. Buck, Esq.
Leah L. Jones, Esq.
Thierman Buck
7287 Lakeside Drive
Reno, Nevada 89511
mark@thiermanbuck.com
josh@thiermanbuck.com
leah@thiermanbuck.com

Christine E. Webber, Esq.
Brian Corman, Esq.
Cohen Milstein Sellers & Toll PLLC
1100 New York Ave., NW, Suite 500
Washington, District of Columbia 20005
cwebber@cohenmilstein.com
bcorman@cohenmilstein.com

Alexander Hood, Esq.
Towards Justice
1535 High St., Ste. 300
Denver, CO 80218

*Attorneys for Plaintiffs*

Ellen Winograd, Esq.
Woodburn and Wedge
6100 Neil Road, Ste. 500
Reno, Nevada 89505
ewinograd@woodburnandwedge.com

*Attorney for Defendant Western Range Association*

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct, and that this declaration was executed on January 24, 2017.

                          /s/ Yalonda Dekle
                          An Employee of Holland & Hart LLP

9453338_2