UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

ABEL CÁNTARO CASTILLO et al.,

Plaintiffs,

vs.

WESTERN RANGE ASSOCIATION et al.,

Defendants.

3:16-cv-00237-RCJ-VPC

**ORDER**

This is a putative wage and hour class action arising primarily from the Defendants' alleged failure to pay their employees minimum wages under Article 15, Section 16 of the Nevada Constitution. Now pending before the Court are five Motions to Dismiss, (ECF Nos. 35, 37, 55, 66, 74), and a Motion for Leave to File Excess Pages, (ECF No. 75). For the reasons given herein, the Court grants the motions to dismiss Plaintiffs' First Amended Complaint.

I. **FACTS AND PROCEDURAL BACKGROUND**

Plaintiffs Abel Cántaro Castillo (Cántaro) and Alcides Inga Ramos ("Inga") are Peruvian citizens lawfully admitted to the United States under the Department of Labor's ("DOL") H-2A guestworker visa program, pursuant to 8 U.S.C. §§ 1101(a)(15)(H)(ii)(a), 1188(a)(1), and 20 C.F.R. Part 655, Subpart B. (Am. Compl. ¶¶ 4, 29–32, 59–62, ECF No. 45.) Cántaro alleges that he was recruited into the H-2A visa program in 2007 by Defendant Western Range Association ("WRA"). (*Id.* at ¶¶ 29–30.) WRA assisted Cántaro through the process of obtaining his H-2A

visa, and eventually assigned him to work for a "particular WRA ranch, Defendant El Tejon Sheep Company, which is owned and managed by Defendant [Melchor] Gragirena." (*Id.* at ¶¶ 30–32.) Cántaro alleges that he was jointly employed by WRA, El Tejon, and Gragirena while working in the United States from approximately 2007 through June 2014. (*Id.* at ¶ 43.)

Inga alleges that he was recruited into the H-2A visa program in early 2012 by Defendant Mountain Plains Agricultural Service ("MPAS"). (*Id.* at ¶¶ 59–60.) MPAS assisted Inga with the visa process and assigned him to work for a "particular MPAS ranch, Defendant Estill Ranches, LLC ('Estill Ranches'), which is owned and managed by Defendant John Estill." (*Id.* at ¶¶ 60–62.) Inga alleges that he was jointly employed by MPAS, Estill Ranches, and Estill while working in the United States from about April 2012 through February 2013. (*Id.* at ¶ 72.)

Plaintiffs were employed as range sheep herders, engaged to be on call twenty-four hours a day and seven days a week. (Am. Compl. ¶¶ 46–48, 73–75, ECF No. 45.) Accordingly, under 20 C.F.R. Part 655, Subpart B, Defendants were required to pay Plaintiffs "a wage that is the highest of the monthly AEWR established under this section, the agreed-upon collective bargaining wage, or the applicable minimum wage imposed by Federal or State law or judicial action." 20 C.F.R. § 655.211(a)(1). Plaintiffs allege that Defendants paid them the monthly AEWR—or Adverse Effect Wage Rate[1]—despite the fact that the Nevada state minimum wage mandated a higher rate of pay. Accordingly, this lawsuit centers on Defendants' alleged failure to pay Plaintiffs at least the Nevada minimum wage as set forth in the Minimum Wage Amendment ("MWA") to the Nevada Constitution. Nev. Const. art. 15, § 16.

/ / /

---

[1] The Adverse Effect Wage Rate is "[t]he annual weighted average hourly wage for field and livestock workers (combined) in the States or regions as published annually by the U.S. Department of Agriculture (USDA) based on its quarterly wage survey." 20 C.F.R. § 655.103(b).

Cántaro filed this action against El Tejon, Gragirena, and WRA on May 3, 2016, asserting claims under the Fair Labor Standards Act ("FLSA") and the MWA. (Compl., ECF No. 1.) On September 16, 2016, El Tejon, Gragirena, and WRA filed motions to dismiss. (ECF Nos. 35, 37.) Rather than oppose the motions, Cántaro filed a First Amended Complaint ("FAC"), adding Inga as co-plaintiff and MPAS, Estill Ranches, and Estill as defendants. (Am. Compl., ECF No. 45.) In the FAC, Plaintiffs have eschewed any claim based on the FLSA. Accordingly, all of their claims now arise under Nevada state law: failure to pay minimum wages in violation of the MWA, failure to pay wages due upon termination under NRS Chapter 608, breach of contract, promissory estoppel, unjust enrichment, and quantum meruit.

Now, WRA, El Tejon, Gragirena, Estill Ranches, and Estill have filed motions to dismiss the FAC. (ECF Nos. 55, 66, 74.) Based on the absence of any claim expressly arising under federal law, Defendants seek dismissal for lack of subject matter jurisdiction. In the alternative, Defendants argue that Plaintiffs have failed to state a plausible claim for relief, and request dismissal under Federal Rule of Civil Procedure 12(b)(6).

## II.   PRE-AMENDMENT MOTIONS TO DISMISS (ECF NOS. 35, 37)

Federal Rule of Civil Procedure 15(a) provides that a plaintiff may amend his complaint "as a matter of course" within 21 days after (1) service of the complaint, (2) service of a responsive pleading, or (3) service of a motion under Rule 12(b), (e), or (f). The Ninth Circuit construes "the phrase 'matter of course' as consonant with 'as of right,' implying, if not expressly declaring, that Rule 15 confers a 'right' to amend upon the parties." *Ramirez v. Cty. of San Bernardino*, 806 F.3d 1002, 1007 (9th Cir. 2015). When an amended complaint is filed, it "supersedes the original, the latter being treated thereafter as non-existent." *Forsyth v. Humana, Inc.*, 114 F.3d 1467, 1474 (9th Cir. 1997) (internal citation omitted), *overruled on other grounds by Lacey v. Maricopa Cty.*, 693 F.3d 896, 927–28 (9th Cir. 2012).

Two motions to dismiss Plaintiffs' original Complaint were filed on September 16, 2016. (ECF Nos. 35, 37.) Plaintiffs then filed the FAC on October 3, 2016. (Am. Compl., ECF No. 40-1.) Because the FAC was filed within 21 days of the service of Defendants' Rule 12(b) motions, the effect of the FAC is to supersede and replace the original Complaint, such that "the original pleading no longer performs any function," and effectively "ceases to exist." *Ramirez*, 806 F.3d at 1008. Accordingly, because the pre-amendment motions to dismiss target Plaintiffs' original Complaint, which is no longer in effect, those motions are moot. *See id.*

### III. DISMISSAL UNDER FRCP 12(b)(1)

#### a. Legal Standards

Federal Rule of Civil Procedure 12(b)(1) provides for dismissal of a claim based on the lack of subject-matter jurisdiction. While the defendant is the moving party in a motion to dismiss, the plaintiff is the party invoking the court's jurisdiction. Consequently, "the plaintiff bears the burden of proving that the case is properly in federal court." *Wright v. Incline Vill. Gen. Imp. Dist.*, 597 F.Supp.2d 1191, 1198 (D. Nev. 2009) (citing *McCauley v. Ford Motor Co.*, 264 F.3d 952, 957 (9th Cir. 2001)). A motion to dismiss for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1) may take one of two forms. *Thornhill Publ'g Co. v. Gen. Tel. & Elec. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979). It may be a "facial" challenge or it may be a "factual" challenge. *Id.* "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). "[I]n a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Id.*

If the movant's challenge is a facial one, then the "court must consider the allegations of the complaint to be true and construe them in the light most favorable to the plaintiff." *Nevada ex rel. Colo. River Comm'n of Nev. v. Pioneer Cos.*, 245 F. Supp. 2d 1120, 1124 (D. Nev. 2003)

(citing *Love v. United States*, 915 F.2d 1242, 1245 (9th Cir. 1989)). If the attack is factual, however, "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Thornhill*, 594 F.2d at 733 (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)). The plaintiff has the "burden of establishing that the court, in fact, possesses subject-matter jurisdiction" by present[ing] affidavits or any other evidence necessary." *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989). Indeed, the district court is "free to hear evidence regarding jurisdiction and to rule on that issue prior to trial, resolving factual disputes where necessary." *Augustine v. United States*, 704 F.2d 1074, 1077 (9th Cir. 1983) (citing *Thornhill*, 594 F.2d at 733).

### b. Analysis

The FAC includes only claims arising under Nevada state law. Nonetheless, Plaintiffs assert two bases for federal jurisdiction in this case. First, Plaintiffs argue that federal question jurisdiction (28 U.S.C. § 1331) applies to the "claims brought under the contracts," because these claims "require the Court to resolve significant and serious questions of federal law." (Am. Compl. ¶ 6, ECF No. 45.) Second, Plaintiffs argue that diversity jurisdiction under the Class Action Fairness Act ("CAFA") (28 U.S.C. § 1332(d)) applies to the "state-law claims against WRA," (Am. Compl. ¶ 6), which in turn supports supplemental jurisdiction (28 U.S.C. § 1367) over the remaining Defendants, (Resp. 9–11, ECF No. 77).

### i. Federal Question Jurisdiction Under 28 U.S.C. § 1331

Federal courts have original jurisdiction over civil actions "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. For a case to "arise under" federal law, a plaintiff's well-pleaded complaint must establish "either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial

question of federal law." *Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 690 (2006) (citing *Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 27–28 (1983)).

Accordingly, "in certain cases federal-question jurisdiction will lie over state-law claims that implicate significant federal issues." *Grable & Sons Metal Prod., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005). However, there is a "long-settled understanding that the mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction." *Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804, 813 (1986). The Supreme Court has consistently explained that "federal jurisdiction demands not only a contested federal issue, but a substantial one, indicating a serious federal interest in claiming the advantages thought to be inherent in a federal forum." *Id.* at 313. In other words, a state-law claim will not arise under federal law "unless it really and substantially involves a dispute or controversy respecting the validity, construction or effect of such a law, upon the determination of which the result depends." *Burat's Heirs v. Bd. of Levee Comm'rs of Orleans Levee Dist. of State of La.*, 496 F.2d 1336, 1342 (5th Cir. 1974), *cert. denied*, 419 U.S. 1049 (1974) (quoting *Shulthis v. McDougal*, 225 U.S. 561, 569 (1912)).

Plaintiffs argue that their state-law contract claims "require the Court to resolve significant and serious questions of federal law under 8 U.S.C. § 1101(a)(15)(H)(ii)(a) and the regulations promulgated by the Department of Labor at 20 C.F.R. Part 655 Subpart B." (Am. Compl. ¶ 6, ECF No. 45.) In their opposition brief, Plaintiffs identify three questions of federal law pertinent to this case: (1) whether the job orders under which Plaintiffs worked for Defendants created a contractual relationship; (2) whether the contract created included a requirement to pay the state minimum wage if it was higher than the alternatives; and (3)

whether Defendants properly paid Plaintiffs in accordance with H-2A regulations. (Resp. 4–5, ECF No. 77.)

In general, pursuant to federal regulation at 20 C.F.R Part 655, Subpart B, an employer who wishes to employ H-2A workers "must submit a job order, Form ETA-790, to the [State Workforce Agency] serving the area of intended employment for intrastate clearance, identifying it as a job order to be placed in connection with a future Application for Temporary Employment Certification for H–2A workers." 20 C.F.R. § 655.121(a)(1). "Every job order . . . must include each of the minimum benefit, wage, and working condition provisions listed in paragraphs (d) through (q) of [20 C.F.R. § 655.122]," which provisions comprise, among other things, the minimum requirements regarding the worker's housing, meals, transportation and daily subsistence, rates of pay, and disclosure of work contracts. 20 C.F.R. § 655.122(c)–(q). Notably, the required provision regarding disclosure of work contracts reads:

> The employer must provide to an H–2A worker no later than the time at which the worker applies for the visa, or to a worker in corresponding employment no later than on the day work commences, a copy of the work contract between the employer and the worker. . . . *At a minimum, the work contract must contain all of the provisions required by this section. In the absence of a separate, written work contract entered into between the employer and the worker, the required terms of the job order and the certified Application for Temporary Employment Certification will be the work contract.*

20 C.F.R. § 655.122(q) (emphasis added).

In addition, the regulations governing these H-2A visa procedures expressly define the "work contract" as "[a]ll the material terms and conditions of employment relating to wages, hours, working conditions, and other benefits, including those required by 8 U.S.C. 1188, 29 CFR part 501, or [20 CFR part 655, subpart B]." 20 C.F.R. § 655.103(b). The definition continues:

> The contract between the employer and the worker may be in the form of a separate written document. In the absence of a separate written work contract

incorporating the required terms and conditions of employment, agreed to by both the employer and the worker, the work contract at a minimum will be the terms of the job order *and any obligations required under 8 U.S.C. 1188, 28 CFR part 501, or [20 CFR part 655, subpart B]*.

*Id.* (emphasis added).

In the FAC, Plaintiffs allege that their work contracts with Defendants explicitly incorporated all the terms and conditions required by 20 C.F.R. Part 655, Subpart B, including, most importantly, the applicable "rates of pay" provisions. (*See e.g.*, Am. Compl. ¶ 186, ECF No. 45.) Under the special procedures applicable to range shepherds like Plaintiffs,[2] an employer is required to "offer, advertise in its recruitment and pay each worker . . . a wage that is the highest of the monthly AEWR established under this section, the agreed-upon collective bargaining wage, *or the applicable minimum wage imposed by Federal or State law or judicial action*." 20 C.F.R. § 655.211(a)(1) (emphasis added). Plaintiffs therefore allege that the foregoing language, requiring employers to pay the higher of the AEWR or applicable State minimum wage, was expressly included in their contracts. In the alternative, Plaintiffs also allege that, in the event there was no express incorporation of the rates of pay provisions, their contracts included such provisions as implied terms.

Plaintiffs attach sample job orders and contracts as exhibits to the FAC, to serve as examples, and allege the exhibits are similar to the job orders and contracts used in Plaintiffs' recruitment. (*See e.g.*, Am. Compl. ¶¶ 33–34, ECF No. 40-1.) None of the attached sample documents includes the rates of pay language required by 20 C.F.R. §§ 655.122(c) and

---

2  In 20 C.F.R. §§ 655.200–235, special procedures are prescribed for all H-2A occupations where the worker's activities: (1) involve the herding or production of livestock; (2) are performed on the range for more than 50 percent of the workdays in the work contract period; and (3) generally require the workers to be on call twenty-four hours per day, seven days a week. 20 C.F.R. § 655.200(b). The parties agree that these procedures were applicable to Plaintiffs.

655.210(a) and (g). Furthermore, none of the sample documents contains any express reference to the regulations at which the required rates of pay provisions are found. Of course, Plaintiffs do not allege that the documents attached to the FAC are those which actually governed their employment. The exhibits are merely alleged to be "similar to" those which Plaintiffs signed.

The issue here, therefore, is whether determining the actual terms of Plaintiffs' work contracts will raise a substantial question of federal law.

In general, state law governs questions regarding contract formation and the terms contained therein. *See, e.g.*, *Lowden v. T-Mobile USA, Inc.*, 512 F.3d 1213, 1217 (9th Cir. 2008); *Davis v. Nordstrom, Inc.*, 755 F.3d 1089, 1093 (9th Cir. 2014); *see also Nextrade, Inc. v. Hyosung (Am.), Inc.*, 122 F. App'x 892, 893 (9th Cir. 2005) ("State law governs questions of contract formation."). Accordingly, federal courts are in agreement that if Plaintiffs are merely suing to enforce express provisions of their work contracts, their breach of contract claims do not confer federal jurisdiction. *See, e.g.*, *Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 693–697 (2006) (discussed *infra*); *Illinois Bell Tel. Co. v. Glob. NAPs Illinois, Inc.*, 551 F.3d 587, 591 (7th Cir. 2008) (no federal jurisdiction in action to enforce federal tariffs filed with the FCC because the suit was "merely to collect the interconnection charge specified in the approved interconnection agreement" and was thus based only "on a price term in a contract"); *Salinas De Valle v. Sierra Cascade Nursery, Inc.*, No. 2:06-cv-2274-GEB-DAD, 2007 WL 214604, at *2 (E.D. Cal. Jan. 25, 2007) (H-2A visa worker contract that "referred" to federal regulations did not confer federal jurisdiction because no "arguable ambiguity in the terms of the contract present[ed] a substantial federal question").

In *Empire Healthchoice*, a health care provider ("Empire") under contract with the Office of Personnel Management pursuant to the Federal Employees Health Benefits Act of 1959 ("FEHBA") paid out $157,309 in plan benefits to an enrollee over a four-year period. 547 U.S. at

687. The enrollee had incurred the health care costs after being injured in an accident in 1997. *Id.* Following the enrollee's death, a state-court tort action was initiated against parties alleged to have caused the enrollee's injuries, and a settlement was reached in the amount of $3.175 million. *Id.* After learning of the settlement, Empire sought to recover the $157,309 it had paid in plan benefits, per the terms of the plan contract. Empire eventually brought suit in the Southern District of New York, alleging the defendant was in breach of the plan's reimbursement provision. *Id.* at 687–88.

The Supreme Court held that Empire's state-law contract claim did not support federal jurisdiction. It was not enough that Empire sought "to vindicate a contractual right contemplated by a federal statute." *Id.* at 690. The contract's express reimbursement provision "depend[ed] upon a recovery from a third party under terms and conditions ordinarily governed by state law," and the normal operation of state law in interpreting the contract's terms did not pose a risk of any significant conflict with "an identifiable federal policy or interest." *Id.* at 692–93.

Here, Plaintiffs plainly allege in the FAC that they entered into work contracts with Defendants which "explicitly incorporated the requirements of 20 C.F.R. §§ 655.122 and 655.210." (*See, e.g.*, Am. Compl. ¶ 186, ECF No. 45.) Therefore, taking Plaintiffs' factual allegations as true, there is no federal question under *Empire Healthcare* because this is merely an action "to vindicate a contractual right contemplated by federal statute."

Alternatively, even if the required "rates of pay" provisions of 20 C.F.R. §§ 655.122 and 655.210 were not expressly included in Plaintiffs' work contracts, the Court would nonetheless lack jurisdiction. Federal case law establishes that federal jurisdiction is not proper in cases where suit is brought to enforce the terms of H-2A job orders, even where those same terms were subsequently omitted from the actual work contracts. *See Arriaga v. Fla. Pac. Farms, L.L.C.*, 305 F.3d 1228, 1233 n.5 (11th Cir. 2002) ("[T]he [H–2A] clearance orders ultimately become

the work contract between the employers and farmworkers."); *Mitchell v. Osceola Farms Co.*, 447 F. Supp. 2d 1307, 1312 (S.D. Fla. 2006) (discussed *infra*).

In *Mitchell*, the central jurisdictional issue was that the work contracts between an employer and its H-2A workers did not expressly incorporate all the terms of the job orders. 447 F. Supp. 2d at 1311–12. This raised a legitimate federal question regarding whether the terms of the job orders "trump" the terms of the work contracts. However, the court held that this question was not "substantial" because the governing law was settled:

> Federal regulations, as noted above, do indeed require that H–2A worker contracts incorporate all terms of the employer's clearance order. *See* 20 C.F.R. § 655.102(b)(14). Based on this regulation, federal courts have held that clearance order terms become a part of H–2A workers' contracts as a matter of law. *Frederick County Fruit Growers Ass'n v. McLaughlin*, 703 F. Supp. 1021, 1031 (D.D.C. 1989). . . . Nonetheless, the Court finds no dispute as to this issue, especially as it applies to the instant case. Federal law is settled: clearance order terms must be incorporated into the worker contracts. Indeed, in the absence of worker contracts, the clearance orders become the contracts. Accordingly, this issue is no longer open to discussion.

*Id.* at 1313 (citation omitted).

The instant case raises a similar, but slightly different question. Here, if the sample contracts attached to the FAC are accurate representations of Plaintiffs' actual work contracts, the situation would be such that neither the applicable job orders nor the subsequent work contracts expressly incorporated all the terms required by federal law. Therefore, in contrast to *Mitchell*, this is not simply a matter of importing a required term from the job order into the contract. Rather, the federal question in this case is: Under 20 C.F.R Part 655, Subpart B, where both the job order and subsequent work contract omit a term that is expressly required by the regulations, must the missing term be considered part of the contract as a matter of law?

Nonetheless, the Court reaches the same conclusion here as was reached in *Mitchell*. In other words, the question raised in this case is a legitimate federal question, but it is not

substantial because controlling law clearly resolves the issue. Under the applicable regulations, Plaintiffs' work contracts, by definition, literally consisted of "[a]ll the material terms and conditions of employment relating to wages, hours, working conditions, and other benefits, including those required by 8 U.S.C. 1188, 29 CFR part 501, or [20 CFR part 655, subpart B]." In the absence of a contract "incorporating all the required terms and conditions of employment," Plaintiffs' contracts, *at a minimum*, consisted of "the terms of the job order *and* any obligations required under 8 U.S.C. 1188, 28 CFR part 501, or [20 CFR part 655, subpart B]." 20 C.F.R. § 655.103(b) (emphasis added). The obligations required under 20 CFR Part 655, Subpart B include the "rates of pay" provisions upon which Plaintiffs' contract claims are based. *See* 20 C.F.R. §§ 655.122(q), 655.210(g). Therefore, as a matter of law, Plaintiffs' H-2A shepherd contracts included a promise to pay the applicable state minimum wage, if higher than the applicable AEWR. *See Ruiz v. Fernandez*, 949 F. Supp. 2d 1055, 1072 (E.D. Wash. 2013), *order clarified*, No. CV-11-3088-RMP, 2013 WL 12167930 (E.D. Wash. June 24, 2013) ("Even in the absence of a separate, written work contract, Western Range was party to an employment contract with Plaintiffs incorporating all required provisions of the H–2A regulations.").

Therefore, this case does not raise a substantial question of federal law, and the Court lacks jurisdiction under 28 U.S.C. § 1331.

### ii. Diversity Jurisdiction Under CAFA

In the alternative, Plaintiffs assert that diversity jurisdiction exists under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d). CAFA provides federal jurisdiction over class actions that meet the following criteria: (1) the class has more than 100 members; (2) the parties are minimally diverse; and (3) the amount in controversy exceeds $5 million. Here, Plaintiffs allege:

> [A]t least 100 members of the class Mr. Cántaro seeks to represent were underpaid at least two thousand dollars per month for—at the least—a period of

over six years, for a total of over $10 million in unpaid wages. Further . . ., approximately 27 of the class Mr. Inga Ramos seeks to represent were underpaid at least two thousand dollars per month for—at the least—a period of over six years, for a total of over $2 million in unpaid wages.

(Am. Compl. ¶ 7, ECF No. 45.)

"As the proponent of federal court jurisdiction, it is well-established that the plaintiff bears the burden of showing that there is no legal certainty that he or she cannot recover the applicable jurisdictional amount." 14AA Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 3702 (4th ed. 2015). "It is plaintiff's burden both to allege with sufficient particularity the facts creating jurisdiction, in view of the nature of the right asserted, and, if appropriately challenged . . . to support the allegation." *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 287 n.10 (1938).

In general, "[w]hen a plaintiff invokes federal-court jurisdiction, the plaintiff's amount-in-controversy allegation is accepted if made in good faith." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 553 (2014). "Applying this principle, courts in the Ninth Circuit have stated that the amount in controversy requirement is 'presumptively satisfied' by a complaint that alleges a sufficient amount on its face, subject to the legal certainty test." *Bayol v. Zipcar, Inc.*, No. 14-CV-02483-TEH, 2015 WL 4931756, at *6 (N.D. Cal. Aug. 18, 2015) (citing Ninth Circuit cases). And where a complaint facially alleges an adequate amount, some courts in this circuit have required the defendant challenging diversity jurisdiction "to show that there is a legal certainty that a sufficient amount is *not* in controversy." *Id.* (emphasis in original); *see also Wilson v. Stratosphere Corp.*, 371 F. App'x 810, 811 (9th Cir. 2010).

In light of these various guideposts, the Court agrees with the Northern District of California's well-researched opinion in *Bayol*, that the best approach "is to credit a plaintiff's good faith allegation absent a factual challenge, but to require the plaintiff to justify it when

challenged by a defendant's evidence." 2015 WL 4931756 at *6 (citing *St. Paul Mercury*, 303 U.S. 283). Accordingly, it is Plaintiffs' burden to establish a legal possibility that they and their proposed classes might recover more than $5 million.

First, Inga's claims do not satisfy CAFA's amount in controversy requirement because they cannot be aggregated with Cántaro's claims. Under CAFA, "the claims of the individual class members shall be aggregated to determine whether the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs." 28 U.S.C. § 1332(d)(6). In contrast, "when there are two or more defendants, [a] plaintiff may aggregate the amount against the defendants to satisfy the amount in controversy requirement *only if the defendants are jointly liable*; however, if the defendants are severally liable, plaintiff must satisfy the amount in controversy requirement against each individual defendant." *Middle Tennessee News Co. v. Charnel of Cincinnati, Inc.*, 250 F.3d 1077, 1081 (7th Cir. 2001) (emphasis added); *see also Vagle v. Archstone Communities, LLC*, No. CV 13-09044 RGK AJWX, 2014 WL 463532, at *3 (C.D. Cal. Feb. 5, 2014) ("While CAFA permits aggregation of claims of separate plaintiffs, claims against multiple defendants can only be aggregated when the defendants are jointly liable.").

This case essentially consists of two parallel class actions asserting like claims under similar factual circumstances. However, each Plaintiff's claims are wholly unrelated to the claims of the other. Cántaro alleges he was jointly employed by WRA, El Tejon, and Gragirena. In contrast, Inga alleges he was jointly employed by MPAS, Estill Ranches, and Estill. The classes Cántaro seeks to represent are thus entirely distinct from the classes Inga seeks to represent. There is no relationship alleged between Cántaro and Inga, other than their common status as H-2A workers in Nevada, and the general similarity of their allegations against their respective employers. There is also no relationship alleged between Cántaro's employers and

Inga's employers, other than the nature of the allegations against them. Accordingly, there is no conceivable basis on which to assert, for example, that Cántaro's employers are jointly liable for the claims alleged by Inga.

Therefore, in order to establish CAFA jurisdiction, each Plaintiff must show, independently, that he and the class members he seeks to represent might recover more than $5 million *from his alleged employers only*. On this basis, Inga's claims must be dismissed. The FAC specifically alleges that the total amount in controversy with respect to the classes Inga seeks to represent is "over $2 million in unpaid wages." (Am. Compl. ¶¶ 7, 146, ECF No. 45.) Thus, without improperly relying on the value of the claims against Cántaro's employers, Inga cannot meet the $5 million threshold required for CAFA jurisdiction.

In contrast, the FAC alleges that the class members' claims against WRA—one of Cántaro's employers—independently satisfy CAFA's amount in controversy requirement. (*See id.* at ¶¶ 7, 113.) Cántaro has calculated that the class claims against WRA total "over $10 million in unpaid wages." (Am. Compl. ¶¶ 7, ECF No. 45.) The Court assumes Cántaro undertook this calculation in good faith. However, the sum of $10 million is based on potential damages accumulated over a period of six years, based on the statute of limitations applicable to contract actions "founded upon an instrument in writing." N.R.S. 11.190(1)(b). Defendants argue that Plaintiffs' claims for breach of contract are merely based on a failure to pay the Nevada minimum wage, and are thus duplicative of the claims arising under the MWA. Therefore, with respect to the contract claims, the Court should apply a two-year statute of limitations (for MWA violations), rather than a six-year statute of limitations (for breach of a written contract). (Mot. Dismiss 12, ECF No. 55.)

The parties have not cited to any authority that addresses whether Nevada law permits a plaintiff to extend the statute of limitations on a statutory or constitutional claim by pleading the

claim under breach of contract. However, the Nevada Supreme Court's opinion in *Meadows v. Sheldon Pollack Corp.*, 556 P.2d 546 (Nev. 1976), is on point, and should control the Court's decision here. In *Meadows*, the Nevada Supreme Court followed the "gravamen of the action" test for determining which statute of limitations was applicable to a claim that sounded both in contract and tort law. It held: "Appellant argues the longer statute of limitations of NRS 11.190(1)(b) or 11.190(2)(c) govern because his action sounds in contract. However, the gravamen of his cause of action is in tort to recover damages for personal injuries; thus, the two-year limitation of NRS 11.190(4)(e) is applicable." *Id.* at 546.

More recently, the Nevada Supreme Court reaffirmed its gravamen of the action approach in *Crabb v. Harmon Enterprises, Inc.*, No. 60634, 2014 WL 549834 (Nev. Feb. 10, 2014). There, the plaintiff alleged that the defendant restaurant breached an implied contract by serving her tainted oysters. *Id.* at *2. Accordingly, the plaintiff asserted the longer statute of limitations applicable to contract claims as opposed to the two-year statute of limitations for personal injury actions. *Id.* The Nevada Supreme Court stated:

> While we recognize that a personal injury claim may be pleaded as a breach of contract, a contract claim for personal injury is treated as a tort claim because the gravamen of this action is in tort to recover damages for personal injuries. As a result, the relevant tort statute of limitations, and not a contract statute of limitations, applies to a breach of contract claim for personal injuries. . . . Because Crabb's claims were to recover damages for personal injuries that she suffered, they were governed by NRS 11.190(4)(e) and were subject to its two-year statute of limitations.

*Id.* at *2–3 (citations omitted).

Here, Plaintiffs' claims are to recover unpaid wages based on Defendants' failure to pay the Nevada minimum wage. As such, the gravamen of this action is the alleged failure to pay the Nevada minimum wage, arising under the MWA. Indeed, it is the MWA violation that gives rise to the overwhelming majority of potential damages in this case; after all, the FAC alleges that

Cántaro's employers owe the class "over $10 million *in unpaid wages*." Therefore, the two-year statute of limitations applicable to claims arising under the MWA is also applicable to Cántaro's contract claims for unpaid Nevada minimum wages. *See Perry v. Terrible Herbst, Inc.*, 132 Nev. Adv. Op. 75, 383 P.3d 257, 262 (2016) (holding that claims arising under the MWA are subject to a two-year statute of limitations).

Having concluded that a two-year statute of limitations applies, the Court cannot give credence to Cántaro's allegation that "over $10 million" is in controversy. Cántaro based this calculation on the six-year statute of limitations for breach of a written contract. After reducing the recovery period to two years, the FAC facially alleges, at best, that the class members' aggregated claims against Cántaro's employers equal approximately $3.33 million. Cántaro has thus failed to allege that this case meets the requirements of CAFA jurisdiction, and his claims must be dismissed.

The Court will therefore dismiss the FAC in its entirety for lack of subject matter jurisdiction, with leave to amend.

## IV.   MOTION FOR LEAVE TO FILE EXCESS PAGES

Rather than file three separate responses to Defendants' three motions to dismiss, Plaintiffs opted to file a single combined response slightly in excess of the 24-page limit imposed by Local Rule 7-3(b). Under these circumstances, the Court finds good cause to permit Plaintiffs to exceed their page limit.

/ / /

/ / /

/ / /

/ / /

/ / /

**CONCLUSION**

IT IS HEREBY ORDERED that the Motions to Dismiss the original Complaint (ECF Nos. 35, 37) are DENIED as moot.

IT IS FURTHER ORDERED that the Motions to Dismiss the First Amended Complaint (ECF Nos. 55, 66, 74) are GRANTED. Plaintiffs shall have thirty days from the date of this order within which to file a second amended complaint remedying, if possible, the defects identified above.

IT IS FURTHER ORDERED that the Motion for Leave to File Excess Pages (ECF No. 75) is GRANTED.

IT IS SO ORDERED.

DATED: This 13th day of April, 2017.

_____
ROBERT C. JONES
United States District Judge