# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

ABEL CÁNTARO CASTILLO et al.,

             Plaintiffs,

      vs.

WESTERN RANGE ASSOCIATION et al.,

             Defendants.

3:16-cv-00237-RCJ-VPC

**ORDER**

This is a putative employment class action alleging breach of contract and wage-and-hour violations. Now pending before the Court are four Motions to Dismiss, (ECF Nos. 117, 118, 121, 124), and a Motion for Leave to File Excess Pages, (ECF No. 128).

## I.    FACTS AND PROCEDURAL BACKGROUND

Plaintiffs Abel Cántaro Castillo, Alcides Inga Ramos, and Rafael De La Cruz are Peruvian citizens lawfully admitted to the United States under the Department of Labor's ("DOL") H-2A guestworker visa program, pursuant to 8 U.S.C. §§ 1101(a)(15)(H)(ii)(a), 1188(a)(1), and 20 C.F.R. Part 655, Subpart B. Cántaro alleges he was employed as a shepherd by Defendants Western Range Association ("WRA"), El Tejon Sheep Company, and Melchor Gragirena from October 2007 to June 2014. (Second Am. Compl. ¶ 13, ECF No. 111.) Inga alleges he was employed as a shepherd by Defendants Mountain Plains Agricultural Services

("MPAS") and Estill Ranches from April 2012 to February 2013.[1] (*Id.* at ¶ 15.) And De La Cruz alleges he was employed as a shepherd by MPAS from March 2009 to "late 2014."[2] (*Id.* at ¶ 14.) Plaintiffs filed this action on May 3, 2016, claiming breach of contract and violations of state labor laws, based primarily on their respective employers' failure to pay minimum wages under Article 15, Section 16 of the Nevada Constitution.

On April 13, 2017, the Court dismissed the First Amended Complaint ("FAC") with leave to amend for lack of subject matter jurisdiction. (*See* Order, ECF No. 107.) The Court found that this case, although related to federal statutes and regulations, consists solely of state-law causes of action and does not raise a substantial question of federal law. The Court also found that Plaintiffs had failed to allege that the case meets the requirements of diversity jurisdiction under the Class Action Fairness Act ("CAFA"). (*See id.* at 12–17.)

On May 15, 2017, Plaintiffs filed their Second Amended Complaint ("SAC"), which includes additional and more detailed allegations regarding the amount-in-controversy requirement under CAFA. (ECF No. 111.) The SAC also adds a new Plaintiff—Rafael De La Cruz.

De La Cruz has previously been a plaintiff in multiple other cases involving Defendants WRA and MPAS. The first was filed on August 8, 2015, in the U.S. District Court for the District of Colorado. *See Hispanic Affairs Project et al. v. Perez et al.*, No. 1:15-cv-1785-RM-MJW (D. Colo.) (filed Aug. 8, 2015). The case was primarily brought against Thomas E. Perez, former U.S. Secretary of Labor; the U.S. Department of Labor; and Portia Wu, former Assistant

---

1  In the First Amended Complaint, Inga also alleged that John Estill, owner and manager of Estill Ranches, was jointly liable for the claims asserted in this lawsuit. However, Mr. Estill is no longer named as a defendant in the Second Amended Complaint.

2  The Second Amended Complaint also alleges that De La Cruz was employed, during the time period relevant to this action, by the Double-U-Livestock ranch. However, Double-U-Livestock is not named as a defendant.

Secretary of Labor for the Employment and Training Administration, as an action under the Administrative Procedure Act ("APA") challenging the implementation of the DOL's 2011 and 2015 Special Procedures for H-2A Shepherds. This case will be referred to as "the APA Action."

The second prior case was filed on September 1, 2015, also in the District of Colorado. *See Llacua et al. v. Western Range Association et al.*, No. 1:15-cv-1889-REB-CBS (D. Colo.) (filed Sept. 1, 2015). In *Llacua*, De La Cruz brought class claims against, *inter alia*, WRA and MPAS. (Defendant Estill Ranches was also named as a defendant in *Llacua*, but was voluntarily dismissed from the action on March 31, 2016.) In their second amended complaint, the *Llacua* plaintiffs asserted the following claims against WRA and MPAS: (1) restraint of trade in violation of 15 U.S.C. §§ 1 *et seq.* (the Sherman Antitrust Act); (2) violations of the Racketeer Influenced and Corrupt Organizations (RICO) Act; (3) failure to pay Nevada minimum wages (against MPAS only); and (4) breach of contract or quasi-contract. This case will be referred to as "the Antitrust Action."

On September 22, 2015, as the result of a joint motion by all parties, the APA Action was transferred to the U.S. District Court for the District of Columbia. The complaint was subsequently amended twice, joining several defendants and adding class claims in quasi-contract (i.e., unjust enrichment and quantum meruit) against WRA and MPAS to recover back wages. Thereafter, on September 9, 2016, the D.C. court ordered that the claims in quasi-contract be severed and transferred back to the District of Colorado where the action was originally filed. The court noted that the Antitrust Action was already pending in Colorado, having been "brought by some of the same plaintiffs here, and litigated by the same attorneys, against the same defendants . . . ." *Hispanic Affairs Project v. Perez*, 206 F. Supp. 3d 348, 377 (D.D.C.), *on reconsideration in part*, 319 F.R.D. 3 (D.D.C. 2016). The court then stated:

> Therefore, even though the back pay claims at issue here are different in nature
> and involve different questions of law, they would come to the same conclusion—

whether, and how much, the plaintiffs are entitled to damages to compensate for lost wages due to allegedly unlawful activity on the part of the Association Defendants or invalid administrative rules issued by DOL. Consequently, the administration of justice is best served by transferring these back pay claims against the Association Defendants to the District of Colorado so that they may be adjudicated at the same time as the plaintiffs' pending antitrust claims.

*Id.* at 377–78. The quasi-contract claims asserted in the APA Action were thus transferred to the District of Colorado on March 22, 2017.

Meanwhile, on March 7, 2017, the Colorado court granted a motion to dismiss the Antitrust Action. The court dismissed the plaintiffs' federal-law claims, arising under the Sherman Act and RICO Act, and then declined to exercise supplemental jurisdiction over the remaining state-law claims. Plaintiffs appealed the dismissal of the Antitrust Action to the Tenth Circuit, and that appeal is now pending. *See Llacua et al. v. Western Range Association et al.*, No. 17-1113 (10th Cir. 2017) (filed March 29, 2017).

On June 27, 2017, the portion of the APA Action that was transferred back to the District of Colorado was administratively closed subject to reopening for good cause, pursuant to District of Colorado Local Civil Rule 41.2. The parties had jointly moved for administrative closure based on the APA claims pending in the District of Columbia and the appeal of the Antitrust Action pending in the Tenth Circuit. The parties stated: "The Parties disagree about precisely how either the Tenth Circuit appeal or the D.C. action will affect the pending claims but are in agreement that it makes sense to litigate those issues after a decision from one of these other courts, which the Parties expect within a year." (*See Perez*, No. 1:15-cv-1785 (D. Colo.), ECF No. 37 at 2.) Following the administrative closure, De La Cruz voluntarily dismissed his claims without prejudice. (*See Perez*, No. 1:15-cv-1785 (D. Colo.), ECF No. 44.)

Finally, on July 7, 2017, summary judgment was granted in favor of the government agency defendants in that portion of the APA Action still pending in the District of Columbia.

*See Hispanic Affairs Project v. Acosta*, 263 F. Supp. 3d 160 (D.D.C. 2017). That decision is currently on appeal at the D.C. Circuit. *See Hispanic Affairs Project et al. v. Acosta et al.*, No. 17-5202 (D.C. Cir.) (filed Sept. 11, 2017).

De La Cruz joined the instant action on May 15, 2017, by way of the SAC. He seeks to represent classes of current and former H-2A program employees of MPAS. The claims alleged by De La Cruz include (1) failure to pay Nevada minimum wages, (2) promissory estoppel, (3) unjust enrichment and quantum meruit, (4) breach of contract or quasi-contract, and (5) failure to pay separated employees wages when due. (Second Am. Compl. 41–45, ECF No. 111.)

Defendants now move again to dismiss the SAC under Federal Rules of Civil Procedure 12(b)(1) and 12 (b)(6).

## II.  MOTIONS TO DISMISS

### a.  Diversity Jurisdiction Under CAFA

Following Plaintiffs' amendment of their pleading, the Court remains unsatisfied that the requirements of diversity jurisdiction under 28 U.S.C. § 1331(d) (CAFA) are met.

CAFA provides federal jurisdiction over class actions that meet the following criteria: (1) the class has more than 100 members; (2) the parties are minimally diverse; and (3) the amount in controversy exceeds $5 million. "As the proponent of federal court jurisdiction, it is well-established that the plaintiff bears the burden of showing that there is no legal certainty that he or she cannot recover the applicable jurisdictional amount." 14AA Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 3702 (4th ed. 2015). "It is plaintiff's burden both to allege with sufficient particularity the facts creating jurisdiction, in view of the nature of the right asserted, and, if appropriately challenged . . . to support the allegation." *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 287 n.10 (1938). Where allegations regarding the amount in controversy are contested by an opposing party, "both sides submit proof and the court decides,

by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 554 (2014). A party asserting jurisdiction under CAFA cannot establish jurisdiction "by mere speculation and conjecture, with unreasonable assumptions." *Ibarra v. Manheim Investments, Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015). However, CAFA's amount-in-controversy requirement may be satisfied by "evidence combined with reasonable deductions, reasonable inferences, or other reasonable extrapolations." *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 754 (11th Cir. 2010).

In its prior order dismissing this case, the Court concluded that it is Plaintiffs' burden to establish the legal possibility that they and their proposed classes might recover more than $5 million. (Order 13–14, ECF No. 107.) The Court also noted that Plaintiffs may not aggregate the value of their claims against WRA, El Tejon, and Gragirena, with the value of their claims against MPAS and Estill Ranches. (*Id.* at 14–15.) Now, the SAC accounts for the analysis in the Court's dismissal order by including more detailed allegations concerning the possible damages that putative class members stand to recover in the form of back wages. For the class of workers allegedly employed by WRA, Plaintiffs allege an amount in controversy of $25,990,220.21. (Second Am. Compl. ¶ 8.) For the class of workers allegedly employed by MPAS, Plaintiffs allege an amount in controversy of $7,319,415.10. (*Id.* at ¶¶ 9–11.) These estimates are based on the number of workers employed by WRA and MPAS, respectively, in Nevada during the time period relevant to this action, according to disclosure data made available online by the DOL. (*See id.* at 4–6.) For example, from that data Plaintiffs were able to determine that WRA certified 173 H-2A shepherds to work for Nevada ranches in 2014.

Out of necessity, Plaintiffs make certain factual assumptions in order to satisfy the requirements of CAFA jurisdiction. However, the Court cannot find these assumptions

reasonable. First, Plaintiffs assume that every certified worker in each certification year represents a new and unique class member. For example, Plaintiffs allege that MPAS certified 43 Nevada shepherds in 2014, 33 shepherds in 2015, 32 shepherds in 2016, and 26 shepherds in 2017. (Second Am. Compl. 6.) On this basis alone, Plaintiffs conclude that the MPAS class is comprised of over 100 members. But this conclusion ignores the fact that the DOL's disclosure data does not specify whether any certified shepherd is continuing on from a previous year. In reality, it appears to have been a very common occurrence for H-2A shepherds to return to work for the same employer in subsequent years. Indeed, such was the case for Cántaro and De La Cruz, who both worked multiple consecutive years for their respective employers. Also, the disclosure data itself does not provide an employee count, but merely the total number of H-2A certifications. And the Court cannot accept the foregone conclusion that every certification represents an actual employee.

The inaccuracy of Plaintiffs' calculations is highlighted in a factual challenge raised by El Tejon and Gragirena. In the SAC, Plaintiffs allege, based on the DOL disclosure data, that "El Tejon and Gragirena employed approximately 48 herders during the two-year statutory period for Plaintiffs' wage claims." (*Id.* at ¶ 140.) However, according to the declaration of Melchor Gragirena, "[f]or the two years preceding the filing of the complaint in this case, May 3, 2016, there are only twelve (12) individuals including Cántaro, whom [sic] could be members of a class action, that were employed as shepherds for El Tejon." (Gragirena Decl. ¶ 6, ECF No. 117-1 at 28.) In fact, dating back to May 2010, "El Tejon has only employed twenty-six (26) different shepherds, including Plaintiff [Cántaro]." (*Id.* at ¶ 4.)

At the very least, Plaintiffs' reliance on the disclosure data has led to a gross overestimate in the size of the El Tejon class. And in the face of El Tejon's factual challenge to the disclosure data's reliability—which shows Plaintiffs' estimate to be roughly two to four times too high—it

is not reasonable to accept Plaintiffs' conclusory allegation that the MPAS class has over 100 members. (Second Am. Compl. ¶ 156 ("However, according to publicly available data from the USDOL (namely, the aforementioned 'Disclosure Data'), Defendant MPAS employed over 100 Nevada shepherds during the statutory period for Plaintiff De La Cruz's wage claims.").) The same problem does not arise with the WRA class, because there the disclosure data establishes that over 100 shepherds were consistently certified in Nevada in each individual year.[3] (*Id.* at 4–5.) However, to reach 100 class members in the MPAS class, it is necessary to add together the disclosure data's certification figures from at least three years. As El Tejon has demonstrated with competent evidence (i.e., Gragirena's declaration), in many cases the same person—a single class member—was certified and recertified from year to year. Plaintiffs have adduced no evidence in response. As a result, the Court finds Plaintiffs have not made sufficient allegations to establish that the MPAS class has over 100 members.

Next, to satisfy the amount-in-controversy requirement, Plaintiffs assume that every certified Nevada shepherd actually worked every hour of every day of every year during which he or she was certified. As an initial matter, this runs contrary to some of Plaintiffs' own allegations regarding the hours they worked in Nevada. For example, Plaintiffs allege that Cántaro worked roughly half of each year in California, but that "[t]his case only concerns the time Mr. Cántaro, or others similarly situated, worked in Nevada." (Second Am. Compl. ¶¶ 47–48.) Furthermore, Gragirena has submitted a declaration stating that all of El Tejon's shepherds spend half of every year in California, like Cántaro. (Gragirena Decl. ¶ 9.) Therefore, the

---

3  Of course, even the WRA class size estimate is questionable, because it assumes that every labor certification WRA obtained was actually used, which is not necessarily the case. Ultimately, the DOL's labor statistics are merely statistics, and are an inferior substitute for facts founded upon real evidence.

assumption that all class members worked 365 days per year in Nevada is problematic in light of the fact that this clearly was not the case for one of the three named plaintiffs.

Moreover, the assumption that all class members are entitled to hourly compensation for twenty-four hours a day, seven days a week, and fifty-two weeks a year stands in sharp contrast to signed declarations provided by H-2A shepherds currently employed by El Tejon. Of course, as individuals, Plaintiffs allege they are entitled to twenty-four hours' worth of compensation for every day of work. Moreover, Plaintiffs allege knowledge that "all or almost all of the other shepherds" they worked with were subject to the same schedule and working conditions. (Second Am. Compl. ¶¶ 51–53, 73–75.) Cántaro and De La Cruz also allege, generally, that during every week of their employment, they worked "well over 40 hours per week, and [were] on duty in [their] workplace 24 hours per day, seven days per week pursuant to the terms of the job order and Defendants' requirement that [they] remain near the flock and guard them from predators." (*Id.* at ¶¶ 52, 74.) In contrast, however, El Tejon has submitted declarations from six current H-2A shepherds, who all provide detailed daily work schedules, and all attest that, in fact, they regularly perform work for an average of about eight hours per day. (*See* Yauri Garcia Decl. ¶¶ 18–22, ECF No. 117-1 at 35–36; Ascanoa Alania Decl. ¶¶ 17–20, ECF No. 117-1 at 41–42; Cantaro Otea Decl. ¶¶ 18–21, ECF No. 117-1 at 17–48; Lapa Pomahuali Decl. ¶¶ 17–20, ECF No. 117-1 at 54–55; Melo Castillo Decl. ¶¶ 11–14, ECF No. 117-1 at 60–61; Archi Lozano Decl. ¶¶ 13–16, ECF No. 117-1 at 66–67.)

The D.C. court's summary judgment in the APA Action also tends to undermine Plaintiffs' assertion that the putative class members must be paid for every hour of every day simply because they were expected to be "on call." *See Hispanic Affairs Project v. Acosta*, 263 F. Supp. 3d 160, 192–95 (D.D.C. 2017). The court dismissed the plaintiffs' challenge to the DOL's 2015 Rule regarding H-2A Shepherds, and thus upheld the methodology by which the

DOL had calculated the national AEWR under the Rule. The DOL had based its calculations on an estimated 48-hour workweek. Therefore, by crediting the DOL's estimate of 48 hours of compensable time per week, while recognizing that the workers are expected to be on constant call, the D.C. court clearly rejected the notion that on-call hours are equivalent to working hours in the H-2A shepherd context.

Of course, the question of the actual number of hours worked by the Plaintiffs and class members in this case is a factual one, not well-answered at the pleadings stage. However, when a party's assertion of the amount in controversy is challenged by competent evidence,

> the Supreme Court has said that both sides submit proof and the court then decides where the preponderance lies. Under this system, CAFA's requirements are to be tested by consideration of real evidence and the reality of what is at stake in the litigation, using reasonable assumptions underlying the [asserted] theory of damages exposure.

*Ibarra*, 775 F.3d at 1198 (citations omitted), citing *Dart*, 135 S. Ct. at 554. "The parties may submit evidence outside the complaint, including affidavits or declarations, or other summary-judgment-type evidence relevant to the amount in controversy . . . ." *Id.* at 1197 (citations omitted). Here, El Tejon has challenged Plaintiffs' allegations of hours worked with multiple declarations providing specific details regarding job duties and work schedules. In response, Plaintiffs have submitted no evidence, but have merely relied on the unsworn and comparatively vague assertions in the SAC. On the one hand, the Court has declarations signed under penalty of perjury, stating when the declarants start and end their day, what they do during their work hours, what they do during their downtime, how much sleep they are regularly able to get, and when and how often they are able to eat meals, among other details. On the other hand, the Court has the unverified SAC, broadly asserting that Plaintiffs worked every hour of every day, based only on the terms of their contracts and the general requirement that they "remain near the flock."

Therefore, based on the motions and evidence presented, the Court concludes that the preponderance lies with Defendants. It is apparent to the Court that Plaintiffs rely on certain unreasonable assumptions and inferences in alleging that the requirements of CAFA are satisfied. Moreover, and more significantly, Defendants have presented evidence in the form of signed declarations which demonstrate the unreasonableness of Plaintiffs' class-wide assumption that every shepherd is entitled to 24/7 compensation for every day of every year, and Plaintiffs have proffered no evidence in response. Under Ninth Circuit precedent, CAFA's requirements should be tested "by consideration of real evidence and the reality of what is at stake in the litigation, using reasonable assumptions." *Ibarra*, 775 F.3d at 1198. Accordingly, Plaintiffs have not persuaded the Court that the requirements of CAFA are met here, and this action must be dismissed for lack of subject matter jurisdiction.

### b. No Individual Liability for Gragirena

The Court also notes that in the SAC, Melchor Gragirena is named as a defendant in his capacity as the owner and manager of El Tejon. (Second Am. Compl. ¶¶ 18, 35, ECF No. 111.) In 2008, however, the Nevada Supreme Court made it clear that "individual corporate managers are not personally liable, as employers, for unpaid wages." *Boucher v. Shaw*, 124 Nev. 1164, 1170 (2008). While Plaintiffs attempt to distinguish *Boucher* by pointing out that it was decided under NRS Chapter 608, and not the Minimum Wage Amendment ("MWA"), their argument is unpersuasive. The underlying principle of *Boucher*'s ultimate conclusion is that "[u]nder Nevada corporate law, individual liability does not extend to officers, directors, or stockholders of a corporation except as otherwise provided by specific statute." *Id.* (internal quotation marks and brackets omitted). Like NRS Chapter 608, the MWA does not specifically provide for personal liability of corporate officers, nor does it indicate an intent to extend such liability for unpaid wages to business owners and managers like Gragirena. Therefore, the Court concludes that the

Nevada Supreme Court's pronouncement that "individual management-level corporate employees . . . cannot be held liable as employers for the unpaid wages of employees under Nevada's wage and hour laws," has equal force in cases arising under the MWA.

Plaintiffs also argue that this Court should not follow *Boucher* because the Nevada Supreme Court overturned it in *Terry v. Sapphire Gentlemen's Club*, 336 P.3d 951, 953 (Nev. 2014), *reh'g denied* (Jan. 22, 2015). But *Terry* simply did not address the question raised in *Boucher*. The question in *Terry* was whether a corporate entity's workers should be classified as employees or independent contractors for purposes of Nevada's wage-and-hour laws. There was no individual corporate-officer defendant in *Terry*. In contrast, the central issue in *Boucher* was the integrity of the corporate veil—an entirely separate question. That the economic realities test should be used to determine whether a person or entity is an "employer" under Nevada law has little bearing on whether it is appropriate to pierce the corporate veil and extend personal liability to individual managers. Other courts in this District have recognized that *Boucher* is still applicable post-*Terry*, and this Court agrees. *See, e.g.*, *Guy v. Casal Inst. of Nevada, LLC*, No. 2:13-cv-2263, 2015 WL 56048, at *2 (D. Nev. Jan. 5, 2015) (Gordon, J.); *Greene v. Jacob Transportation Servs., LLC*, No. 2:09-cv-466, 2017 WL 471565, at *4 (D. Nev. Feb. 3, 2017) (Navarro, C.J.).[4] Accordingly, the claims against Gragirena are subject to dismissal.

### c. Improper Claim-Splitting

Lastly, MPAS argues that De La Cruz is engaging in claim-splitting and his claims in this case should be dismissed. The Court agrees. To determine whether a lawsuit is duplicative and

---

[4] Plaintiffs highlight *Kariuki v. Shac, LLC*, No. 2:14-cv-1118, 2016 WL 6069927 (D. Nev. Oct. 13, 2016) (Mahan, J.), as an example of one court in this District which, after citing *Terry*, declined to grant summary judgment for individual manager defendants in an action to recover minimum wages. However, the *Kariuki* opinion does not discuss nor even mention *Boucher*, and thus lacks persuasive authority here.

must be dismissed, courts "examine whether the causes of action and relief sought, as well as the parties or privies to the action, are the same." *Adams v. Cal. Dep't of Health Servs.*, 487 F.3d 684, 689 (9th Cir. 2007), *overruled on other grounds by Taylor v. Sturgell*, 553 U.S. 880, 904 (2008). The most important criterion to consider is "whether the two suits arise out of the same transactional nucleus of facts." *Id.* (quoting *Costantini v. Trans World Airlines*, 681 F.2d 1199, 1201–02 (9th Cir. 1982)).

> It is clear that a motion to dismiss based on improper claim-splitting need not—indeed, often cannot—wait until the first suit reaches final judgment. Thus, in the claim-splitting context, the appropriate inquiry is whether, assuming that the first suit were already final, the second suit could be precluded pursuant to claim preclusion.

*Hartsel Springs Ranch of Colorado, Inc. v. Bluegreen Corp.*, 296 F.3d 982, 987 n.1 (10th Cir. 2002).

De La Cruz has alleged minimum wage and contract claims against MPAS in two other actions arising from the same transactional nucleus of facts. In the portion of the APA Action transferred back to the District of Colorado by the D.C. court, the case was administratively closed and De La Cruz voluntarily dismissed his claims. However, in the Antitrust Action, the court dismissed the federal-law claims and then declined to exercise supplemental jurisdiction over the Nevada state minimum wage claims. An appeal of that dismissal is now pending at the Tenth Circuit. De La Cruz has not dismissed his state-law claims in the Antitrust Action, and a reversal by the Tenth Circuit would naturally have the effect of reviving not only the dismissed federal-law claims, but the entire complaint—supplemental state-law claims included.

De La Cruz initially elected to assert his claims for unpaid Nevada minimum wages in the District of Colorado, and that effort has not yet reached its final conclusion. If his state-law claims are resurrected there by a successful appeal, then a subsequent disposition in that court on the merits of his state-law claims would have a preclusive effect in this case. A plaintiff does not

have the right to maintain two separate actions involving the same subject matter at the same time and against the same defendant. *See Adams*, 487 F.3d at 688. For that reason, De La Cruz's claims are subject to dismissal for claim-splitting.

### III.    MOTION FOR LEAVE TO FILE EXCESS PAGES

Rather than file four separate responses to Defendants' four motions to dismiss, Plaintiffs opted to file a single combined response in excess of the 24-page limit imposed by Local Rule 7-3(b). Under the circumstances, good cause exists to permit Plaintiffs to exceed their page limit.

### CONCLUSION

IT IS HEREBY ORDERED that the Motions to Dismiss the Second Amended Complaint (ECF Nos. 117, 118, 121, 124) are GRANTED. This action is DISMISSED WITHOUT PREJUDICE AND WITHOUT LEAVE TO AMEND.

IT IS FURTHER ORDERED that the Motion for Leave to File Excess Pages (ECF No. 128) is GRANTED.

The Clerk of the Court is hereby instructed to close the case.

IT IS SO ORDERED.

_____
ROBERT C. JONES
United States District Judge
February 10, 2018