1

2

3

4

5

6    **UNITED STATES DISTRICT COURT**

7    **DISTRICT OF NEVADA**

8

9    ABEL CANTARO CASTILLO,                 )
                                            )
10            Plaintiff,                    )
                                            )
11       vs.                               )        3:16-cv-00237-RCJ-CLB
                                            )
12   WESTERN RANGE ASSOCIATION,             )        **ORDER**
                                            )
13            Defendant.                    )
                                            )
14   _____       )

15          Plaintiff Abel Cantaro Castillo ("Plaintiff") raises five causes of action against Defendant

16   Western Range Association ("Defendant"): (1) failure to pay minimum wages in violation of the

17   Nevada Constitution, (2) breach of contract or quasi contract, (3) promissory estoppel, (4) unjust

18   enrichment and quantum meruit, and (5) failure to pay separated employees' wages when due.

19   (ECF No. 111.)[1] Plaintiff was a nonimmigrant agricultural worker, who worked as a sheepherder.

20   The basis of Plaintiff's causes of action is his contentions that Defendant was his joint employer

21   and did not pay him the minimum hourly wage required by Nevada law. Plaintiff seeks to bring

22   these claims on behalf of himself as well as those similarly situated pursuant to Fed. R. Civ. P. 23.

23   _____
[1] While the operative complaint included additional parties and claims, these were resolved with a
24   stipulation for dismissal. (ECF No. 196.) Plaintiff's five claims against Defendant constitute all
     the remaining disputes to be resolved in this case.

Currently before this Court are three motions ripe for consideration: (1) Plaintiff's Motion for Partial Summary Judgment (ECF No. 303), (2) Defendant's Motion for Summary Judgment (ECF No. 300), and (3) Plaintiff's Motion to Certify Class (ECF No. 264). Having considered the motions, the Court grants Plaintiff's partial motion for summary judgment because Defendant is clearly a joint employer for H-2A purposes. Further, the Court does not rule on Defendant's motion for summary judgment. Rather, the Court believes that it cannot rule on the motion because an ambiguity exists in Nevada law. For that reason, the Court certifies a question to the Nevada Supreme Court. Finally, the Court denies Plaintiff's motion to certify a class.

## I.   FACTUAL BACKGROUND

Plaintiff, a citizen of Peru, worked as an H-2A sheepherder from "around October 2007" to June 8, 2014.[2] The H-2A temporary agricultural worker program permits individuals to work in the United States on temporary nonimmigrant agricultural worker visas. Department of Labor ("DOL") regulations set minimum wages and working conditions for H-2A workers. 20 C.F.R. § 655.0(a). Agricultural employers seeking the admission of H-2A workers must first file a temporary labor certification application with the DOL. *Id.* § 655.130. This application must include a job offer, commonly referred to as a "clearance order" or "job order," that complies with applicable federal regulations. *Id.* § 655.121(a)(1). These regulations establish the minimum benefits, wages, and working conditions that the employer must offer to the employee in order to avoid adversely affecting similarly-situated United States workers. *Id.* §§ 655.120(a)(2), 655.122, 655.135, and 655.210.

Defendant is a membership association that recruits and employs foreign shepherds to work at individual member ranches. Defendant runs recruitment operations in Mexico, Chile, and Peru. (ECF No. 303-6 at 63-64.) These recruitment operations are run by "coordinators"—independent

---

[2] It is unclear when Plaintiff started working and when he stopped. (ECF No. 111 ¶ 47.)

1   contractors who are paid and instructed in their duties by Defendant. (*Id.* at 62-63.) Coordinators'

2   recruiting duties include interviewing potential herders and checking their references. (*Id.* at 63).

3   Subsequently, they guide potential herders through the visa process, helping them to obtain

4   passports, comply with H-2A paperwork requirements, prepare for their visa interviews, obtain the

5   required medical examination paperwork, and arrange herders' travel. (*Id.*)

6         Through these recruitment operations Defendant helped to secure employment for Plaintiff

7   with El Tejon Sheep Company ("El Tejon") as a sheepherder with an H-2A visa. (ECF No. 111

8   ¶ 35.) During this work, Plaintiff split his time between California and Nevada under a document

9   that both Defendant and Plaintiff signed titled, "Pre-Employment Notice of Rights and

10   Obligations." (ECF No. 303-4.) Defendant drafted this document for Plaintiff to set out the terms

11   of employment. (*Id.*) For example, the document established the base wage of $750, who would

12   supply the tools for employment, when Plaintiff would receive pay, who would transport Plaintiff,

13   and who would provide housing. (*Id.*) This document also put Plaintiff on notice that sheepherders

14   were on call for 24 hours a day, seven days a week to ensure that the sheep received proper

15   attention. (*Id.*) Plaintiff claims to have worked under this agreement from about October to mid-

16   April (approximately seven months out of the year) in California, and from mid-April to September

17   or early October (approximately five months of the year) in Nevada. (ECF No. 111 ¶ 47.)

18         During this time, Plaintiff worked as a sheepherder for El Tejon and allegedly tended to

19   the sheep for 24 hours a day. (ECF No. 111 ¶ 51.)  However, Defendant only compensated Plaintiff

20   for a fraction of those hours allegedly worked and allegedly paid Plaintiff the wrong wage. (ECF

21   No. 111 ¶ 52.) Under the H-2A program, an employer must pay the larger wage of either the state's

22   minimum wage or the adverse effect wage rate ("AEWR") established under the program. 20

23   C.F.R. § 655.120. Defendant paid Plaintiff the California AEWR rather than the Nevada minimum

24   wage.

1

2          Plaintiff brought an action in this Court to recover the wages for 24 hours of everyday that

3   he worked as a sheepherder because Defendant is allegedly a joint employer with El Tejon under

4   the H-2A agreements. (ECF No. 1.) Plaintiff brought the action on behalf of himself, and those

5   similarly situated to certify the action as a class action. (*Id*.) Plaintiff brought this action against

6   Defendant, associations like Defendant, and ranches that employed Plaintiff. (*Id*.) This Court

7   dismissed the ranches and other associations from this action and only Defendant remains.

8          Plaintiff alleges that Defendant failed to pay minimum wages in violation of the Nevada

9   Constitution. (ECF No. 111 ¶ 191.) Plaintiff argues that he is entitled to 24 hours worth of pay for

10  everyday he worked as a sheepherder because he needed to tend to the sheep for 24 hours a day to

11  keep the sheep safe. (ECF No. 111 ¶ 51.) The 24 hours that Plaintiff spent on the range included

12  time eating, resting, sleeping, and other time for his personal benefit. (*Id*.) Even though Plaintiff

13  spent time during the 24 hours for his personal benefit, he was required to look after the sheep

14  because they were constantly at risk of being harmed. Accordingly, Plaintiff maintains that he is

15  entitled to the Nevada minimum wage for all 24 hours of everyday that he worked for El Tejon as

16  a sheepherder. (ECF No. 111 ¶ 191.)

17          Defendant argues that it is not a joint employer under the H-2A program, and even if it

18  was, Plaintiff received the proper amount of compensation because Plaintiff is not entitled to

19  compensation for hours spent outside of tending to the sheep. (ECF No. 300.) Defendant states

20  that it is not a proper party for this action because it is not a joint employer under the H-2A

21  program. (ECF No. 311.) Withstanding this argument, Defendant argues that it paid Plaintiff the

22  proper wage under the H-2A program and that the wage Defendant paid is higher than the Nevada

23  minimum wage, so Defendant did not underpay Plaintiff. (ECF No. 300.) Defendant argues further

24

1    that, even if it paid the wrong wage, Plaintiff is not entitled to compensation for the hours that he

2    spent for his personal benefit. (*Id.*)

3                                    **II.      ANALYSIS**

4        **A.  Summary Judgment Standard of Review**

5            A court must grant summary judgment when "the movant shows that there is no genuine

6    dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

7    Civ. P. 56(a). Material facts are those which may affect the outcome of the case. *See Anderson v.*

8    *Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is

9    sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.*

10            In determining summary judgment, a court uses a burden-shifting scheme. The moving

11    party must first satisfy its initial burden. "When the party moving for summary judgment would

12    bear the burden of proof at trial, it must come forward with evidence which would entitle it to a

13    directed verdict if the evidence went uncontroverted at trial." *C.A.R. Transp. Brokerage Co. v.*

14    *Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citation and internal quotation marks

15    omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense,

16    the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential

17    element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed

18    to make a showing sufficient to establish an element essential to that party's case on which that

19    party will bear the burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24

20    (1986).

21            If the moving party fails to meet its initial burden, summary judgment must be denied and

22    the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398

23    U.S. 144 (1970). On the contrary, if the moving party meets its initial burden, the burden then

24    shifts to the opposing party to establish a genuine issue of material fact. *See Matsushita Elec.*

1    *Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual

2    dispute, the opposing party need not establish a material issue of fact conclusively in its favor.

3    However, the nonmoving party cannot avoid summary judgment by relying solely on conclusory

4    allegations unsupported by facts. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead,

5    the opposition must go beyond the assertions and allegations of the pleadings and set forth specific

6    facts by producing competent evidence that shows a genuine issue for trial. *See* Fed. R. Civ. P.

7    56(e); *Celotex Corp.*, 477 U.S. at 324.

8          At the summary judgment stage, a court's function is not to weigh the evidence and

9    determine the truth, but to determine whether there is a genuine issue for trial. *See Anderson*, 477

10   U.S. at 249. The evidence of the nonmovant is "to be believed, and all justifiable inferences are to

11   be drawn in his favor." *Id.* at 255. Notably, facts are only viewed in the light most favorable to the

12   non-moving party where there is a genuine dispute about those facts. *Scott v. Harris*, 550 U.S. 372,

13   380 (2007). However, where a party's evidence is so clearly contradicted by the record as a whole

14   that no reasonable jury could believe it, "a court should not adopt that version of the facts for

15   purposes of ruling on a motion for summary judgment." *Id.*

16   **B. Plaintiff's Motion for Summary Judgment**

17         Plaintiff moves for summary judgment on the issue of Defendant's status as a joint em-

18   ployer under the H-2A program. Plaintiff argues every reasonable juror would find that Defendant

19   was a joint employer from the evidence Plaintiff presents. This Court agrees.

20         Plaintiff identifies past cases where this Court and courts in this Circuit recognized that

21   Defendant is a joint employer under the H-2A program. *Little v. Solis*, 297 F.R.D. 474, 478 (D.

22   Nev. 2014); *Ruiz v. Fernandez*, No. CV–11–3088–RMP, 2013 WL 2467722, at *2 (E.D.Wash.

23   June 7, 2013). In those cases, the courts turned to the economic realities test to determine whether

24   Defendant is a joint employer under the H-2A program. *Id*. The courts analyzed Defendant's role

1  in the H-2A program and determined that Defendant is a joint employer. *Id*. Conveniently, De-

2  fendant does not address those cases and, instead, tries to relitigate its joint employer status under

3  the economic realities test. Beyond relitigating, Defendant also wants to reverse its position that it

4  took in *Little*. Defendant argued previously that it was a "joint employer solely for H-2A program

5  purposes," but that its status did not preclude it from recovery in that case. *Little*, 297 F.R.D. at

6  478. In *Little*, the court applied "the four factors[3] used in *Bonnette* to analyze whether or not [De-

7  fendant] was a" joint employer as an H-2A employer under the FSLA. *Id*. at 479; *Bonnette v. Cal.*

8  *Health & Welfare Agency*, 704 F.2d 1465, 1470 (9th Cir.1983). Ultimately, the court applied the

9  factors and found that Defendant "is indeed a joint employer of the H–2A sheepherders." *Id*. at

10  481. Defendant wants it both ways and this Court refuses to spill any further ink on the issue of

11  whether Defendant is a joint employer under the H-2A program. It is quite clear from Plaintiff's

12  motion and prior case law that there is no genuine issue of material fact as to whether Defendant

13  is a joint employer. Therefore, the Court grants Plaintiff's motion for partial summary judgment.

14      **C. Defendant's Motion for Summary Judgment**

15          Defendant argues it is entitled to summary judgment on all the claims against it because

16  Plaintiff lacks sufficient evidence for a reasonable juror to conclude that Plaintiff worked more

17  hours for which Defendant compensated him. As explained in depth below, the Court cannot rule

18  on Defendant's motion for summary judgment because there is a question as to whether, under

19  Nevada law, Plaintiff can receive compensation for time spent sleeping and for personal benefit.

20  If Nevada law does not compensate Plaintiff for all the hours that he spent on the range as a

21  sheepherder and, instead, only compensates him for time spent tending to the sheep, then

22  Defendant's motion for summary judgment is proper. However, Defendant's motion is improper

23

24  ---
[3] "[W]hether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Bonnette*, 704 F.2d at 1470.

if Nevada law does compensate Plaintiff for all the hours he spent on the range as a sheepherder because Plaintiff may have been underpaid for his work. The Court will certify a question to the Nevada Supreme Court to resolve this issue and defer on Defendant's summary judgment motion.

Plaintiff argues that he is entitled to 24 hours of pay for every day that he was a sheepherder because, he contends, he was always working to some degree. He admits much of the time that he spent as a sheepherder he could eat, sleep, and do other things for his personal benefit. Nonetheless, he maintains he worked 24 hours a day to stay close to the sheep and watch for predators as well as otherwise tend to the sheep. Accordingly, Plaintiff claims that he was underpaid because he did not receive 24 hours' worth of pay for every day spent on the ranch. Assuming this is true, the Court must determine what minimum wage scheme Plaintiff's claim falls under for the 24 hours of work and whether that minimum wage scheme pays Plaintiff minimum wage for all 24 hours of work. Plaintiff can survive a summary judgment motion if a reasonable juror can find that Defendant was required to pay Plaintiff for all 24 hours of work under the applicable minimum wage scheme.

H-2A employers must "pay a wage that is the highest of the AEWR, the prevailing hourly wage or piece rate, the agreed-upon collective bargaining wage, **or the Federal or State minimum wage**, except where a special procedure is approved for an occupation or specific class of agricultural employment." 20 C.F.R. § 655.120 (emphasis added). Plaintiff brings this action under the Nevada Minimum Wage Amendment, so the state minimum wage for the H-2A pay consideration is Nevada's minimum wage. Weighing the applicable wages and other possible compensation methods under 20 C.F.R. § 655.120, Nevada's minimum wage would pay Plaintiff the most.[4] Because the Nevada minimum wage is the highest, the Court must look at whether

---

[4] Defendant alleges that Plaintiff failed to allege facts that he was underpaid because Plaintiff admitted that he was paid the California rate, which is higher than the Nevada rate. (ECF No. 300 at 11.) This argument fails to recognize that Plaintiff should receive more money under the Nevada

1   Nevada law requires Defendant to pay Plaintiff for all 24 hours of each day spent tending to the

2   sheep, eating, sleeping, and other time spent for personal benefit.

3   **i.     Nevada Law**

4          Nevada law does not answer the question of whether Plaintiff is entitled to minimum wage

5   for all the hours spent on the range. The Constitution of the State of Nevada Article 15 Section 16

6   provides, in part, that an "employer shall pay a wage to each employee of not less than the hourly

7   rates set forth in this section." While this provision establishes that workers shall receive a

8   minimum wage for work completed, it does not define "work" to determine what does and does

9   not qualify as work that receives the minimum wage. *See id*. The Nevada Revised Statutes (NRS)

10  also establishes a minimum wage providing that an "employer shall pay to the employee wages

11  for each hour the employee works." NRS 608.016. Again, the statute establishing a minimum wage

12  does not provide a definition of "work" to determine whether Plaintiff should receive

13  compensation for all 24 hours of a day spent on the range. *See id*. Moreover, the regulation that

14  implements NRS 608.016 states that "[a]n employer shall pay an employee for all time worked by

15  the employee at the direction of the employer, including time worked by the employee that is

16  outside the scheduled hours of work of the employee." NAC 608.115. This regulation does

17  nothing more to clear up what "work" is under Nevada law. *See Rite of Passage, ATCS/Silver State*

18  *Acad. v. State, Dep't of Bus. & Indus., Off. of Lab. Com'r*, 131 Nev. 1338 (2015) ("Nevada law

19  provides little guidance" on what conduct qualifies as work to receive the minimum wage).

20         Further, within the same chapter of the NRS that establishes a minimum wage there are

21  provisions that may support a finding for either the Plaintiff or Defendant. The NRS defines

22

23  rate for all 24 hours of a day rather than the California rate for only the hours that Plaintiff tended
    to the sheep. Therefore, Plaintiff did plead facts that show he was underpaid if Nevada law con-
24  siders all 24 hours of a day of Plaintiff's time on the range as "work" for the purposes of receiving
    minimum wage.

"workday" as "a period of 24 consecutive hours which begins when the employee begins work." NRS 608.0126. Textually speaking, this provision creates a 24-hour workday, allowing an employee to receive compensation for 24 hours of work, which supports the position that Plaintiff could work and receive compensation for all 24 hours of every day that Plaintiff spent as a sheepherder. But, this provision also states that the workday starts once the employee starts working for the day. *Id*. Logically, if there is a start to the workday then there must also be an end to the workday, which supports Defendant's position that Plaintiff could not have worked 24 hours a day because he stopped working at some point and did not start again until he was tending to the sheep. Neither of these points are especially persuasive, so we must look to other provisions in the statute that may answer the question of whether Plaintiff can receive compensation for all 24 hours even though his time was split between tending to the sheep and for his personal benefit.

Withstanding the definition of workday, the NRS differentiates time spent working from time spent eating, resting, and sleeping. Pursuant to NRS 608.019, an employer must provide an employee with a 30-minute uninterrupted meal period for every continuous 8-hour period of work. In the very next provision, the statute requires employers to give their employees an uninterrupted 10-minute break for every 4 hours of work. *Id*. This provision provides, in part, that authorized break periods "shall be counted as hours worked, for which there shall be no deduction from wages." *Id*. Comparing the two provisions, it is clear that the drafters intended to allow employees to receive compensation for time spent resting, but not for time spent eating. Accordingly, it is safe to assume that Nevada law does not consider time spent eating as work that employees can receive compensation for, but Nevada law does consider time spent resting as work. However, it is difficult to apply these provisions to this matter because Plaintiff asserts that even when he was eating and resting, he was still expected to tend to the sheep. Therefore, taking all the facts that Plaintiff alleged as true, Plaintiff never received a true "meal period" under the statute because it was not

uninterrupted. For that reason, these provisions cut against Defendant's argument that Plaintiff was not working 24 hours a day.

Additionally, the NRS allows certain employers to withhold pay from employees while they are sleeping at the job site, but the exemption is only offered to types of employers that are not related to Defendant. Under Nevada law, employees of a residential facility who administer care or supervision and employees of an agency who provide in home care cannot receive pay for time spent sleeping while at the residential facility or home. NRS 608.0195. The provision exempts certain types of work from the prohibition on receiving pay while sleeping, but neither of those groups are similar to the type of work at issue here.[5] Although this provision does not specifically answer the question of whether Plaintiff can claim that he should be compensated for time spent sleeping because he was working, it does show that the Nevada Legislature intended to exempt only two groups from receiving compensation while sleeping.[6] Reading the text plainly, the Nevada Legislature addressed sleeping while on the job for only a subset of employers. Without more in the text, we cannot assume that the Nevada Legislature intended to allow Defendant to withhold pay for sleeping, nor can we assume that Plaintiff is entitled to pay while he slept. Regardless of the assumptions that can made using the provisions in the Constitution of the State of Nevada and the NRS, there are no Nevada laws that directly address the question of whether Plaintiff's 24 hours spent as a sheepherder were "work" for the purposes of receiving minimum wage.[7]

---

[5] The prohibition does not apply to: a firefighter, a member of a rescue or emergency services crew or a peace officer, including, without limitation, a correctional officer. NRS 608.0195.

[6] *See Rite of Passage, ATCS/Silver State Acad*, 131 Nev. At 1338 n.2 (The Nevada Legislature passed this exemption in 2015 to allow for agreements that do not compensate employees for sleep time on the employer's property).

[7] Even the Nevada Labor Commissioner recognizes that Nevada laws do not define "work." *Id*. ("The Labor Commissioner maintains that the statutory scheme entrusts the determination of whether an employee "works" within the meaning of NRS 608.016 to his office to decide on a case-by-case basis.").

ii.     **Nevada Supreme Court**

Without a proper understanding of what "work" is defined as under Nevada law, the Court must turn to the Nevada Supreme Court to determine whether the legal precedent of the state's highest court can help the court define "work." The Nevada Supreme Court addressed a similar issue in 2015 when it heard a challenge to the Nevada Labor Commissioner's decision that a Coach Counselor should receive compensation for an 8-hour sleeping period. *See Rite of Passage, ATCS/Silver State Acad*, 131 Nev. at 1338. In that case, the Nevada Supreme Court found that "the determination of whether a certain block of time is hours worked is . . . properly characterized as a mixed question of law and fact." *Id*. at *2. Because the decision of what is work relies on the factual circumstances of each individual case, the holding in *Rite of Passage* is inapplicable here. The plaintiff in *Rite of Passage* agreed in her employment contract to take an unpaid sleeping period. Id. at *1. Here, Plaintiff and Defendant's employment agreement was silent on payment for time spent sleeping. Further, the "work" time at issue here goes beyond time spent sleeping and expands to every 24-hour period that Plaintiff worked for Defendant. In sum, the Nevada Supreme Court looked at just the time spent sleeping and did not look at all other time spent for personal benefit. Factually speaking, these cases are not similar.

Unfortunately, *Rite of Passage* does nothing to help this court understand what is and what is not "work" because the Nevada Supreme Court answered the question of whether the agency made a correct determination given the findings. The Nevada Supreme Court did not and has not answered the question of what constitutes "work" for the purpose of receiving minimum wage under Nevada's minimum wage law. NRS 608.016.

iii.    **Certification to the Nevada Supreme Court**

The lack of precedent and the unanswered question of law drives this court to certify the question of whether the Nevada minimum law compensates Plaintiff for all the time spent as a

sheepherder. Pursuant to Nevada Rule of Appellate Procedure 5, the Nevada Supreme Court may answer questions of law certified to it by a United States District Court upon the certifying court's request:

> if there are involved in any proceeding before those courts questions of law of this state which may be determinative of the cause then pending in the certifying court and as to which it appears to the certifying court there is no controlling precedent in the decisions of the supreme court of this state.

Nev. R. App. P. 5(a); *see also Volvo Cars of N. Am., Inc. v. Ricci*, 122 Nev. 746, 137 (2006) (allowing the certification of questions for the Nevada Supreme Court where a question of law is at issue). "Resort to certification is not mandatory where state law is unclear on a particular issue." *Carolina Cas. Ins. Co. v. McGhan*, 572 F. Supp. 2d 1222, 1225 (D. Nev. 2008) (court denied certification); *citing Lehman Bros. v. Schein*, 416 U.S. 386, 390–91 (1974). Federal courts can predict how a state's highest court would rule on a question that the state's highest court has not yet decided. *Id*. However, federal courts can certify a question to a state's highest court where certification may "save time, energy, and resources and help [ ] build a cooperative judicial federalism." *Lehman Bros*., 416 U.S. at 391. "Factors a federal court should consider in exercising this discretion include whether the state law question presents a significant question of important state public policy, whether the issue involved has broad application, whether law from other states is instructive, the state court's case load, and comity and federalism concerns." *Carolina Cas. Ins. Co*., 572 F. Supp. 2d at 1225; *citing Kremen v. Cohen*, 325 F.3d 1035, 1037–38 (9th Cir. 2003).

The question at the heart of Defendant's summary judgment motion, whether all Plaintiff's time spent as a sheepherder was work, is a question of law for which the Nevada Supreme Court has no controlling precedent.[8] Further, the certified question takes on a significant question of

---

[8] As mentioned previously, the Nevada Supreme Court only answered the question of whether time spent sleeping is work and not whether time spent for personal benefit is work. *Rite of Passage, ATCS/Silver State Acad*, 131 Nev. at 1338. Rite of Passage is inapplicable.

important state public policy. Wage disputes hang on the question of what "work" is to determine whether an employee was underpaid. *See Rite of Passage, ATCS/Silver State Acad*, 131 Nev. at 1338; *Sargent v. HG Staffing*, LLC, No. 313CV00453LRHGWF, 2019 WL 1117905, at \*8 (D. Nev. Mar. 8, 2019) (deciding whether the plaintiffs established an FSLA claim based on whether they worked). Without an answer to this question, Nevada courts will continue to hear cases regarding the definition of "work" to determine wage disputes, so the certified question will have a broad application and will decrease the Nevada Supreme Court's (and this Court's) case load. Finally, laws from other states are not instructive for this question because they either explicitly exempt this type of work from compensation or allow the worker to receive compensation.[9]

For all the reasons mentioned previously, the Court will certify the following question of law to the Nevada Supreme Court:

> Under the Constitution of the State of Nevada and Chapter 608 of the Nevada Revised Statutes, does Nevada law require Defendant Western Range Association to pay Plaintiff Abel Cantaro Castillo 24 hours of wages for every day worked because Plaintiff Castillo was not allowed to leave and was always performing some job duties even though some of the time he spent on the range was for his personal benefit?

The Court will defer on Defendant's summary judgment motion and stay all further proceedings until the Nevada Supreme Court answers the certified question.

### D. Class Certification

Plaintiff seeks to certify a class of sheepherders that allegedly did not receive compensation for all the hours that they worked. Certifying the class and allowing Plaintiff to proceed with a class action "is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011)

---

[9] *Berrocal v. Fernandez*, 155 Wash. 2d 585, 588, 121 P.3d 82, 83 (2005) (excluding sheepherding from minimum wage laws in Washington); IWC Wage Order 14-2001 (allowing sheepherders to receive overtime pay to compensate for long hours in California).

1   (citations and quotations omitted). Plaintiff must meet the factors under Fed. R. Civ. P. 23(a): "(1)

2   the class is so numerous that joinder of all members is impracticable; (2) there are questions of law

3   and fact common to the class; (3) the claims or defenses of the representative parties are typical of

4   the claims or defenses of the class; and (4) the representative parties will fairly and adequately

5   protect the interests of the class." Essentially, Plaintiff must show numerosity, commonality,

6   typicality, and adequate representation. *See Id.* Class certification fails here because the

7   prospective class members' claims do not share commonality or typicality.

8       **i.    Commonality**

9           Prospective class members share commonality when they share a common question of law

10  or fact. *See Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001). "A plaintiff must demonstrate

11  that the class members have suffered the same injury, which means that their claims must depend

12  upon a common contention." *Gonzalez v. United States Immigr. & Customs Enf't*, 975 F.3d 788,

13  807 (9th Cir. 2020) (citation and internal quotation marks omitted). Prospective class members do

14  not share commonality because they did not work in similar conditions, causing them to lack a

15  common contention.

16          As Defendant points out, the prospective class members worked in different areas of

17  Nevada, causing them to endure different conditions for sheep tending, resulting in different hours

18  worked. These differences are important in this matter because the prospective class members

19  claim that they were not paid for all the hours spent tending to the sheep. If each prospective class

20  member dealt with different conditions due to where they were in Nevada, then it is unlikely that

21  they share commonality in how often they needed to care for the sheep and ultimately how much

22  they worked. For example, one prospective class member claimed that the heat caused his sheep

23  to sleep more often, which helped him worry less about the sheep and get better rest. Contrast that

24  experience with Castillo's, the prospective class representative, who claims that he dealt with

conditions that caused him to stay on alert for 24 hours to ensure his sheep's safety. Another sheepherder stated that the time of year allowed him to work 35 hours a week because his sheep did not need much attention. In sum, some prospective class members allegedly got sleep, some could not sleep, some barely worked, and some needed to always work. The stark contrast in experiences makes it difficult for each prospective class member to allege that they were adversely affected by the same sheep herding conditions, which caused them to work more hours than they were paid.

Moreover, the named representative's claim differs from the prospective class members in that he claims that he should receive compensation for 24 hours of every day that he served as a sheepherder. As mentioned previously, the prospective class members claim that they faced different hardships which caused them to work only a few hours a day. The "named plaintiff's claim and the class claims are [not] so interrelated" that the claims share commonality. *Wal-Mart Stores, Inc.*, 564 U.S. at 350.[10] Accordingly, commonality does not exist between the prospective class members.

### ii.   Typicality

The prospective class members do not share typicality. "Although the commonality and typicality requirements tend to merge into one another, they are stated differently." *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001) (citation omitted). Typicality is established when "each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Id.* (citation omitted). The difference in experience highlighted previously makes it difficult for the prospective class members to claim

---

[10] "[Typicality and commonality] serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Wal-Mart Stores, Inc.*, 564 U.S. at 350.

1    that each claim arose from the same set of events. As mentioned previously, some prospective

2    class members worked many hours, and some worked very few hours. Just based on these factual

3    circumstances alone, the prospective class members' claims are not typical.

4

5                              **III.    CONCLUSION**

6          IT IS HEREBY ORDERED that Plaintiff's motion for partial summary, judgment is

7    **GRANTED**. (ECF No. 303.)

8          IT IS FURTHER ORDERED that a question be sent to the Nevada Supreme Court to

9    resolve Defendant's motion for summary judgment. *See* II(C)(iii). For that reason, this court will

10   defer on Defendant's summary judgment motion and stay all further proceedings until the Nevada

11   Supreme Court answers the certified question. (ECF No. 300.)

12         IT IS FURTHER ORDERED that Plaintiff's motion to certify a class is **DENIED**. (ECF

13   No. 264)

14         IT IS SO ORDERED.

15   Dated September 23, 2022.

16

17   _____
                 ROBERT C. JONES
18               United States District Judge

19

20

21

22

23

24